**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **BOUNTIFUL CAPITAL, LLC, individually and derivatively on behalf of ALLURE SALON GROUP, LLC,** <br><br> *Plaintiff,* <br><br> v. <br><br> **KAREN KAMINSKI** <br><br> *Defendant.* | : | **CIVIL ACTION** <br><br> **Case No. ______________** |

## COMPLAINT

Plaintiff Bountiful Capital, LLC ("BC"), individually and derivatively on behalf of Allure Salon Group, LLC (the "Company"), through its undersigned counsel, hereby files this Complaint against Karen Kaminski ("KK") as follows:

## PRELIMINARY STATEMENT

1. This action arises from Defendant KK's persistent and unauthorized actions in breach of Allure Salon Group, LLC's operating agreement and Defendant's obligations as the Manager of the Company. KK has failed to properly manage the Company, acted irrationally, abdicated her managerial responsibilities, and repudiated the Company's financial obligations—namely, by refusing to cause the Company to recognize or repay debts owed to Plaintiff BC. In doing so, KK has acted unilaterally to attempt to sell the Company and close Company operations, and alter or terminate critical agreements, including leases, all without the consent of or

consultation with BC. These actions have been irrational, impulsive, unprofessional, and devoid of any coherent plan or consideration of their consequences to the Company or BC. KK has also resorted to making personal and unfounded attacks on BC's principal. BC brings this action to prevent further harm, protect its interests, and enforce its rights under Pennsylvania law.

**PARTIES**

2. Plaintiff BC is a Wyoming limited liability company whose sole member is an individual domiciled in California.

3. Defendant KK is an individual and resident of Pennsylvania with an address of 2302 Browning Close, Moosic, Pennsylvania 18507

4. The Company is a Pennsylvania limited liability company with an address of 2302 Browning Close, Moosic, Pennsylvania 18507.

5. Venue is proper and this Court has jurisdiction under 28 U.S.C. § 1332.

6. The parties are diverse.

7. BC is a citizen of California and Wyoming and no other jurisdiction.

8. KK is a citizen of Pennsylvania and no other jurisdiction.

9. The amount in controversy exceeds $75,000, exclusive of interest and costs.

**FACTS**

10. The Company is governed by a Limited Liability Company Operating Agreement dated February 4, 2022 (the "Operating Agreement").

11. The Company operates five salon suite facilities.

12. The facilities are located in East Norriton, Moosic, Wilkes Barre, Trexlertown and Lansdale.

13. The facilities, in the aggregate, contain 113 suites.

14. The Company leases its facilities from the property owners and then subleases individual suites to its customers who in turn operate his/her/its salon business.

15. The Company aims to elevate beauty professionals' businesses through training and services and to professionalize salon suite investments.

16. KK and BC are the sole members of the Company.

17. KK holds a 51% interest in the Company.

18. BC owns a 49% interest.

19. KK is the Company's Manager, President and Co-Chief Executive Officer who is responsible for the overall supervision and direction of the day-to-day business, operations, and affairs of the Company.

20. KK is also the "tax matters partner" of the Company under the Operating Agreement.

21. Over time, BC has made loans to the Company, totaling approximately $972,000 in the aggregate and inclusive of interest, with the principal amount of $115,000 evidenced by a February 2022 promissory note and the additional principal amount of $185,000 evidenced by an April 2022 promissory note, signed by the Company.

22. BC's loans are properly reflected on Company tax returns and at various times KK has previously acknowledged their existence.

23. The Company has failed to repay the Loans.

24. BC has borne the majority of the financial obligations of the Company to allow it to continue to operate while KK claims a right to alleged "sweat equity" for which no recognition or provision is contained in the Operating Agreement.

25. KK lacks the skill set, desire, and temperament to continue to serve as the Company's Co-CEO, President or Manager.

26. KK has openly expressed her disdain for interacting with the Company's core customers, i.e., its beauty professionals.

27. KK has indicated a desire to focus on her separate consulting business or retire in the near future.

28. KK has recently threatened to unilaterally amend prior tax returns to reclassify BC's loans as capital contributions.

29. KK has invoiced and demanded payment from the Company for "consulting services" allegedly performed by her separate company.

30. KK's unprofessional behavior has caused the resignation of two of the Company's CPAs.

31. Because of KK, the Company has been unable to complete its 2024 tax returns.

32. KK has threatened to amend (or in fact has attempted to amend or amended) the Company's leases with its landlords unilaterally, and without authorization, under the mistaken belief that somehow the leases are in her name.

33. KK has engaged in unilateral, and undisclosed discussions with third parties regarding the sale of the Company without BC and without having a proper business plan and sale strategy, among other things, in place first.

34. In connection with a potential sale of the Company or one or more of its assets, KK has expressed a desire to disclose to third parties the Company's confidential financial information without a proper plan or protections in place first and without involving BC.

35. KK's scattershot approach without any planning or coordination with BC threatens to undermine any potential future sale of the Company.

36. KK fails to appreciate the business planning aspects that must be followed to maximize the value of the Company in any sale thereof and does not have the proper business acumen or understanding to determine the appropriate timing of a potential sale of the Company or to spearhead a proper sale process.

37. KK has also indicated a desire to relinquish her controlling interest in the Company to BC.

38. On March 23, 2025, KK, in writing, unilaterally withdraw from the Company's day-to-day activities, without proper authority, stating "[t]his is my formal notice to you, of my decision to step down... I will no longer actively work in

the company... I will be transferring my controlling shares... I will notify each landlord... I will close all Company credit cards…"

39. Despite this pronouncement, KK refuses to engage BC in a coherent, professional manner in order to attempt to discuss a potential transition.

40. BC rejected KK's purported unilateral attempt to modify ownership and control without following the Operating Agreement.

41. KK's recent actions have been wholly unauthorized and inconsistent with the Company's best interests.

42. KK's recent actions have forced BC to disburse to the Company $45,000 thus far in 2025 to cover urgent Company operating expenses.

43. Additionally, because of KK, in January 2025 the Company was forced to secure a 15-month term loan in the amount of $150,000, at 40% APR or $41,850 in interest due under the loan, which is in addition to an already existing unfavorable line of credit held by the Company at 52% APR.

44. KK has also recently engaged in personal attacks on BC's principal and has acted recklessly, impulsively, and contrary to the Operating Agreement in her dealings with BC as it relates to the Company's affairs, whether it be her purported resignation, transition of her ownerships interests and control to BC or a potential sale of the Company.

45. BB reasonably believes and fears that KK's recent irrational behavior is escalating and that KK will cause irreparable harm to the Company.

46. The Company is rudderless while BC is forced to foot the bill.

47. By doing the things alleged, KK has failed to act in accordance with the Operating Agreement or in the Company's best interests.

48. KK has violated Sections 7 and 10 of the Operating Agreement, ignored her fiduciary duties, abdicated managerial responsibilities, repudiated Company debts, and acted unilaterally and oppressively.

49. Immediate judicial intervention is required to dissociate KK, prohibit her from acting on the Company's behalf, and vest BC with control of the Company to protect it from irreparable harm.

**COUNT I — BREACH OF OPERATING AGREEMENT**

50. Plaintiff repeats and realleges the foregoing paragraphs.

51. The Operating Agreement governs KK's obligations to BC and the Company.

52. KK has breached the Operating Agreement by:

a. Abdicating her role as Manager;

b. Acting unilaterally to bind the Company and attempt to sell its assets;

c. Threatening to reclassify loans;

d. Engaging in personal attacks and unprofessional behavior;

e. Failing to act in the Company's best interests.

53. BC and the Company have been harmed by these breaches.

**COUNT II — BREACH OF FIDUCIARY DUTY**

54. Plaintiff repeats and realleges the foregoing paragraphs.

55. KK owes fiduciary duties of loyalty and care to the Company and to BC.

56. KK's unilateral and reckless conduct violates these duties.

57. KK's actions have harmed BC and the Company.

**COUNT III — OPPRESSION**

58. Plaintiff repeats and realleges the foregoing paragraphs.

59. KK's actions amount to oppression of BC under Pennsylvania law by excluding BC from management, acting unilaterally, and seeking to undermine BC's interests.

60. This conduct warrants judicial intervention.

**COUNT IV — DISSOCIATION OF KK**

61. Plaintiff repeats and realleges the foregoing paragraphs.

62. KK has wrongfully abdicated her responsibilities, materially harmed the Company, and made continued affiliation impracticable.

63. Dissociation is warranted under 15 Pa.C.S. § 8861(6)(i)(ii) and (iii).

**COUNT V (JUDICIAL DISSOLUTION)**
(*Pleaded in the Alternative to Dissociation Claim*)

64. Plaintiff repeats and realleges the foregoing paragraphs.

65. In the alternative to the claim for disassociation of KK above, BC is entitled to dissolution of the Company pursuant to 15 Pa.C.S. § 8871(a)(4)(ii) and (a)(4)(A) or (B), on account of the allegations set forth herein.

66. Accordingly, in the alternative to dissociation, BC seeks an order of judicial dissolution of the Company and appointment of a receiver or liquidating trustee to wind up the affairs of the Company in an orderly manner, with an accounting and distribution of assets in accordance with applicable law.

**COUNT VI — DECLARATORY JUDGMENT**

67. Plaintiff repeats and realleges the foregoing paragraphs.

68. A bona fide dispute exists regarding whether BC's loans are debt or capital contributions.

69. BC seeks a declaration that all loans, including those recognized in tax returns and by KK, are valid debts owed to BC.

**COUNT VII — INJUNCTIVE RELIEF**

70. Plaintiff repeats and realleges the foregoing paragraphs.

71. KK continues to engage in unauthorized, unilateral acts.

72. Immediate injunctive relief is required to:

a. Prohibit KK from taking further actions on behalf of the Company;

b. Vest BC with management control; and

c. Preserve Company assets and prevent irreparable harm.

73. Without this relief, the Company will be irreparably damaged.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests this Court enter judgment:

A. Declaring KK has breached the Operating Agreement and fiduciary duties;

B. Ordering the dissociation of KK from the Company;

C. Prohibiting KK from acting on behalf of the Company;

D. Vesting BC with management control of the Company;

E. Awarding compensatory, consequential, and punitive damages in favor of BC and against KK in an amount to be proven at trial;

F. Declaring BC's loans are valid debts of the Company;

G. Awarding attorneys' fees and costs;

H. In the alternative to dissociation, the entry of judgment dissolving the Company pursuant to 15 Pa.C.S. § 8871, the appointment of a receiver or liquidating trustee to wind up the Company's affairs, a full accounting of the Company's assets and liabilities, and equitable distribution of the Company's assets to the members; and

I. Granting all other relief as is just and proper in favor of BC and against KK.

Respectfully submitted,

**KLEINBARD LLC**

Dated: May 20, 2025

BY: */s/ Edward T. Butkovitz*

Benjamin A. Garber (No. 306765)
Edward T. Butkovitz (No. 309565)
Three Logan Square
1717 Arch Street, 5th Floor
Philadelphia, PA 19103
bgarber@kleinbard.com

*Attorney for Plaintiff*