UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

BOUNTIFUL CAPITAL, LLC,

        Plaintiff,

    v.

KAREN KAMINSKI,

        Defendant.

CIVIL ACTION NO. 3:25-CV-00888

(MEHALCHICK, J.)

**MEMORANDUM**

On May 20, 2025, Plaintiff Bountiful Capital, LLC ("Bountiful") initiated this action by filing a complaint against Defendant Karen Kaminski ("Kaminski"). (Doc. 1). On February 2, 2026, Bountiful filed the operative second amended complaint. (Doc. 32). Presently before the Court is Kaminski's motion to dismiss for failure to state a claim or, alternatively, for a stay. (Doc. 32). For the following reasons, Kaminski's motion to dismiss is denied.[1]

I.    **BACKGROUND AND PROCEDURAL HISTORY**

The following background is taken from the second amended complaint and, for the purposes of the instant motion, taken as true. (Doc. 31). Bountiful is a Wyoming limited

---

[1] Kaminski requests, in the alternative to dismissal, that the Court stay this action because on January 25, 2026, Bountiful issued Kaminski a demand letter and Kaminski had until March 26, 2026, to respond to the letter and indicate whether Allure will pursue Bountiful's action or appoint a Special Litigation Committee to investigate. (Doc. 32, at 4-5). However, March 26, 2026, has since passed and neither party has filed anything with the Court indicating how Kaminski responded to the demand letter. Accordingly, the Court **DENIES** Kaminski's request for a stay as moot **without prejudice** to her ability to file a separate motion for a stay.

liability company ("LLC") whose sole member, David Bao ("Bao"), is a resident of California. (Doc. 31, ¶ 13). Kaminski is an individual residing in Moosic, Pennsylvania. (Doc. 31, ¶ 14). Bountiful and Kaminski are the sole members of Allure Salon Group, LLC ("Allure"), an LLC based in Pennsylvania and governed by a Limited Liability Operating Agreement (the "Operating Agreement") dated February 4, 2022. (Doc. 31, ¶¶ 15, 46). Bountiful holds a 49% interest in Allure, and Kaminski holds a 51% interest. (Doc. 31, ¶¶ 53-54). Allure operates five salon suite facilities in Pennsylvania. (Doc. 31, ¶¶ 47-48). Allure leases these facilities. (Doc. 31, ¶ 50). Kaminski serves as Allure's Manager, President, and Co-Chief Executive Officer and manages Allure's day-to-day business, operations, and affairs. (Doc. 31, ¶ 55).

Bountiful alleges that Kaminski "failed to properly manage [Allure], acted irrationally, abdicated managerial responsibilities including by purporting to resign as Manager and then reasserting unilateral and oppressive control, and repudiated [Allure's] financial obligations." (Doc. 31, ¶ 2). Prior to 2025, Bountiful loaned Allure approximately $972,000 in the aggregate and inclusive of interest. (Doc. 31, ¶ 58). One loan, evidenced by a February 2022 promissory note, was in the principal amount of $115,000 with a maturity date of February 14, 2023. (Doc. 31, ¶ 59). Another loan, in the principal amount of $185,000, evinced by an April 2022 promissory note, had a maturity date of December 31, 2023. (Doc. 31, ¶ 60). Allure previously reported these loans as debt on its tax returns . (Doc. 31, ¶ 51). Allure never repaid these loans. (Doc. 31, ¶ 62). Bountiful attempted to work with Kaminski to extend the maturity dates of the February and April 2022 promissory notes and consolidate the loans into a single agreement; however, Kaminski refused to work with Bountiful. (Doc. 31, ¶ 67). Instead, on October 17, 2025, Kaminski amended Allure's tax returns to reclassify the loans as capital

contributions without getting member approval. (Doc. 31, ¶ 69).

Kaminski also threatened to amend Allure's leases under the mistaken belief that the leases were in her name. (Doc. 31, ¶ 72). Kaminski also began engaging in unilateral discussions with third parties regarding the potential sale of Allure, without consulting Bountiful or developing a sale strategy. (Doc. 31, ¶ 73). Kaminski then attempted to step down from the company, close company credit cards, notify landlords, and unilaterally modify Allure's ownership and control. (Doc. 31, ¶¶ 77-80). Around May 2025, Kaminski also sought to split Allure's assets and locations in an unfair and inequitable manner. (Doc. 31, ¶ 81).

In order to keep Allure viable, in addition to the aforementioned loans, Bountiful had to provide Allure with several cash infusions in the form of loans and advances. (Doc. 31, ¶¶ 10, 83-89). Bountiful advanced $15,000 on April 8 and 28, 2025, and on May 5, and 29, 2025. (Doc. 31, ¶¶ 84-87). Bountiful also advanced $10,000 on June 11, 2025. (Doc. 31, ¶ 88). Kaminski sarcastically replied to the May 29, 2025, infusion, "[t]hank [y]ou for your capital contribution." (Doc. 31, ¶ 89). In January 2025, due to Kaminski's decisions, Allure was required to secure a separate $150,000 fifteen-month loan at a high interest rate. (Doc. 31, ¶ 91).

On June 13, 2025, Kaminski emailed Bao seeking to impose immediate changes to Allure's operational structure and deprive Bountiful and Bao of involvement in Allure. (Doc. 31, ¶¶ 95-96). At that time, Bao was managing Allure's finances, human resources, and legal matters because Kaminski was unable to do so. (Doc. 31, ¶ 97). Despite Kaminski's request, Bao and Bountiful refused to step back and demanded immediate full access to Alure's finances, documents, books, records, platforms, and software. (Doc. 31, ¶¶ 103-04).

On September 25, 2025, Kaminski caused the company to pay $4,350.31 to Allure

Salon Suite Consulting, a related-party business entity wholly owned by Kaminski, without notice or approval. (Doc. 31, ¶ 108). In mid-October 2025, Kaminski began restricting Bountiful and Bao's access to Allure's financial systems. (Doc. 31, ¶ 109). On October 31, 2025, Kaminski caused the company to pay $9,586.50 to Stevens & Lee, Kaminski's personal counsel, and $5,000 to accountant Vincent Mazzei without notice or approval. (Doc. 31, ¶ 112). Kaminski used Allure's funds to pay for this litigation without notice or approval. (Doc. 31, ¶ 113). On November 2, 2025, Kaminski demanded additional funding from Bountiful. (Doc. 31, ¶ 114). On November 3, 2025, NBT Bank confirmed that Bao's online banking credentials, which allowed Bao to view Allure's finances, were manually deleted. (Doc. 31, ¶ 115). On December 8 and 10, 2025, Kaminski demanded another advance from Bountiful to pay for Allure's payroll while continuing to exclude Bao from financial accounts and records. (Doc. 31, ¶ 117). Solely to ensure Allure's employees were not adversely affected during the holiday payroll cycle, Bountiful advanced $3,000 to Allure. (Doc. 31, ¶ 122). Kaminski has also been attempting to force a sale and buyout of Allure and has continued to do so through January 2026. (Doc. 31, ¶¶ 123-31).

The second amended complaint alleges both direct and derivative counts. (Doc. 31). In Count I, Bountiful raises a direct claim for breach of operating agreement against Kaminski. (Doc. 31, ¶¶ 140-43). In Count II, Bountiful raises a derivative breach of operating agreement claim against Kaminski. (Doc. 31, ¶¶ 144-46). In Count III, Bountiful raises a direct breach of fiduciary duty claim against Kaminski. (Doc. 31, ¶¶ 147-150). In Count IV, Bountiful raises a derivative breach of fiduciary duty against Kaminski. (Doc. 31, ¶¶ 151-54). In Count V, Bountiful raises a derivative unjust enrichment claim against Kaminski. (Doc. 31, ¶¶ 155-58). In Count VI, Bountiful raises a direct oppression claim against Kaminski.

(Doc. 31, ¶¶ 159-61). In Count VII, Bountiful seeks judicial dissolution of Allure. (Doc. 31, ¶¶ 162-68). In Count VIII, Bountiful requests declaratory judgment both directly and derivatively. (Doc. 31, ¶¶ 169-74). In Count IX, Bountiful seeks injunctive relief both directly and derivatively. (Doc. 31, ¶¶ 175-79). Bountiful also requests punitive damages and attorneys' fees. (Doc. 31, at 26).

On February 17, 2026, Kaminski filed a motion to dismiss or, in the alternative, stay this action. (Doc. 32). On March 2, 2026, Kaminski filed a brief in support. (Doc. 33). On March 16, 2026, Bountiful filed a brief in opposition. (Doc. 34). On March 23, 2026, Kaminski filed a reply brief. (Doc. 35). Accordingly, this matter is ripe and ready for disposition.

## II.    LEGAL STANDARD

Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes a defendant to move to dismiss for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To assess the sufficiency of a complaint on a Rule 12(b)(6) motion, a court must first take note of the elements a plaintiff must plead to state a claim, then identify mere conclusions that are not entitled to the assumption of truth, and finally determine whether the complaint's factual allegations, taken as true, could plausibly satisfy the elements of the legal claim. *Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 221 (3d Cir. 2011). In deciding a Rule 12(b)(6) motion, the Court may consider the facts alleged on the face of the complaint, as well as "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).

After recognizing the required elements that make up the legal claim, a court should "begin by identifying pleadings that, because they are no more than conclusions, are not

entitled to the assumption of truth." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). The plaintiff must provide some factual ground for relief, which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. Thus, courts "need not credit a complaint's 'bald assertions' or 'legal conclusions'. . . " *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997) (quoting *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1429-30 (3d Cir. 1997)). Nor need a court assume that a plaintiff can prove facts that the plaintiff has not alleged. *Associated Gen. Contractors of Cal. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983).

A court must then determine whether the well-pleaded factual allegations give rise to a plausible claim for relief. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Palakovic v. Wetzel*, 854 F.3d 209, 219-20 (3d Cir. 2017) (quoting *Iqbal*, 556 U.S. at 678) (internal quotation marks omitted); *see also Sheridan v. NGK Metals Corp.*, 609 F.3d 239, 262 n.27 (3d Cir. 2010). The court must accept as true all allegations in the complaint, and any reasonable inferences that can be drawn therefrom are to be construed in the light most favorable to the plaintiff. *Jordan v. Fox, Rothschild, O'Brien & Frankel*, 20 F.3d 1250, 1261 (3d Cir. 1994). This "presumption of truth attaches only to those allegations for which there is sufficient factual matter to render them plausible on their face." *Schuchardt v. President of the U.S.*, 839 F.3d 336, 347 (3d Cir. 2016) (internal quotation and citation omitted). The plausibility determination is context-specific and does not impose a heightened pleading requirement. *Schuchardt*, 839 F.3d at 347.

**III.    DISCUSSION**

Kaminski moves to dismiss the second amended complaint because 1) Kaminski does not state a claim for breach of the Operating Agreement, 2) Bountiful does not plead any facts demonstrating that Kaminski breached her fiduciary duty or oppressed Bountiful, 3) no facts in the second amended complaint support a claim for waste, unjust enrichment, and disgorgement, 4) judicial dissolution, declaratory judgment, and injunctive relief are not warranted, 5) punitive damages are not warranted, and 6) attorneys' fees are not warranted. (Doc. 33, at 7-14). The Court will address each issue in turn.

A.    BREACH OF THE OPERATING AGREEMENT.

In Counts I and II, Bountiful alleges that Kaminski is both directly and derivatively liable for breaching the Operating Agreement. (Doc. 31, ¶¶ 140-46). Kaminski argues that the Court must dismiss Counts I and II because Bountiful does not allege any conduct that violates a specific provision of the Operating Agreement. (Doc. 33, at 7-8). Bountiful counters that her allegations of Kaminski blocking Bountiful from accessing information, amending tax returns to reclassify debt as capital contributions, and compensating herself with Allure's funds are violations of the Operating Agreement. (Doc. 34, at 6-7).

An LLC's operating agreement is an agreement between its members, and Pennsylvania courts apply standard principles of contractual interpretation when analyzing operating agreements. [2]    *See Toth v. Toth*, 324 A.3d 469, 486 (Pa. Super. Ct. 2024)*, appeal denied*, 337 A.3d 960 (Pa. 2025) (applying standard principles of contractual interpretation to an LLC's operating agreement); *see also Saltzer v. Rolka*, No. 702 MDA 2017, 2018 WL 5603050, at *3 (Pa. Super. Ct. Oct. 30, 2018) (noting that "[a]n operating agreement is a

---

[2] The parties both apply Pennsylvania law. (Doc. 33, at 8; Doc. 34, at 7-9).

contract between the members of an LLC" and applying standard principles of contractual interpretation). To state a claim for breach of contract under Pennsylvania law, "a plaintiff [must] plead (1) the existence of a contract (including its essential terms), (2) a breach of the contract, and (3) damages." *Cessna v. Rea Energy Coop., Inc.*, 753 F. App'x 124, 1128 (3d Cir. 2018) (nonprecedential).

Kaminski attached a copy of the Operating Agreement to her motion to dismiss and argues that Bountiful fails to allege she breached any of its provisions. (Doc. 32-1; Doc. 33, at 7-8). While evaluating a motion to dismiss a breach of contract claim involving a written contract, a court may consider the text of the contract if a copy is attached to the complaint, or the text of an undisputedly authentic copy is attached to a motion to dismiss. *See Cooper v. Samsung Elecs. Am., Inc.*, 374 F. App'x 250, 253 n.3 (3d Cir. 2010); *see also Massey-Campbell v. Bridgecrest Acceptance Corp.*, No. CV 24-4146, 2025 WL 2808911, at *3 n.2 (E.D. Pa. Oct. 2, 2025). The parties agree that the Operating Agreement exists as a binding agreement and Bountiful cites Kaminski's copy of the Operating Agreement in its brief in opposition without disputing its authenticity. (Doc. 32-1; Doc. 34, at 7-9). Accordingly, the Court will consider the copy of the Operating Agreement attached to Kaminski's motion. (Doc. 32-1); *see Cooper,* 374 F. App'x at 253 n.3; *see also Massey,* 2025 WL 2808911, at *3 n.2.

When interpreting the duties imposed by a written contract, the Court must first look to the contract's plain language. *See Lesko v. Frankford Hosp.-Bucks Cnty.*, 609 Pa. 115, 122 (2011); *see also Li v. Univ. of Scranton*, No. 3:21-CV-00868, 2021 WL 6197822, at *4 (M.D. Pa. Dec. 31, 2021). "[W]hen a written contract is clear and unequivocal, its meaning must be determined by its contents alone. It speaks for itself[,] and a meaning cannot be given to it other than that expressed." *Lesko,* 609 Pa. at 123 (citing *Steuart v. McChesney*, 498 Pa. 45, 48

(1982)). Section 10.1(e) of the operating agreement states that  states that Allure's "Manager shall keep the Members advised in all matters pertaining to the operation of the Company, services rendered, operating income and expense, financial position, and, to this end, shall prepare and submit a report to the Members at each regular meeting and at other times as may be directed by the Members." (Doc. 32-1, at 14). Section 10.1(f) designates Kaminski as the "tax matters partner" and states:

> [The] "tax matters partner" shall inform each other Member of all significant matters that may come to its attention in its capacity as "tax matters partner" by giving notice thereof on or before the fifth (5th) business day after becoming aware thereof and, within that time, shall forward to each other Member copies of all significant written communications it may receive in that capacity.

(Doc. 32-1, at 14).

Section 10.2 of the Operating Agreement states that "Kaminski is hereby appointed to serve as Manager, President and Co-Chief Executive Officer and to act in accordance with the provisions of Section 10.1." (Doc. 32-1, at 14).

Bountiful alleges that Kaminski has made various financial and operational decisions on behalf of Allure without notice or prior approval. This includes Kaminski paying a consulting service she is the sole owner of, reclassifying Bountiful loans as capital contributions, beginning negotiations to sell Allure, and withdrawing from Allure's day-to-day operations. (Doc. 31, ¶¶ 65, 69-70, 72-74, 77, 108). Bountiful alleges that not only did Kaminski not provide proper notice, but also took steps to prevent Bountiful from accessing Allure's financial records. (Doc. 31, ¶¶ 109-11, 115-16). Taking all the allegations in the second amended complaint as true and making all inferences in favor of Bountiful, Bountiful alleges that Kaminski did not keep Allure's sole other member, Bountiful, "advised in all matters pertaining to the operation of the Company, services rendered, operating income and expense, financial position." (Doc. 31, ¶¶ 65, 69-70, 72-74, 77, 109-11, 115-16; Doc. 32-1, at

14). Bountiful also alleges that Kaminski revised Allure's tax returns to reclassify Bountiful's loans as capital contributions without informing Bountiful and thus, the Court may infer that Kaminski did not keep Bountiful informed of all "all significant matters that may come to [her] attention in [her] capacity as 'tax matters partner.'" (Doc. 31, ¶¶ 69-70). Bountiful alleges that these breaches harmed Bountiful and Allure's economic interests. (Doc. 31, ¶¶ 143, 146). Accordingly, the Court finds that Bountiful pleads that Kaminski breached the Operating Agreement because she alleges 1) the existence of the Operating Agreement as a contract, 2) that Kaminski breached the terms of that contract, and 3) that Bountiful and Allure were harmed by that breach. *See Cessna*, 753 F. App'x at 1128. Accordingly, Kaminski's motion to dismiss Counts I and II is **DENIED**. (Doc. 32).

    B.  BREACH OF FIDUCIARY DUTY AND OPPRESSION.

In Counts III and IV, Bountiful alleges that Kaminski is both directly and derivatively liable for breach of fiduciary duty. (Doc. 31, ¶¶ 147-154). In Count VI, Bountiful alleges Kaminski's actions constitute oppression of Bountiful's rights under Pennsylvania law. (Doc. 31, ¶¶ 159-61). Kaminski avers that the Court should dismiss Counts III and IV because Bountiful does not allege any specific breaches of fiduciary duty sufficient to overcome the business judgment rule. (Doc. 33, at 8-9). Relatedly, Kaminski avers that the Court should dismiss Count VI because the Operating Agreement entrusts Kaminski with control over Allure, and Bountiful has no right of management and oversight over Allure. (Doc. 33, at 10-11). Bountiful counters that it alleges Kaminski breached her fiduciary duty and oppressed Bountiful by purposefully excluding Bountiful from all important decision making while mismanaging Allure and enriching herself. (Doc. 34, at 7-10).

To state a claim for breach of fiduciary duty, a plaintiff must allege 1) "the existence of a fiduciary relationship between [the p]laintiff and [the defendant]," 2) "that [the defendant] negligently or intentionally failed to act in good faith and solely for [the plaintiff's] benefit," and 3) "that [the plaintiff] suffered an injury caused by [the defendant's] breach of [its] fiduciary duty." *Marion v. Bryn Mawr Tr. Co.*, 288 A.3d 76, 88 (Pa. 2023) (citations and internal quotations omitted). The manager of an LLC has a fiduciary relationship with the LLC's members. 15 Pa.C.S.A. § 8849.2; *see Cutillo v. Cutillo*, No. 5:21-CV-02787, 2022 WL 2240037, at *3 (E.D. Pa. June 22, 2022), *aff'd*, No. 23-2382, 2024 WL 3250364 (3d Cir. July 1, 2024). Majority shareholders also have a fiduciary duty to other shareholders and members. *See Viener v. Jacobs*, 834 A.2d 546, 556 (Pa. Super. Ct. 2003); *see also Cutillo*, 2022 WL 2240037, at *3. A majority shareholder may not oppress minority shareholders by attempting to "freeze out" the minority shareholders from the benefits of a corporation. *Viener*, 834 A.2d at 556 (stating "majority shareholders have a duty not to use their power in such a way to exclude minority shareholders from their proper share of benefits accruing from the enterprise" and that "an attempt by a group of majority shareholders to 'freeze out' minority shareholders for the purpose of continuing the enterprise for the benefit of the majority shareholders constitutes a breach of the majority shareholders' fiduciary duty").

Kaminski avers that Bountiful fails to allege she breached a fiduciary duty and that her conduct is protected by the business judgment rule. (Doc. 33, at 8-9). A defendant breaches their fiduciary duty by taking actions to benefit themselves at the expense of the corporation's well-being and the interests of its shareholders. *See InfoSAGE, Inc. v. Mellon Ventures, L.P.*, 896 A.2d 616, 636 (Pa. Super. Ct. 2006) (stating "[Directors and officers] must devote themselves to the corporate affairs with a view to promote the common interests and not their own, and

11

they cannot, either directly or indirectly, utilize their position to obtain any personal profit or advantage other than that enjoyed also by their fellow shareholders" (citing *Seaboard Indus., Inc. v. Monaco*, 442 Pa. 256, 261 (1971); *see also Cutillo*, 2022 WL 2240037, at \*3-4 (finding a plaintiff alleged an LLC manager and majority shareholder breached their fiduciary duty by taking actions which harmed the plaintiff and the LLC and benefited the defendant). However, under the business judgment rule, a corporate officer or majority shareholder may not be held liable for breach of fiduciary duty "in the absence of fraud or self-dealing, if challenged decisions were within the scope of the [defendant's] authority, if they exercised reasonable diligence, and if they honestly and rationally believed their decisions were in the best interests of the company.*" Cuker v. Mikalauskas*, 547 Pa. 600, 612 (1997). Courts in the Third Circuit consider the business judgment rule to be an affirmative defense and have been reluctant to grant Rule 12(b)(6) motions based on the business judgment rule. *See In re Tower Air, Inc.*, 416 F.3d 229, 238 (3d Cir. 2005) (noting, in the context of the Delaware business judgment rule, "[g]enerally speaking, we will not rely on an affirmative defense such as the business judgment rule to trigger dismissal of a complaint under Rule 12(b)(6)"); *see also Cutillo*, 2022 WL 2240037, at \*4 (noting the same in the context of the Pennsylvania business judgment rule); *Spear v. Fenkell*, No. CIV.A. 13-02391, 2015 WL 3643571, at \*26 (E.D. Pa. June 12, 2015) (same); *In re Vanguard Chester Funds Litig.*, No. CV 22-955, 2023 WL 8091999, at \*9 n.13 (E.D. Pa. Nov. 20, 2023) (same). A court should not grant a Rule 12(b)(6) motion on the basis of an affirmative defense unless the complaint alleges no facts which could counter the application of the affirmative defense. *See In re Tower Air, Inc.*, 416 F.3d at 238 (noting that courts should generally not grant Rule 12(b)(6) motions based on affirmative defenses but that "[a] complaint may be dismissed under Rule 12(b)(6) where an unanswered

12

affirmative defense appears on its face"); *see also In re Vanguard Chester Funds Litig.*, 2023 WL 8091999, at *9 (noting the same); *see also Cutillo*, 2022 WL 2240037, at *4 (stating "'[t]he business judgment rule may be considered in the context of a Rule 12(b)(6) motion to dismiss only when the applicability of the rule appears on the face of the complaint, and the plaintiff alleges no facts that would defeat the presumption that the rule applies'" (quoting *In re Reading Broad., Inc.*, 390 B.R. 532, 555 (Bankr. E.D. Pa. 2008)).

The Court finds that Bountiful sufficiently states a claim for breach of fiduciary duty and oppression. Bountiful alleges that Kaminski is Allure's Manager, President, Co-Chief Executive Officer, and majority shareholder and thus, has a fiduciary duty to Allure and its members. *See* 15 Pa.C.S. § 8849.2; *see also See Viener*, 834 A.2d at 556; *see also Cutillo*, 2022 WL 2240037, at *3. Bountiful pleads that Kaminski breached her fiduciary duty as the Manager, President, and Co-Chief Executive Officer of Allure by alleging that Kaminski mismanaged Allure and put her own interests above those of Allure and its members. (Doc. 31, ¶¶ 2, 72-73, 77-81, 91, 95-97, 108, 113); *see InfoSAGE, Inc.*, 896 A.2d at 636; *see also Cutillo*, 2022 WL 2240037, at *3-4. Similarly, Bountiful alleges that Kaminski attempted to oppress Bountiful as a minority shareholder by excluding Bountiful from decision making and acting for her own benefit at the expense of Allure and Bountiful. (Doc. 31, ¶¶ 2-4, 12, 65-56, 78, 107-17, 123-26); *see also Viener*, 834 A.2d at 556-57 (finding that a majority shareholder oppressed a minority shareholder by removing him from decision making while mismanaging the company through self-dealing). Bountiful alleges specific examples of Kaminski putting her own interests above the well-being of the company, including her allegedly paying herself thousands of dollars' worth of consulting fees, paying her personal counsel with Allure's funds, and attempting to sell the Allure and its assets in a way that favors her and not

13

Bountiful. (Doc. 31, ¶¶ 73, 81, 108, 112). Accepting these allegations as true, the business judgment rule would not apply to Kaminski's actions. *See Cuker*, 547 Pa. at 612 (stating that the business judgment rule applies "in the absence of fraud or self-dealing"). Thus, the Court cannot grant Kaminski's Rule 12(b)(6) motion based on her affirmative business judgment rule defense. *See In re Tower Air, Inc.*, 416 F.3d at 238; *see also Cutillo*, 2022 WL 2240037, at *4; *Spear*, 2015 WL 3643571, at *26; *In re Vanguard Chester Funds Litig.*, 2023 WL 8091999, at *9 n.13. The Court further finds that Bountiful's allegations that Kaminski used her authority as Allure's Manager, President, Co-Chief Executive Officer, and majority shareholder to enrich herself at the expense of Allure and Bountiful, the minority shareholder, are sufficient to state a claim for both breach of fiduciary duty and oppression. *See InfoSAGE, Inc.*, 896 A.2d at 636; *see also Viener*, 834 A.2d at 556; *see also Cutillo*, 2022 WL 2240037, at *3-4. Kaminski's motion to dismiss Counts III, IV, and VI is **DENIED**. (Doc. 32).

C. WASTE, UNJUST ENRICHMENT, AND DISGORGEMENT

In Count V, Bountiful alleges that Kaminski unjustly enriched herself, wasted corporate assets, and that restitution and disgorgement are required. (Doc. 31, ¶¶ 155-58). Kaminski avers that the Court should dismiss Count V because 1) her actions were reasonable and authorized by the Operating Agreement, 2) she did not engage in waste or unjust enrichment, and 3) disgorgement is not warranted. (Doc. 33, at 9-10). Bountiful counters that it sufficiently alleges that Kaminski's self-dealing constitutes waste and unjust enrichment. (Doc. 34, at 9).

Ordinarily, a plaintiff may not bring a claim for unjust enrichment where the parties agree a contract governs the relationship between them. *See Vantage Learning (USA), LLC v. Edgenuity, Inc.*, 246 F. Supp. 3d 1097, 1100 (E.D. Pa. 2017) (stating "[i]t is well-settled in

14

Pennsylvania that the existence of a contract prevents a party from bringing a claim for unjust enrichment"). However, Pennsylvania courts use unjust enrichment as "as a measure of liability" in breach of fiduciary duty claims involving alleged self-dealing and self-enrichment. *In re Lampe*, 665 F.3d 506, 520 (3d Cir. 2011). To state a claim for unjust enrichment, a plaintiff must plead "(1) a benefit was conferred on the defendant; (2) the defendant retained that benefit; and (3) it would be inequitable for the defendant to retain the benefit without paying full value for it." *In re Lampe*, 665 F.3d at 520. Similarly, a plaintiff may state a claim for waste of corporate assets by alleging that a defendant frivolously wasted corporate funds by engaging in self-dealing. *See Meyer v. Delaware Valley Lift Truck, Inc.*, 392 F. Supp. 3d 483, 495 (E.D. Pa. 2019) (finding a plaintiff stated a claim for waste of corporate assets by paying himself and his family with corporate funds). Disgorgement is not a cause of action, but rather a remedy for unjust enrichment. *See Edmonson v. Lincoln Nat. Life Ins. Co.*, 777 F. Supp. 2d 869, 891 (E.D. Pa. 2011) (describing disgorgement as a remedy); *see also Smith v. John Hancock Ins. Co.*, No. CIV.A. 06-3876, 2008 WL 4072585, at *6 (E.D. Pa. Sept. 2, 2008) (stating "[a]lthough pled as a separate cause of action, disgorgement is actually 'an equitable remedy designed to deprive a wrongdoer of his unjust enrichment'" (quoting *S.E.C. v. Hughes Cap. Corp.*, 124 F.3d 449, 455 (3d Cir. 1997)).

While Kaminski asserts that she did not waste corporate assets and acted, at all times, in accordance with the Operating Agreement, as discussed *supra* Sections III.A-B, Bountiful alleges that Kaminski wasted thousands of dollars' worth of Allure's assets while attempting to benefit herself at the expense of Allure and Bountiful. (Doc. 31, ¶¶ 2, 72-73, 77-81, 91, 95-97, 108, 113). Such allegations, which must be taken as true, are sufficient to state a claim for both unjust enrichment and waste. *See In re Lampe*, 665 F.3d at 520; *see also Edmonson*, 777 F.

15

Supp. 2d at 891. Disgorgement is a potential remedy to unjust enrichment. *See Edmonson*, 777 F. Supp. 2d at 891; *see also Smith*, 2008 WL 4072585, at \*6. Accordingly, the Court **DENIES** Kaminski's motion to dismiss Count V. (Doc. 32).

### D. DECLARATORY RELIEF, INJUNCTIVE RELIEF, AND JUDICIAL DISSOLUTION

In Count VII, Bountiful requests judicial dissolution of Allure. (Doc. 31, ¶¶ 162-168). In Count VIII, Bountiful requests declaratory judgment. (Doc. 31, ¶¶ 169-74). In Count IX, Bountiful requests injunctive relief. (Doc. 31, ¶¶ 175-79). Kaminski argues that judicial resolution is an extreme remedy unavailable in this case. (Doc. 33, at 11). Relatedly, Kaminski avers that Bountiful fails to state any claims warranting declaratory judgment or injunctive relief. (Doc. 33, at 11-13). Bountiful counters that none of its claims for relief should be dismissed prior to discovery because they are dependent on disputes of fact. (Doc. 34, at 10-14).

While Bountiful lists Counts VIII and IX as separate counts, declaratory judgment and injunctive relief are remedies, not causes of action. *See Campbell v. Pennsylvania Sch. Boards Ass'n*, 336 F. Supp. 3d 482, 504 (E.D. Pa. 2018), *aff'd*, 972 F.3d 213 (3d Cir. 2020)(stating "[d]eclaratory judgment is a remedy and not a cause of action"); *see also Slemmer v. McGlaughlin Spray Foam Insulation, Inc.*, 955 F. Supp. 2d 452, 465 (E.D. Pa. 2013) (stating "[w]hile [plaintiff's request for injunctive relief] is set forth in Count VII as a separate cause of action, [a] request for injunctive relief by itself does not state a cause of action . . . An injunction is a remedy, not a separate claim or cause of action" (citations and internal quotations omitted)). It is premature for a court to address the appropriateness of remedies such as declaratory or injunctive relief in response to a motion to dismiss where the court declines to dismiss the underlying claims. *See In re Riddell Concussion Reduction Litig.*, 121 F.

16

Supp. 3d 402, 425 (D.N.J. 2015) (noting that it would be premature to dismiss a request for declaratory relief where the court declined to dismiss the underlying claim); *see also In re K-Dur Antitrust Litig.*, 338 F. Supp. 2d 517, 550 (D.N.J. 2004) (noting, in response to a motion to dismiss, "while this Court may ultimately agree with Defendants that claims for injunctive relief are inappropriate, dismissal at this stage of the proceedings would be premature"); *see also Boyer v. Clearfield Cnty. Indus. Dev. Auth.*, No. CV 3:19-152, 2021 WL 2402005, at *18 (W.D. Pa. June 11, 2021) (finding that, because the court did not dismiss the underlying claims, "it is far too premature to make a determination as to whether Plaintiffs ultimately may be entitled to permanent injunctive relief, or any other relief, at this stage of the litigation"). For the reasons discussed *supra* Sections III A-C, the Court declines to dismiss Bountiful's underlying claims and thus, it is premature to evaluate Bountiful's requests for declaratory judgment and injunctive relief. *See In re Riddell Concussion Reduction Litig.*, 121 F. Supp. 3d at 425; *see also In re K-Dur Antitrust Litig.*, 338 F. Supp. 2d at 550; *see also Boyer*, 2021 WL 2402005, at *18. Accordingly, the Court **DENIES** Kaminski's motion to dismiss Counts VIII and IX. (Doc. 32).

Relatedly, under 15 Pa.C.S. § 8871(a)(4)iii, a court may order the dissolution of an LLC where "the managers or those members in control of the company: (A) have acted, are acting, or will act in a manner that is illegal or fraudulent; or (B) have acted or are acting in a manner that is oppressive and was, is or will be directly harmful to the applicant." For the reasons discussed *supra* Section III.B-C, Bountiful adequately pleads that Kaminski's actions constitute an unlawful breach of fiduciary duty and oppression. At this stage, it would be premature to dismiss Bountiful's request for judicial dissolution given that the request will

17

turn on factual determinations regarding whether Kaminski acted unlawfully.[3] *See* 15 Pa.C.S. § 8871 (a)(4)iii; *see also Meyer*, 392 F. Supp. 3d at 493 (denying a motion to dismiss a plaintiff's claim for judicial dissolution at the pleadings stage where a plaintiff sufficiently stated a claim for oppression). Accordingly, the Court **DENIES** Kaminski's motion to dismiss Count VII. (Doc. 32).

E.  PUNITIVE DAMAGES

Bountiful requests punitive damages. (Doc. 31, at 26). Kaminski argues that the Court should dismiss Bountiful's request for punitive damages because Bountiful does not allege any conduct sufficiently outrageous to warrant punitive damages. (Doc. 33, at 13). Bountiful counters that its allegations regarding Kaminski's conduct are sufficient to state a claim for punitive damages, and the Court should not dismiss its claims for punitive damages prior to discovery. (Doc. 34, at 11-12).

Under Pennsylvania law, a court may award punitive damages where a plaintiff shows a defendant's conduct was "outrageous, because of the defendant's evil motive or his reckless indifference to the rights of others. As the name suggests, punitive damages are penal in nature and are proper only in cases where the defendant's actions are so outrageous as to demonstrate willful, wanton or reckless conduct." *Hutchison ex rel. Hutchison v. Luddy*, 582 Pa. 114, 121 (2005) (citations and internal quotations omitted). Punitive damages are generally unavailable for Pennsylvania breach of contract claims. *See Johnson v. Hyundai Motor Am.*, 698 A.2d 631,

---

[3] The Court acknowledges that Kaminski cites caselaw indicating that judicial resolution is a "'drastic remedy to be employed cautiously and only in clear cases.'" (Doc. 33, at 11) (citing *O'Farrell v. Steel City Piping Co.*, 403 A.2d 1319, 1325 (Pa. Super. Ct. 1978)). However, the caselaw Kaminski relies on was decided after the parties were able to discover and present evidence. *See O'Farrell*, 403 A.2d at 1325 (evaluating testimony); *see Loveless v. Pocono Forest Sportsman Club, Inc.*, 972 A.2d 572, 573 (Pa. Commw. Ct. 2009) (evaluating a motion for summary judgment).

639 (Pa. Super. Ct. 1997) (stating "[t]he law of Pennsylvania clearly provides, however, that punitive damages are not recoverable in an action solely based upon breach of contract"). However, a plaintiff may recover punitive damages "for claims sounding in breach of fiduciary duty." *Hutchison*, 582 Pa. at 125; *see Holland v. Physical Therapy Inst., Inc.*, 296 A.3d 619 (Pa. Super. Ct. 2023) (noting that while Pennsylvania courts do not allow for recovery of punitive damages for breach of contract claims, "our courts have permitted recovery of punitive damages in cases involving breach of fiduciary duty claims"). Because of the fact intensive nature of punitive damage inquiries, courts in the Third Circuit generally decline to address punitive damages in response to a motion to dismiss. *See Campbell v. Balon*, No. 4:16-CV-00779, 2017 WL 2880856, at *19 (M.D. Pa. July 6, 2017) (stating "this Court has consistently held that it is premature to dismiss demands for punitive damages prior to discovery"); *see also Altimari v. Bucks Cnty. R.R. Pres. & Restoration Corp.*, No. CV 21-2451, 2022 WL 1748534, at *10 (E.D. Pa. May 31, 2022) (stating "[a]lthough discovery may reveal that punitive damages are not appropriate, dismissal of the punitive damages claim at the pleadings stage would be premature"); *see also Hernandez v. City of Paterson*, No. CV 22-6763, 2023 WL 6876008, at *12 (D.N.J. Oct. 18, 2023) (stating "[t]he propriety of punitive damages is determined by a plaintiff's proofs, and therefore, dismissal of punitive damages claims at the motion to dismiss stage is generally premature"). For the reasons discussed *supra* Sections III.B-C, Bountiful sufficiently alleges claims sounding in breach of fiduciary duty. Thus, punitive damages may be available. *See Hutchison*, 582 Pa. at 125. It would be premature for the Court to dismiss Bountiful's request for punitive damages at this stage. *See Campbell*, 2017 WL 2880856, at *19; *see also Altimari*, 2022 WL 1748534, at *10; *see also Hernandez*, 2023 WL

6876008, at *12. Accordingly, the Court **DENIES** Kaminski's motion to dismiss Bountiful's request for punitive damages. (Doc. 32).

F.  ATTORNEYS' FEES

Bountiful requests "attorneys' fees and costs as permitted by contract, statute, or equity." (Doc. 31, at 26). Kaminski argues that the Court should dismiss Bountiful's request for attorneys' fees because it does not identify any "contract or statute allowing Bountiful to seek to recover attorneys' fees and costs in light of the American Rule." (Doc. 33, at 13). Bountiful does not respond to this argument.

Pennsylvania courts apply the "American Rule" to requests for attorneys' fees which does not permit plaintiffs to receive attorneys' fees "'unless there is express statutory authorization, a clear agreement of the parties[,] or some other established exception.'" *Canters Deli Las Vegas, LLC v. FreedomPay, Inc.*, 460 F. Supp. 3d 560, 574 (E.D. Pa. 2020) (quoting *McMullen v. Kutz*, 603 Pa. 602, 611 (2009)). "[I]n breach of contract matters, fees are unavailable absent an agreement between the contracting parties" *Medevac MidAtlantic, LLC v. Keystone Mercy Health Plan*, 817 F. Supp. 2d 515, 534 (E.D. Pa. 2011). Courts in the Third Circuit have also found that plaintiffs bringing breach of fiduciary duty claims are not generally entitled to an award of attorneys' fees unless the plaintiff identifies a specific statute or contract that would permit such an award. *See Avco Corp. v. Turner*, No. 21-2750, 2022 WL 2901015, at *4 (3d Cir. July 22, 2022) (nonprecedential); *see also Pace-O-Matic, Inc. v. Eckert, Seamans Cherin & Mellott, LLC*, No. 1:20-CV-00292, 2023 WL 3949052, at *9 (M.D. Pa. June 12, 2023). Here, Article 14.2 of the Operating Agreement provides that "the prevailing party [in a legal dispute between members] shall be entitled to recover their reasonable attorney's fees and costs." (Doc. 32-1, at 21). Because there is a contract permitting the award of

20

attorneys' fees between the parties, the Court **DENIES** Kaminski's motion to dismiss Bountiful's request for attorneys' fees. (Doc. 32).

## IV.    CONCLUSION

For the foregoing reasons, Kaminski's motion to dismiss is **DENIED**. (Doc. 32). The Court further **DENIES** Kaminski's alternative request for a stay as moot **without prejudice** to her ability to file a separate motion for a stay. (Doc. 32, at 4-5).

An appropriate Order follows.

**BY THE COURT:**

**Dated: May 29, 2026**                    *s/ Karoline Mehalchick*

**KAROLINE MEHALCHICK**
**United States District Judge**