**ROTHENBERG & CAMPBELL**
RYAN P. CAMPBELL, ESQ. *(PAID# 317838)*
345 WYOMING AVENUE, STE. 210
SCRANTON, PENNSYLVANIA 18503
*PH:* 570.207.2889 || *FAX:* 570.207.3991
*EMAIL:* RPC@ROTHENBERGCAMPBELL.COM

*COUNSEL FOR DEFENDANT*
*KAREN KAMINSKI*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **BOUNTIFUL CAPITAL, LLC,**<br>*INDIVIDUALLY AND DERIVATIVELY ON BEHALF OF*<br>**ALLURE SALON GROUP, LLC,**<br><br>PLAINTIFF<br><br>V.<br><br>**KAREN KAMINSKI,**<br><br>DEFENDANT<br><br>**V.**<br><br>**DAVID Y. BAO;** AND<br>**ALLURE SALON GROUP, LLC,**<br><br>THIRD-PARTY DEFENDANTS | CIVIL ACTION—LAW<br>*(HON. KAROLINE MEHALCHICK, J.)*<br><br>***JURY TRIAL DEMANDED***<br><br>NO.: 3:25—CV—000888—KM |

**AMENDED ANSWER TO SECOND AMENDED COMPLAINT WITH AFFIRMATIVE DEFENSES AND COUNTERCLAIMS**
**PURSUANT TO FED. R. CIV. P. 15(a)(1)(A), 8(d), 12(b) AND 13**

**AND NOW COMES** the Defendant, Karen Kaminski ***("DEFENDANT")***, by and through her counsel of record, Ryan P. Campbell, Esq. of Rothenberg & Campbell, who hereby submits the following Amended Answer with Affirmative Defenses pursuant to Fed. R. Civ. P. 8(d) and 12(b), amending her October 2, 2026 Answer to the Second Amended Complaint as a matter of course pursuant to Fed. R. Civ. P. 15(a)(1)(A) with Counterclaims against Plaintiff, Bountiful Capital, LLC

***("PLAINTIFF")***, David Y. Bao ***("BAO")*** and Allure Salon Group, LLC (the ***"COMPANY"***), the latter two (2) joined as third-party defendants pursuant to Fed. R. Civ. P. 13, 19 and 20, respectively, responding and averring as follows:

## AMENDED ANSWER TO SECOND AMENDED COMPLAINT

### PRELIMINARY STATEMENT

1. **DENIED** as stated. The allegations contained in Paragraph 1 constitute conclusions of law or reference writings that speak for themselves to which no response is required pursuant to the Federal Rules of Civil Procedure. Therefore, the allegations are denied as stated and if a response is deemed necessary, the averments are specifically denied. Strict proof thereof is demanded at time of trial.

2. **DENIED** as stated. The allegations contained in Paragraph 2 constitute conclusions of law or reference writings that speak for themselves to which no response is required pursuant to the Federal Rules of Civil Procedure. Therefore, the allegations are denied as stated and if a response is deemed necessary, the averments are specifically denied. Strict proof thereof is demanded at time of trial.

3. **DENIED** as stated. The allegations contained in Paragraph 3 constitute conclusions of law or reference writings that speak for themselves to which no response is required pursuant to the Federal Rules of Civil Procedure. Therefore, the allegations are denied as stated and if a response is deemed necessary, the averments are specifically denied. Strict proof thereof is demanded at time of trial.

4. **DENIED** as stated. The allegations contained in Paragraph 4 constitute conclusions of law or reference writings that speak for themselves to which no response is required pursuant to the Federal Rules of Civil Procedure. Therefore,

the allegations are denied as stated and if a response is deemed necessary, the averments are specifically denied. By way of further response, Plaintiff has previously expressly agreed to "attempt to sell the Company." Strict proof thereof is demanded at time of trial.

5. **DENIED** as stated. The allegations contained in Paragraph 5 constitute conclusions of law or reference writings that speak for themselves to which no response is required pursuant to the Federal Rules of Civil Procedure. Therefore, the allegations are denied as stated and if a response is deemed necessary, the averments are specifically denied. By way of further response, the Company's Operating Agreement grants neither Plaintiff nor Bao any respective individual rights to "involvement and oversight" in the Company's day-to-day decisions. Strict proof to the contrary is demanded at time of trial.

6. **DENIED** as stated. The allegations contained in Paragraph 6 constitute conclusions of law or reference writings that speak for themselves to which no response is required pursuant to the Federal Rules of Civil Procedure. Therefore, the allegations are denied as stated and if a response is deemed necessary, the averments are specifically denied. Strict proof thereof is demanded at time of trial.

7. **DENIED** as stated. The allegations contained in Paragraph 7 constitute conclusions of law or reference writings that speak for themselves to which no response is required pursuant to the Federal Rules of Civil Procedure. Therefore, the allegations are denied as stated and if a response is deemed necessary, the averments are specifically denied. Strict proof thereof is demanded at time of trial.

8. **DENIED** as stated. The allegations contained in Paragraph 8 constitute conclusions of law or reference writings that speak for themselves to which no response is required pursuant to the Federal Rules of Civil Procedure. Therefore, the allegations are denied as stated and if a response is deemed necessary, the averments are specifically denied. Strict proof thereof is demanded at time of trial.

9. **DENIED** as stated. The allegations contained in Paragraph 9 constitute conclusions of law or reference writings that speak for themselves to which no response is required pursuant to the Federal Rules of Civil Procedure. Therefore, the allegations are denied as stated and if a response is deemed necessary, the averments are specifically denied. Strict proof thereof is demanded at time of trial.

10. **DENIED** as stated. The allegations contained in Paragraph 10 constitute conclusions of law or reference writings that speak for themselves to which no response is required pursuant to the Federal Rules of Civil Procedure. Therefore, the allegations are denied as stated and if a response is deemed necessary, the averments are specifically denied. Strict proof thereof is demanded at time of trial.

11. **DENIED** as stated. The allegations contained in Paragraph 11 constitute conclusions of law or reference writings that speak for themselves to which no response is required pursuant to the Federal Rules of Civil Procedure. Therefore, the allegations are denied as stated and if a response is deemed necessary, the averments are specifically denied. Strict proof thereof is demanded at time of trial.

12. **DENIED** as stated. The allegations contained in Paragraph 12 constitute conclusions of law or reference writings that speak for themselves to which no response is required pursuant to the Federal Rules of Civil Procedure. Therefore,

the allegations are denied as stated and if a response is deemed necessary, the averments are specifically denied. Strict proof thereof is demanded at time of trial.

## PARTIES

13. **ADMITTED**, upon information and belief.

14. **ADMITTED.**

15. **ADMITTED.**

## JURISDICTION AND VENUE

16. **DENIED** as stated. The allegations contained in Paragraph 16 constitute conclusions of law to which no response is required pursuant to the Federal Rules of Civil Procedure. Therefore, the allegations are denied as stated. Strict proof thereof is demanded at time of trial.

17. **DENIED** as stated. The allegations contained in Paragraph 17 constitute conclusions of law to which no response is required pursuant to the Federal Rules of Civil Procedure. Therefore, the allegations are denied as stated. Strict proof thereof is demanded at time of trial.

18. **DENIED** as stated. The allegations contained in Paragraph 18 constitute conclusions of law to which no response is required pursuant to the Federal Rules of Civil Procedure. Therefore, the allegations are denied as stated. By way of further answer, Plaintiff is a citizen of California only. Strict proof to the contrary is demanded at time of trial.

19. **ADMITTED.**

20. **DENIED** as stated. The allegations contained in Paragraph 20 constitute conclusions of law to which no response is required pursuant to the Federal Rules

of Civil Procedure. Therefore, the allegations are denied as stated. Strict proof thereof is demanded at time of trial.

21. **DENIED** as stated. The allegations contained in Paragraph 21 constitute conclusions of law or reference writings that speak for themselves to which no response is required pursuant to the Federal Rules of Civil Procedure. Therefore, the allegations are denied as stated. Strict proof thereof is demanded at time of trial.

22. **DENIED** as stated. The allegations contained in Paragraph 22 constitute conclusions of law to which no response is required pursuant to the Federal Rules of Civil Procedure. Therefore, the allegations are denied as stated. Strict proof thereof is demanded at time of trial.

23. **ADMITTED** in part, **DENIED** in part. It is admitted only that the Verification referenced in Paragraph 23 appears to comply with Fed. R. Civ. P. 23.1. The balance and remainder of the allegations contained in Paragraph 23 are denied as stated to the extent that they constitute conclusions of law to which no response is required pursuant to the Pennsylvania Rules of Civil Procedure.

24. **ADMITTED** in part, **DENIED** in part. It is admitted only that Plaintiff is named as a member of the Company pursuant to the terms of its Operating Agreement. The balance and remainder of the allegations contained in Paragraph 24 are denied as stated to the extent that they constitute conclusions of law to which no response is required pursuant to the Pennsylvania Rules of Civil Procedure.

25. **DENIED** as stated. The allegations contained in Paragraph 25 constitute conclusions of law to which no response is required pursuant to the Federal Rules

of Civil Procedure. Therefore, the allegations are denied as stated. Strict proof thereof is demanded at time of trial.

26. **DENIED.** It is specifically denied that Plaintiff "failure and adequately represents the interests of the Company and its members in enforcing the Company's rights." On the contrary, Plaintiff's instant lawsuit seeks judicial determinations that monies contributed by Plaintiff and Bao to the Company should be treated as exorbitantly high interest loans with zero supporting documentation and that the Company should be judicially dissolved despite its continued viability and capability to continue normal business operations consistent with its purpose. Plaintiff's pleading reveals interests that are, in fact, opposite and damaging to those of the Company.

27. **ADMITTED** in part, **DENIED** in part. It is admitted only that Plaintiff sent one (1) member letter dated January 25, 2026, a true and correct copy of which is appended to the Amended Complaint and marked as Exhibit "1". The balance and remainder of the allegations contained in Paragraph 27 are specifically denied as conclusions of law or references to that letter requiring no response pursuant to the Federal Rules of Civil Procedure. Strict proof thereof is demanded at time of trial.

28. **ADMITTED** in part, **DENIED** in part. It is admitted only that Plaintiff has demanded "full and continued access" to the Company's "bank accounts, accounting systems, books, records, platforms, and software" on at least one occasion. The balance and remainder of the allegations contained in Paragraph 28 are specifically denied. By way of further answer, Plaintiff has no individual right

to such "full and continued access" pursuant to the Company's Operating Agreement. Strict proof thereof is demanded at time of trial.

29. **DENIED.** It is specifically denied that Plaintiff has repeatedly demanded that Defendant "stop unilateral actions concerning taxes, finances, and major Company decisions and comply with the Operating Agreement's approval requirements." On the contrary, all of Defendant's acts pertinent to this matter were compliant with the Company's Operating Agreement, performed under its express authority, and consistent in furthering its best interests. Strict proof to the contrary is demanded at time of trial.

30. **ADMITTED** in part, **DENIED** in part. It is admitted only that the document appended to the Amended Complaint marked as Exhibit "1" appears to be a true and correct copy of the 01/25/2026 letter sent by Plaintiff to Defendant. The balance and remainder of the allegations contained in Paragraph 30 are specifically denied to the extent that they improperly characterize the 01/25/2026 letter, which speaks for itself, or otherwise constitute conclusions of law to which no response is required pursuant to the Federal Rules of Civil Procedure. To the extent a response is deemed necessary, the averments are specifically denied. Strict proof thereof is demanded at time of trial.

31. **ADMITTED** in part, **DENIED** in part. It is admitted only that the document appended to the Amended Complaint marked as Exhibit "1" appears to be a true and correct copy of the 01/25/2026 letter sent by Plaintiff to Defendant. The balance and remainder of the allegations contained in Paragraph 32 are specifically denied to the extent that they improperly characterize the 01/25/2026

letter, which speaks for itself, or otherwise constitute conclusions of law to which no response is required pursuant to the Federal Rules of Civil Procedure. To the extent a response is deemed necessary, the averments are specifically denied. Strict proof thereof is demanded at time of trial.

32. **ADMITTED.**

33. **ADMITTED** in part, **DENIED** in part. It is admitted only that the document appended to the Amended Complaint marked as Exhibit "1" appears to be a true and correct copy of the 01/25/2026 letter sent by Plaintiff to Defendant. The balance and remainder of the allegations contained in Paragraph 33 are specifically denied to the extent that they improperly characterize the 01/25/2026 letter, which speaks for itself, or otherwise constitute conclusions of law to which no response is required pursuant to the Federal Rules of Civil Procedure. To the extent a response is deemed necessary, the averments are specifically denied. By way of further answer, the Pennsylvania Uniform Limited Liability Company Act of 2016 provides Defendant with a statutory timeframe of sixty (60) days from which to respond to such a statutory demand. See 15 Pa. C.S.A. § 8882. Strict proof to the contrary is demanded at time of trial.

34. **ADMITTED** in part, **DENIED** in part. It is admitted only that Defendant responded to Plaintiff's 01/25/2026 letter. The balance and remainder of the allegations contained in Paragraph 34 are specifically denied to the extent that they improperly characterize Defendant's response, which speaks for itself, or otherwise constitute conclusions of law to which no response is required pursuant to the Federal Rules of Civil Procedure. To the extent a response is deemed necessary,

the averments are specifically denied. Strict proof thereof is demanded at time of trial.

35. **ADMITTED** in part, **DENIED** in part. It is admitted only that Defendant responded to Plaintiff's 01/25/2026 letter. The balance and remainder of the allegations contained in Paragraph 35 are specifically denied to the extent that they improperly characterize Defendant's response, which speaks for itself, or otherwise constitute conclusions of law to which no response is required pursuant to the Federal Rules of Civil Procedure. To the extent a response is deemed necessary, the averments are specifically denied. Strict proof thereof is demanded at time of trial.

36. **ADMITTED** in part, **DENIED** in part. It is admitted only that Defendant responded to Plaintiff's 01/25/2026 letter. The balance and remainder of the allegations contained in Paragraph 36 are specifically denied to the extent that they improperly characterize Defendant's response, which speaks for itself, or otherwise constitute conclusions of law to which no response is required pursuant to the Federal Rules of Civil Procedure. To the extent a response is deemed necessary, the averments are specifically denied. On the contrary, all of Defendant's acts pertinent to this matter were compliant with the Company's Operating Agreement, performed under its express authority, and consistent in furthering its best interests. Strict proof to the contrary is demanded at time of trial.

37. **DENIED** as stated. The allegations contained in Paragraph 37 constitute conclusions of law to which no response is required pursuant to the Federal Rules of Civil Procedure. Therefore, the allegations are denied as stated. To the extent

a response is deemed necessary, the averments are specifically denied. On the contrary, all of Defendant's acts pertinent to this matter were compliant with the Company's Operating Agreement, performed under its express authority, and consistent in furthering its best interests. Strict proof thereof to the contrary is demanded at time of trial.

38. **DENIED.** It is specifically denied that Defendant "effectively rejected the demand" or otherwise "declined to perform her duties to the Company" for not specifically addressing the 01/25/2026 letter within Plaintiff's unilateral and self-serving five-day deadline. Strict proof thereof is demanded at time of trial.

39. **ADMITTED** in part, **DENIED** in part. It is admitted only that Defendant controls Company management as Manager and holds a controlling membership interest pursuant to the terms of the Company's Operating Agreement. The balance and remainder of the allegations contained in Paragraph 39 are specifically denied as stated, constituting conclusions of law or mischaracterizing the Operating Agreement, which speaks for itself, requiring no response pursuant to the Federal Rules of Civil Procedure. To the extent a response is deemed necessary, the averments are specifically denied. Strict proof thereof is demanded at time of trial.

40. **DENIED** as stated. The allegations contained in Paragraph 40 constitute conclusions of law to which no response is required pursuant to the Federal Rules of Civil Procedure. Therefore, the allegations are denied as stated. Strict proof thereof to the contrary is demanded at time of trial.

41. **DENIED** as stated. The allegations contained in Paragraph 41 constitute conclusions of law to which no response is required pursuant to the Federal Rules

of Civil Procedure. Therefore, the allegations are denied as stated. To the extent a response is deemed necessary, the averments are specifically denied. On the contrary, all of Defendant's acts pertinent to this matter were compliant with the Company's Operating Agreement, performed under its express authority, and consistent in furthering its best interests. Strict proof thereof to the contrary is demanded at time of trial.

42. **DENIED** as stated. The allegations contained in Paragraph 42 constitute conclusions of law to which no response is required pursuant to the Federal Rules of Civil Procedure. Therefore, the allegations are denied as stated. To the extent a response is deemed necessary, the averments are specifically denied. By way of further answer, any perceived filing deadlines referenced by Plaintiff were self-created in its decision to file the instant lawsuit in violation of the statutory prerequisites imposed by the Pennsylvania Uniform Limited Liability Company Act of 2016. Strict proof thereof to the contrary is demanded at time of trial.

43. **DENIED** as stated. The allegations contained in Paragraph 43 constitute conclusions of law to which no response is required pursuant to the Federal Rules of Civil Procedure. Therefore, the allegations are denied as stated. Strict proof thereof to the contrary is demanded at time of trial.

44. **DENIED** as stated. The allegations contained in Paragraph 44 constitute conclusions of law to which no response is required pursuant to the Federal Rules of Civil Procedure. Therefore, the allegations are denied as stated. Strict proof thereof to the contrary is demanded at time of trial.

45. **DENIED** as stated. The allegations contained in Paragraph 45 constitute conclusions of law to which no response is required pursuant to the Federal Rules of Civil Procedure. Therefore, the allegations are denied as stated. Strict proof thereof to the contrary is demanded at time of trial.

## FACTS

46. **ADMITTED.** A true and correct copy of the Company's February 4, 2022 Operating Agreement is appended hereto and marked as **Exhibit "A"**.

47. **ADMITTED.**

48. **ADMITTED.**

49. **ADMITTED.**

50. **ADMITTED.**

51. **ADMITTED.**

52. **ADMITTED.**

53. **ADMITTED.**

54. **ADMITTED.**

55. **ADMITTED.**

56. **ADMITTED.**

57. **ADMITTED.**

58. **DENIED.** It is specifically denied that the sum of all monies paid to the Company by Plaintiff totals "approximately $972,000.00 in the aggregate and inclusive of interest" or that most of those monies constituted "loans". On the contrary, Plaintiff made only two (2) "investment loans" to the Company, each documented by a separate promissory note. By way of further response, Plaintiff

attempts to reclassify all monies contributed to the Company as "loans" and dictate repayment terms without any loan documentation. Although Plaintiff made additional capital contributions to the Company, the only "investment loans" to the Company are those evidenced by the two promissory notes, true and correct copies of which are appended hereto and marked respectively as **Exhibits "B"** and **"C"**.

59. **ADMITTED** in part, **DENIED** in part. It is admitted only that Exhibit "B" is a true and correct copy of the February 2022 promissory note executed between Bao, individually, and Defendant, individually and on behalf of the Company. The balance and remainder of the allegations contained in Paragraph 59 are denied as stated to the extent that said promissory note speaks for itself. (See ECF Doc. No. 51-2).

60. **ADMITTED** in part, **DENIED** in part. It is admitted only that Exhibit "C" is a true and correct copy of the April 2022 promissory note executed between Bao, on behalf of Plaintiff, and Defendant, on behalf of the Company. The balance and remainder of the allegations contained in Paragraph 60 are denied as stated to the extent that said promissory note speaks for itself. (See ECF Doc. No. 51-3)

61. **ADMITTED** in part, **DENIED** in part. It is admitted only that the February 2022 and April 2022 promissory notes were reflected on the Company's tax returns. The balance and remainder of the allegations contained in Paragraph 61 are specifically denied as stated to the extent that they mischaracterize the promissory notes, which speak for themselves.

62. **ADMITTED,** only to the extent that the Company records do not reflect that the February 2022 or April 2022 promissory notes have been satisfied. In all remaining respects, Paragraph 62 is specifically denied.

63. **DENIED** as stated. The allegations contained in Paragraph 63 constitute conclusions of law to which no response is required pursuant to the Federal Rules of Civil Procedure. Therefore, the allegations are denied as stated. To the extent a response is deemed necessary, the averments are specifically denied. Strict proof thereof to the contrary is demanded at time of trial.

64. **DENIED.** It is specifically denied that Defendant has indicated a desire to focus on her separate consulting business.

65. **ADMITTED** in part, **DENIED** in part. It is admitted only that Defendant has a separate consulting company, Allure Salon Suite Consulting, LLC, which has provided services to, and invoiced the Company for those services. The balance and remainder of the allegations contained in Paragraph 65 are specifically denied as stated, constituting conclusions of law or mischaracterizing the Operating Agreement, which speaks for itself, requiring no response pursuant to the Federal Rules of Civil Procedure. To the extent a response is deemed necessary, the averments are specifically denied. Strict proof thereof is demanded at time of trial.

66. **ADMITTED** in part, **DENIED** in part. It is admitted only that Plaintiff attempted to mischaracterize all monies it contributed to the Company and attempted to conspire with and persuade the Company's former accountant to classify all such monies as "loans" to the Company despite the absence of any loan documentations or necessary approvals required by the Company's Operating

Agreement. The balance and remainder of the allegations contained in Paragraph 66 are specifically denied. By way of further answer, the Company's Operating Agreement speaks for itself. Strict proof thereof is demanded at time of trial.

67. **ADMITTED** in part, **DENIED** in part. It is admitted only that Defendant refused to execute a new loan agreement drafted by Plaintiff to categorize all funds Plaintiff contributed to the Company as "loans". The balance and remainder of the allegations contained in Paragraph 67 are specifically denied. By way of further answer, see response to Paragraph 66, *supra*. Strict proof thereof is demanded at time of trial.

68. **ADMITTED** in part, **DENIED** in part. It is admitted only that Defendant informed Plaintiff that she would arrange for the Company's new accountant to correct Plaintiff's improper accounting edits and properly classify all Plaintiff's financial contributions to the Company as "capital contributions" and not as "loans" to the Company, with the exception of the February 2022 and April 2022 loans evidenced by the two (2) promissory notes. The balance and remainder of the allegations contained in Paragraph 68 are specifically denied. By way of further answer, see responses to Paragraphs 66 and 67, *supra*. Strict proof thereof is demanded at time of trial.

69. **ADMITTED** in part, **DENIED** in part. It is admitted only that the Company's new accountant filed amended tax returns on behalf of the Company for years 2022 and 2023, correctly classifying all Plaintiff's financial contributions to the Company excepting the February and April 2022 loans as "capital contributions" and not as "loans" to the Company. The balance and remainder of

the allegations contained in Paragraph 69 are specifically denied. By way of further answer, see responses to Paragraphs 66, 67 and 68, *supra*. Strict proof thereof is demanded at time of trial.

70. **ADMITTED** in part, **DENIED** in part. It is admitted only that Defendant instructed the Company's new account to file amended tax returns on behalf of the Company for years 2022 and 2023, correctly classifying all Plaintiff's financial contributions to the Company after the February and April 2022 loans as "capital contributions" and not as "loans" to the Company. The balance and remainder of the allegations contained in Paragraph 70 are specifically denied as stated, constituting conclusions of law or mischaracterizing the Company's Operating Agreement, which speaks for itself, requiring no response pursuant to the Pennsylvania Rules of Civil Procedure. By way of further answer, the Operating Agreement permits Defendant to take all actions related to managing the Company, including hiring and managing professional services. Strict proof thereof is demanded at time of trial.

71. **DENIED.** The allegations contained in Paragraph 71 are specifically denied. On the contrary, only three (3) accounting professionals have serviced the Company and two (2) of them were terminated due to the actions of Plaintiff. For example, Frank Ciero prepared the Company's 2022 tax return and was terminated by the Company upon Plaintiff's insistence on replacing him with Cherise Hammie. Ms. Hammie prepared the Company's 2023 tax return—including the mischaracterized "loans" from Plaintiff to the Company—and then promptly resigned after, upon information and belief, Bao attempted to conspire with and

persuade her to improperly classify all funds Defendant contributed to the Company as "loans." Ms. Hammie's resigned by e-mail addressed to Bao with a copy to Defendant, a true and correct copy of which is appended hereto and marked as **Exhibit "D"**[1]. The Company then engaged Mazzei Associates who conducted a forensic audit of the Company's books and records, prepared the amended 2022 and 2023 tax returns, and prepared the Company's 2024 and 2025 tax returns. It was during its initial review of the Company's books and records that Mazzei Associates first discovered that Bao had unilaterally and without the Company's knowledge, edited the Company's books and records to re-classify all payments he made on behalf of Plaintiff to the Company after 2022 as "loans."

72. **DENIED**. The allegations contained in Paragraph 72 are specifically denied. By way of further answer, Plaintiff has not amended any Company leases without proper authorization or in conflict with the Operating Agreement.

73. **DENIED**. The allegations contained in Paragraph 73 are specifically denied. By way of further answer, all communications made by Defendant on behalf of the Company regarding its possible sale have been both disclosed to and approved by Bao on behalf of Plaintiff.

74. **DENIED**. The allegations contained in Paragraph 74 are specifically denied. Any propriety financial information of the Company released to prospective

---

[1] Notably, Ms. Hammie's e-mail contains no language describing Defendant's behavior as "unprofessional," but does note her "serious concerns regarding the internal dynamics within your partnership", the "misalignments between the partners", and her being "uncomfortable continuing to support an environment where there is a potential for legal action against me or my business." (ECF Doc. No. 51-4).

purchasers have been done subject to a non-disclosure agreement duly executed by the prospective purchaser or agent and Defendant, on behalf of the Company.

75. **DENIED** as stated. The allegations contained in Paragraph 75 constitute conclusions of law to which no response is required pursuant to the Federal Rules of Civil Procedure. Therefore, the allegations are denied as stated. To the extent a response is deemed necessary, the averments are specifically denied. Strict proof thereof to the contrary is demanded at time of trial.

76. **ADMITTED** in part, **DENIED** in part. It is admitted only that Defendant discussed with Bao either Plaintiff purchasing her interests in the Company or Defendant purchasing Plaintiff's interests therein. The balance and remainder of the allegations contained in Paragraph 76 are specifically denied as mischaracterizations of those discussions. Strict proof thereof is demanded at time of trial.

77. **ADMITTED** in part, **DENIED** in part. It is admitted only that on March 23, 2025, Defendant corresponded with Plaintiff of her desire to step back from the day-to-day management of the Company because she was undergoing cancer treatment. The balance and remainder of the allegations contained in Paragraph 77 are specifically denied as mischaracterizations of that correspondence, which speaks for itself. By way of further answer, Plaintiff rejected and refused Defendant's request and instead proposed revising the Operating Agreement such that Defendant would transfer 21% of her membership interest to Defendant Strict proof thereof is demanded at time of trial.

78. **DENIED.** The allegations contained in Paragraph 78 are specifically denied. Strict proof thereof is demanded at time of trial.

79. **DENIED.** The allegations contained in Paragraph 79 are specifically denied. On the contrary, Plaintiff unilaterally elected to file suit in contravention to the alternative dispute resolution clause contained in the Company's Operating Agreement. Strict proof to the contrary is demanded at time of trial.

80. **DENIED** as stated. The allegations contained in Paragraph 80 constitute conclusions of law to which no response is required pursuant to the Federal Rules of Civil Procedure. Therefore, the allegations are denied as stated. To the extent a response is deemed necessary, the averments are specifically denied. Strict proof thereof to the contrary is demanded at time of trial.

81. **DENIED** as stated. The allegations contained in Paragraph 81 constitute conclusions of law to which no response is required pursuant to the Federal Rules of Civil Procedure. Therefore, the allegations are denied as stated. To the extent a response is deemed necessary, the averments are specifically denied. By way of further answer, at all times pertinent to this lawsuit, Defendant has only attempted to find an amicable resolution to the disputes existing between herself and Bao on behalf of Plaintiff. Strict proof thereof to the contrary is demanded at time of trial.

82. **DENIED** as stated. The allegations contained in Paragraph 82 constitute conclusions of law to which no response is required pursuant to the Federal Rules of Civil Procedure. Therefore, the allegations are denied as stated. To the extent a response is deemed necessary, the averments are specifically denied. Strict proof thereof is demanded at time of trial.

83. **DENIED** as stated. The allegations contained in Paragraph 83 constitute conclusions of law to which no response is required pursuant to the Federal Rules of Civil Procedure. Therefore, the allegations are denied as stated. To the extent a response is deemed necessary, the averments are specifically denied.

84. **ADMITTED** in part, **DENIED** in part. It is admitted only that Plaintiff made a capital contribution of $15,000.00 to the Company on or about April 8, 2025. The balance and remainder of the allegations contained in Paragraph 84 are specifically denied to the extent that Plaintiff attempts to mischaracterize the payment as anything other than a capital contribution pursuant to the Operating Agreement.

85. **ADMITTED** in part, **DENIED** in part. It is admitted only that Plaintiff made a capital contribution of $15,000.00 to the Company on or about April 28, 2025. The balance and remainder of the allegations contained in Paragraph 85 are specifically denied to the extent that Plaintiff attempts to mischaracterize the payment as anything other than a capital contribution pursuant to the Operating Agreement.

86. **ADMITTED** in part, **DENIED** in part. It is admitted only that Plaintiff made a capital contribution of $15,000.00 to the Company on or about May 5, 2025. The balance and remainder of the allegations contained in Paragraph 86 are specifically denied to the extent that Plaintiff attempts to mischaracterize the payment as anything other than a capital contribution pursuant to the Operating Agreement.

87. **ADMITTED** in part, **DENIED** in part. It is admitted only that Plaintiff made a capital contribution of $15,000.00 to the Company on or about May 29, 2025. The balance and remainder of the allegations contained in Paragraph 87 are specifically denied to the extent that Plaintiff attempts to mischaracterize the payment as anything other than a capital contribution pursuant to the Operating Agreement.

88. **ADMITTED** in part, **DENIED** in part. It is admitted only that Plaintiff made a capital contribution of $15,000.00 to the Company on or about June 11, 2025. The balance and remainder of the allegations contained in Paragraph 88 are specifically denied to the extent that Plaintiff attempts to mischaracterize the payment as anything other than a capital contribution pursuant to the Operating Agreement.

89. **ADMITTED** in part, **DENIED** in part. It is admitted only that Defendant sent Bao an e-mail on or about May 29, 2025 thanking him for his capital contribution. The balance and remainder of the allegations contained in Paragraph 89 are specifically denied to the extent that they mischaracterize Defendant's May 29, 2025 e-mail and/or its perceived tone.

90. **DENIED** as stated. The allegations contained in Paragraph 90 constitute conclusions of law to which no response is required pursuant to the Federal Rules of Civil Procedure. Therefore, the allegations are denied as stated. To the extent a response is deemed necessary, the averments are specifically denied. By way of further answer, the Operating Agreement requires a vote of 75% of all membership interest in the Company to approve any loans and no such approval occurred when

Plaintiff contributed any funds to the Company between April and June of 2025. No formal loan documents evidencing formal terms exists.

91. **DENIED** as stated. The allegations contained in Paragraph 91 constitute conclusions of law to which no response is required pursuant to the Federal Rules of Civil Procedure. Therefore, the allegations are denied as stated. To the extent a response is deemed necessary, the averments are specifically denied. Strict proof thereof is demanded at time of trial.

92. **DENIED**. The allegations contained in Paragraph 92 are specifically denied. On the contrary, Defendant accepted service of the instant lawsuit by arranging for an acquaintance to accept service from the process server's office on her behalf. No wrongful or untoward conduct occurred.

93. **ADMITTED** in part, **DENIED** in part. It is admitted only that Defendant sent Bao an e-mail requesting that he not come near her home or arrange for anyone to come near her home in fear of his previous intimidation and retaliative conduct. The balance and remainder of the allegations contained in Paragraph 93 are specifically denied to the extent that they mischaracterize Defendant's e-mail and/or its perceived tone.

94. **DENIED** as stated. The allegations contained in Paragraph 94 constitute conclusions of law to which no response is required pursuant to the Federal Rules of Civil Procedure. Therefore, the allegations are denied as stated. Strict proof thereof is demanded at time of trial.

95. **ADMITTED** in part, **DENIED** in part. It is admitted only that Defendant sent Bao an e-mail on Jue 13, 2025 that included the language "Immediate Changes

in Operational Structure at Allure Salon Group". The balance and remainder of the allegations contained in Paragraph 95 are specifically denied to the extent that they mischaracterize Defendant's e-mail and/or its perceived tone.

96. **ADMITTED** in part, **DENIED** in part. It is admitted only that Defendant sent Bao an e-mail on June 13, 2025 that included the language "Immediate Changes in Operational Structure at Allure Salon Group". The balance and remainder of the allegations contained in Paragraph 96 are specifically denied to the extent that they mischaracterize Defendant's e-mail and/or its perceived tone. On the contrary, at that time, Bao had unilaterally seized control of the Company's operations and financial systems and Defendant properly exercised her authority as Manager to correct Bao's improper conduct. Strict proof to the contrary is demanded at time of trial.

97. **ADMITTED** in part, **DENIED** in part. It is admitted only that Plaintiff is named as Secretary and Co-Chief Executive Officer. The balance and remainder of the allegations contained in Paragraph 97 are specifically denied. On the contrary, Defendant was and is the Company's Manager and is responsible for all day-to-day operations of the Company. Strict proof to the contrary is demanded at time of trial.

98. **DENIED.** The allegations contained in Paragraph 98 are specifically denied. All monies contributed to the Company by Plaintiff were capital contributions except the February and April 2022 loans secured by promissory notes. Strict proof to the contrary is demanded at time of trial.

99. **DENIED.** The allegations contained in Paragraph 99 are specifically denied. All monies contributed to the Company by Plaintiff were capital contributions except the February and April 2022 loans secured by promissory notes. Strict proof to the contrary is demanded at time of trial.

100. **DENIED** as stated. The allegations contained in Paragraph 100 constitute conclusions of law to which no response is required pursuant to the Federal Rules of Civil Procedure. Therefore, the allegations are denied as stated. Strict proof thereof is demanded at time of trial.

101. **DENIED** as stated. The allegations contained in Paragraph 101 constitute conclusions of law to which no response is required pursuant to the Federal Rules of Civil Procedure. Therefore, the allegations are denied as stated. Strict proof thereof is demanded at time of trial.

102. **DENIED** as stated. The allegations contained in Paragraph 102 constitute conclusions of law to which no response is required pursuant to the Federal Rules of Civil Procedure. Therefore, the allegations are denied as stated. Strict proof thereof is demanded at time of trial.

103. **DENIED.** The allegations contained in Paragraph 103 are specifically denied. Plaintiff and Bao's desire for "oversight over finances, HR, legal matters" notwithstanding, the Company is governed by the Operating Agreement which does not provide any such oversite to Plaintiff.

104. **ADMITTED,** only to the extent that Defendant acknowledges Plaintiff's demands for same.

105. **DENIED.** The allegations contained in Paragraph 105 are specifically denied.

106. **DENIED.** The allegations contained in Paragraph 106 are specifically denied.

107. **DENIED** as stated. The allegations contained in Paragraph 107 constitute conclusions of law to which no response is required pursuant to the Federal Rules of Civil Procedure. Therefore, the allegations are denied as stated. Strict proof thereof is demanded at time of trial.

108. **ADMITTED** in part, **DENIED** in part. It is admitted only that the Company paid Allure Salon Suite Consulting, LLC a sum of $4,350.31 for services rendered on or about September 25, 2025. The balance and remainder of the allegations contained in Paragraph 108 are specifically denied. On the contrary, Defendant was and is the Company's Manager and is responsible for all day-to-day operations of the Company, having complete authority to make said transactions pursuant to the Company's Operating Agreement. Strict proof to the contrary is demanded at time of trial.

109. **ADMITTED** in part, **DENIED** in part. It is admitted only that access to the Company's accounting software and financial accounts were restricted for Plaintiff and Bao as of mid-October 2025 because of their fraudulent recharacterizations of Company debt. The balance and remainder of the allegations contained in Paragraph 109 are specifically denied. By way of further answer, neither Plaintiff nor Bao have any right to contemporaneous access to the Company's financial accounts or accounting software pursuant to the Operating Agreement. More

importantly, as the Company's accountants were attempting to correct its accounting software and prepare amended and corrected tax returns, Bao was improperly editing and changing accounting entries that were already corrected by the accountants, necessitating his access to same being restricted. At no point did Defendant ever restrict Bao or Plaintiff from obtaining general knowledge of the Company's finances as provided in the Operating Agreement. Strict proof to the contrary is demanded at time of trial.

110. **ADMITTED** in part, **DENIED** in part. It is admitted only that access to the Company's accounting software and financial accounts were restricted for Plaintiff and Bao as of mid-October 2025 because of their fraudulent recharacterizations of Company debt. The balance and remainder of the allegations contained in Paragraph 110 are specifically denied. By way of further answer, neither Plaintiff nor Bao have any right to contemporaneous access to the Company's financial systems. More importantly, as the Company's accountants were attempting to correct its accounting software and prepare amended and corrected tax returns, Bao was improperly editing and changing accounting entries that were already corrected by the accountants, necessitating his access to same being restricted. At no point did Defendant ever restrict Bao or Plaintiff from obtaining general knowledge of the Company's finances as provided in the Operating Agreement. Strict proof to the contrary is demanded at time of trial.

111. **DENIED.** The allegations contained in Paragraph 111 are specifically denied. By way of further answer, see responses to Paragraphs 109 and 110, *supra.*

112. **ADMITTED** in part, **DENIED** in part. It is admitted only that the Company paid Stevens & Lee, P.C., $9,586.50, and accountant Vincent Mazzei, $5,000.00 on or about October 31, 2025 for professional services rendered. The balance and remainder of the allegations contained in Paragraph 112 are specifically denied. By way of further answer, Defendant's payments on behalf of the Company were all authorized by and consistent with the Company's Operating Agreement in her position as Manager. Strict proof to the contrary is demanded at time of trial.

113. **ADMITTED** in part, **DENIED** in part. It is admitted only that the Company paid Stevens & Lee, P.C., for legal fees relating to this litigation. The balance and remainder of the allegations contained in Paragraph 113 are specifically denied. By way of further answer, Defendant's payments on behalf of the Company were all authorized by and consistent with the Company's Operating Agreement in her position as Manager. Strict proof to the contrary is demanded at time of trial.

114. **ADMITTED** in part, **DENIED** in part. It is admitted only that the that on or about November 2, 2025 Defendant requested additional capital contributions from Plaintiff. The balance and remainder of the allegations contained in Paragraph 114 are specifically denied. Strict proof to the contrary is demanded at time of trial.

115. **ADMITTED** in part, **DENIED** in part. It is admitted only that the Company restricted Bao's access to its banking system based on his prior fraudulent conduct outlined and explained *supra*. The balance and remainder of the allegations contained in Paragraph 115 are specifically denied as stated based on lack of information to confirm or deny the factual allegations contained in Paragraph 115 after a reasonable investigation. Strict proof thereof is demanded at time of trial.

116. **ADMITTED** in part, **DENIED** in part. It is admitted only that the Company restricted Bao's access to its banking system based on his prior conduct outlined and explained *supra*. The balance and remainder of the allegations contained in Paragraph 116 are specifically denied as stated based on lack of information to confirm or deny the factual allegations contained in Paragraph 116 after a reasonable investigation. Strict proof thereof is demanded at time of trial.

117. **ADMITTED** in part, **DENIED** in part. It is admitted only that the that on or about December 8, 2025, Defendant requested additional capital contributions from Plaintiff. The balance and remainder of the allegations contained in Paragraph 117 are specifically denied. Strict proof to the contrary is demanded at time of trial.

118. **ADMITTED** in part, **DENIED** in part. It is admitted only that the that on or about December 10, 2025, Defendant yet again requested additional capital contributions from Plaintiff as she had not received a response from her December 8, 2025 e-mail. The balance and remainder of the allegations contained in Paragraph 118 are specifically denied. Strict proof to the contrary is demanded at time of trial.

119. **DENIED** as stated. The allegations contained in Paragraph 119 constitute conclusions of law to which no response is required pursuant to the Federal Rules of Civil Procedure. Therefore, the allegations are denied as stated. By way of further answer, Defendant did not compel Plaintiff to advance funds; she requested capital contributions from Plaintiff which, under the Operating Agreement, Plaintiff had no obligation to make. Yet, Plaintiff did make a capital contribution in December of 2025, and has since made additional capital contributions in 2026.

Moreover, neither the Operating Agreement nor Pennsylvania law provides Plaintiff with the contemporaneous right to access the Company's books and records. Strict proof thereof is demanded at time of trial.

120. **DENIED** as stated. The allegations contained in Paragraph 120 constitute conclusions of law to which no response is required pursuant to the Federal Rules of Civil Procedure. Therefore, the allegations are denied as stated. By way of further answer, see response to Paragraph 119, *supra*.

121. **ADMITTED** in part, **DENIED** in part. It is admitted only that Bao stated that Plaintiff was not obligated to contribute additional capital to the Company. The balance and remainder of the allegations contained in Paragraph 121 are specifically denied. Strict proof to the contrary is demanded at time of trial.

122. **ADMITTED** in part, **DENIED** in part. It is admitted only Plaintiff contributed $3,000.00 to the Company in December 2025. The balance and remainder of the allegations contained in Paragraph 122 are specifically denied as stated as Defendant lacks the information to confirm or deny the allegations contained in Paragraph 122 after reasonable investigation. Strict proof to the contrary is demanded at time of trial.

123. **DENIED**. The allegations contained in Paragraph 123 are specifically denied. On the contrary, Defendant has disclosed her communications with prospective purchasers of the Company to Bao, and Bao has approved of Defendant having such communications on behalf of Plaintiff.

124. **DENIED**. The allegations contained in Paragraph 124 are specifically denied. On the contrary, Defendant has disclosed her communications with

prospective purchasers of the Company to Bao, including diligence requests and other documents, and Bao has approved of Defendant having such communications on behalf of Plaintiff.

125. **ADMITTED**, to the extent that she sent the e-mail on November 10, 2025 with the quoted text contained in Paragraph 125.

126. **DENIED**. The allegations contained in Paragraph 126 are specifically denied. On the contrary, Defendant is actively attempting to sell the Company, with explicit approval of Plaintiff.

127. **DENIED** as stated. The allegations contained in Paragraph 127 constitute conclusions of law to which no response is required pursuant to the Federal Rules of Civil Procedure. Therefore, the allegations are denied as stated. Strict proof thereof is demanded at time of trial.

128. **DENIED**. The allegations contained in Paragraph 128 are specifically denied. On the contrary, Defendant did not "demand" anything from Plaintiff. On the contrary, prior to and throughout this litigation, Defendant has attempted to negotiate in good faith with Plaintiff in an effort to reach an amicable resolution to this dispute, including, but not limited to, proposing a buyout.

129. **DENIED**. The allegations contained in Paragraph 129 are specifically denied. Strict proof thereof is demanded at time of trial.

130. **DENIED**. The allegations contained in Paragraph 130 are specifically denied. Strict proof thereof is demanded at time of trial.

131. **DENIED** as stated. The allegations contained in Paragraph 131 constitute conclusions of law to which no response is required pursuant to the Federal Rules

of Civil Procedure. Therefore, the allegations are denied as stated. Strict proof thereof is demanded at time of trial.

132. **DENIED** as stated. The allegations contained in Paragraph 132 constitute conclusions of law to which no response is required pursuant to the Federal Rules of Civil Procedure. Therefore, the allegations are denied as stated. Strict proof thereof is demanded at time of trial.

133. **DENIED** as stated. The allegations contained in Paragraph 133 constitute conclusions of law to which no response is required pursuant to the Federal Rules of Civil Procedure. Therefore, the allegations are denied as stated. Strict proof thereof is demanded at time of trial.

134. **DENIED** as stated. The allegations contained in Paragraph 134 constitute conclusions of law to which no response is required pursuant to the Federal Rules of Civil Procedure. Therefore, the allegations are denied as stated. Strict proof thereof is demanded at time of trial.

135. **DENIED** as stated. The allegations contained in Paragraph 135 constitute conclusions of law to which no response is required pursuant to the Federal Rules of Civil Procedure. Therefore, the allegations are denied as stated. Strict proof thereof is demanded at time of trial.

136. **DENIED** as stated. The allegations contained in Paragraph 136 constitute conclusions of law to which no response is required pursuant to the Federal Rules of Civil Procedure. Therefore, the allegations are denied as stated. Strict proof thereof is demanded at time of trial.

137. **DENIED** as stated. The allegations contained in Paragraph 137 constitute conclusions of law to which no response is required pursuant to the Federal Rules of Civil Procedure. Therefore, the allegations are denied as stated. Strict proof thereof is demanded at time of trial.

138. **DENIED** as stated. The allegations contained in Paragraph 138 constitute conclusions of law to which no response is required pursuant to the Federal Rules of Civil Procedure. Therefore, the allegations are denied as stated. Strict proof thereof is demanded at time of trial.

139. **DENIED** as stated. The allegations contained in Paragraph 139 constitute conclusions of law to which no response is required pursuant to the Federal Rules of Civil Procedure. Therefore, the allegations are denied as stated. Strict proof thereof is demanded at time of trial.

## COUNT I (DIRECT) – BREACH OF OPERATING AGREEMENT

140. **DENIED** as stated. The allegations contained in Paragraph 140 are incorporative in nature to which no response is required pursuant to the Federal Rules of Civil procedure. Therefore, the allegations are denied as stated.

141. **DENIED** as stated. The allegations contained in Paragraph 141 constitute conclusions of law to which no response is required pursuant to the Federal Rules of Civil Procedure. Therefore, the allegations are denied as stated. Strict proof thereof is demanded at time of trial.

142. **DENIED** as stated. The allegations contained in Paragraph 142 constitute conclusions of law to which no response is required pursuant to the Federal Rules

of Civil Procedure. Therefore, the allegations are denied as stated. Strict proof thereof is demanded at time of trial.

143. **DENIED** as stated. The allegations contained in Paragraph 143 constitute conclusions of law to which no response is required pursuant to the Federal Rules of Civil Procedure. Therefore, the allegations are denied as stated. Strict proof thereof is demanded at time of trial.

**COUNT II (DERIVATIVE) – BREACH OF OPERATING AGREEMENT**

144. **DENIED** as stated. The allegations contained in Paragraph 144 are incorporative in nature to which no response is required pursuant to the Federal Rules of Civil procedure. Therefore, the allegations are denied as stated.

145. **DENIED** as stated. The allegations contained in Paragraph 145 constitute conclusions of law to which no response is required pursuant to the Federal Rules of Civil Procedure. Therefore, the allegations are denied as stated. Strict proof thereof is demanded at time of trial.

146. **DENIED** as stated. The allegations contained in Paragraph 146 constitute conclusions of law to which no response is required pursuant to the Federal Rules of Civil Procedure. Therefore, the allegations are denied as stated. Strict proof thereof is demanded at time of trial.

**COUNT III (DIRECT) – BREACH OF FIDUCIARY DUTY**

147. **DENIED** as stated. The allegations contained in Paragraph 147 are incorporative in nature to which no response is required pursuant to the Federal Rules of Civil procedure. Therefore, the allegations are denied as stated.

148. **DENIED** as stated. The allegations contained in Paragraph 148 constitute conclusions of law to which no response is required pursuant to the Federal Rules of Civil Procedure. Therefore, the allegations are denied as stated. Strict proof thereof is demanded at time of trial.

149. **DENIED** as stated. The allegations contained in Paragraph 149 constitute conclusions of law to which no response is required pursuant to the Federal Rules of Civil Procedure. Therefore, the allegations are denied as stated. Strict proof thereof is demanded at time of trial.

150. **DENIED** as stated. The allegations contained in Paragraph 150 constitute conclusions of law to which no response is required pursuant to the Federal Rules of Civil Procedure. Therefore, the allegations are denied as stated. Strict proof thereof is demanded at time of trial.

**COUNT IV (DERIVATIVE) – BREACH OF FIDUCIARY DUTY**

151. **DENIED** as stated. The allegations contained in Paragraph 151 are incorporative in nature to which no response is required pursuant to the Federal Rules of Civil procedure. Therefore, the allegations are denied as stated.

152. **DENIED** as stated. The allegations contained in Paragraph 152 constitute conclusions of law to which no response is required pursuant to the Federal Rules of Civil Procedure. Therefore, the allegations are denied as stated. Strict proof thereof is demanded at time of trial.

153. **DENIED** as stated. The allegations contained in Paragraph 153 constitute conclusions of law to which no response is required pursuant to the Federal Rules

of Civil Procedure. Therefore, the allegations are denied as stated. Strict proof thereof is demanded at time of trial.

154. **DENIED** as stated. The allegations contained in Paragraph 154 constitute conclusions of law to which no response is required pursuant to the Federal Rules of Civil Procedure. Therefore, the allegations are denied as stated. Strict proof thereof is demanded at time of trial.

## COUNT V (DERIVATIVE) – WASTE, UNJUST ENRICHMENT AND DISGORGEMENT

155. **DENIED** as stated. The allegations contained in Paragraph 155 are incorporative in nature to which no response is required pursuant to the Federal Rules of Civil procedure. Therefore, the allegations are denied as stated.

156. **DENIED** as stated. The allegations contained in Paragraph 156 constitute conclusions of law to which no response is required pursuant to the Federal Rules of Civil Procedure. Therefore, the allegations are denied as stated. Strict proof thereof is demanded at time of trial.

157. **DENIED** as stated. The allegations contained in Paragraph 157 constitute conclusions of law to which no response is required pursuant to the Federal Rules of Civil Procedure. Therefore, the allegations are denied as stated. Strict proof thereof is demanded at time of trial.

158. **DENIED** as stated. The allegations contained in Paragraph 158 constitute conclusions of law to which no response is required pursuant to the Federal Rules of Civil Procedure. Therefore, the allegations are denied as stated. Strict proof thereof is demanded at time of trial.

## COUNT VI (DIRECT) – OPPRESSION

159. **DENIED** as stated. The allegations contained in Paragraph 159 are incorporative in nature to which no response is required pursuant to the Federal Rules of Civil procedure. Therefore, the allegations are denied as stated.

160. **DENIED** as stated. The allegations contained in Paragraph 160 constitute conclusions of law to which no response is required pursuant to the Federal Rules of Civil Procedure. Therefore, the allegations are denied as stated. Strict proof thereof is demanded at time of trial.

161. **DENIED** as stated. The allegations contained in Paragraph 161 constitute conclusions of law to which no response is required pursuant to the Federal Rules of Civil Procedure. Therefore, the allegations are denied as stated. Strict proof thereof is demanded at time of trial.

## COUNT VII – JUDICIAL DISSOLUTION

162. **DENIED** as stated. The allegations contained in Paragraph 162 are incorporative in nature to which no response is required pursuant to the Federal Rules of Civil procedure. Therefore, the allegations are denied as stated.

163. **DENIED** as stated. The allegations contained in Paragraph 163 constitute conclusions of law to which no response is required pursuant to the Federal Rules of Civil Procedure. Therefore, the allegations are denied as stated. Strict proof thereof is demanded at time of trial

164. **DENIED** as stated. The allegations contained in Paragraph 164 constitute conclusions of law to which no response is required pursuant to the Federal Rules

of Civil Procedure. Therefore, the allegations are denied as stated. Strict proof thereof is demanded at time of trial.

165. **DENIED** as stated. The allegations contained in Paragraph 165 constitute conclusions of law to which no response is required pursuant to the Federal Rules of Civil Procedure. Therefore, the allegations are denied as stated. Strict proof thereof is demanded at time of trial

166. **DENIED** as stated. The allegations contained in Paragraph 166 constitute conclusions of law to which no response is required pursuant to the Federal Rules of Civil Procedure. Therefore, the allegations are denied as stated. Strict proof thereof is demanded at time of trial.

167. **DENIED** as stated. The allegations contained in Paragraph 167 constitute conclusions of law to which no response is required pursuant to the Federal Rules of Civil Procedure. Therefore, the allegations are denied as stated. Strict proof thereof is demanded at time of trial

168. **DENIED** as stated. The allegations contained in Paragraph 168 constitute conclusions of law to which no response is required pursuant to the Federal Rules of Civil Procedure. Therefore, the allegations are denied as stated. Strict proof thereof is demanded at time of trial.

## COUNT VIII – DECLARATORY JUDGMENT

169. **DENIED** as stated. The allegations contained in Paragraph 169 are incorporative in nature to which no response is required pursuant to the Federal Rules of Civil procedure. Therefore, the allegations are denied as stated.

170. **DENIED** as stated. The allegations contained in Paragraph 170 constitute conclusions of law to which no response is required pursuant to the Federal Rules of Civil Procedure. Therefore, the allegations are denied as stated. Strict proof thereof is demanded at time of trial

171. **DENIED** as stated. The allegations contained in Paragraph 171 constitute conclusions of law to which no response is required pursuant to the Federal Rules of Civil Procedure. Therefore, the allegations are denied as stated. Strict proof thereof is demanded at time of trial.

172. **DENIED** as stated. The allegations contained in Paragraph 172 constitute conclusions of law to which no response is required pursuant to the Federal Rules of Civil Procedure. Therefore, the allegations are denied as stated. Strict proof thereof is demanded at time of trial

173. **DENIED** as stated. The allegations contained in Paragraph 173 constitute conclusions of law to which no response is required pursuant to the Federal Rules of Civil Procedure. Therefore, the allegations are denied as stated. Strict proof thereof is demanded at time of trial.

174. **DENIED** as stated. The allegations contained in Paragraph 174 constitute conclusions of law to which no response is required pursuant to the Federal Rules of Civil Procedure. Therefore, the allegations are denied as stated. Strict proof thereof is demanded at time of trial.

175. **DENIED** as stated. The allegations contained in Paragraph 175 constitute conclusions of law to which no response is required pursuant to the Federal Rules

of Civil Procedure. Therefore, the allegations are denied as stated. Strict proof thereof is demanded at time of trial.

## COUNT IX – INJUNCTIVE RELIEF

176. **DENIED** as stated. The allegations contained in Paragraph 176 are incorporative in nature to which no response is required pursuant to the Federal Rules of Civil procedure. Therefore, the allegations are denied as stated.

177. **DENIED** as stated. The allegations contained in Paragraph 177 constitute conclusions of law to which no response is required pursuant to the Federal Rules of Civil Procedure. Therefore, the allegations are denied as stated. Strict proof thereof is demanded at time of trial

178. **DENIED** as stated. The allegations contained in Paragraph 178 constitute conclusions of law to which no response is required pursuant to the Federal Rules of Civil Procedure. Therefore, the allegations are denied as stated. Strict proof thereof is demanded at time of trial.

179. **DENIED** as stated. The allegations contained in Paragraph 179 constitute conclusions of law to which no response is required pursuant to the Federal Rules of Civil Procedure. Therefore, the allegations are denied as stated. Strict proof thereof is demanded at time of trial.

## DEMAND FOR RELIEF

**WHEREFORE**, Defendant, Karen Kaminski, by and through her counsel, Ryan P. Campbell, Esquire of Rothenberg & Campbell, respectfully requests that this Honorable Court take the following actions regarding the Second Amended

Complaint of Plaintiff, Bountiful Capital, LLC, individually and derivatively on behalf of Allure Salon Group, LLC:

1. Dismiss the Complaint, in whole or in part, with prejudice;
2. Enter judgment in Defendant's favor on all claims;
3. Deny Plaintiff's requests for dissolution, disgorgement, injunctive relief, and all other equitable remedies as requested by Plaintiff;
4. Reduce any recovery by all applicable setoffs, recoupments, limitations, and mitigation amounts;
5. Award Defendant costs, attorneys' fees where authorized, and any other relief the Court deems just and proper.

## AFFIRMATIVE DEFENSES
### PURSUANT TO FED. R. CIV. P. 8(d) AND 12

**AND NOW COMES** the Defendant, Karen Kaminski ***("PLAINTIFF")***, by and through her counsel of record, Ryan P. Campbell, Esq. of Rothenberg & Campbell, who hereby submits the following Affirmative Defenses to the Second Amended Complaint filed by Plaintiff, Bountiful Capital, LLC ***("PLAINTIFF")***, in the above-captioned matter ***("AMENDED COMPLAINT")***, each of which are pleaded separately and in the alternative pursuant to Fed. R. Civ. P. 8(d) and 12 as follows:

### FIRST DEFENSE – FAILURE TO STATE A CLAIM

1. Plaintiff's Amended Complaint is barred and/or limited, in whole or in part, for failure to state a claim upon which relief may be granted because of the allegations of fact and law outlined more fully in Defendant's Counterclaims, which are hereby expressly adopted and incorporated by reference herein as if more fully set forth at length.

2. More specifically, Plaintiff has not adequately alleged the elements necessary to establish one or more of the asserted claims, directly on behalf of Plaintiff and/or derivatively on behalf of the Company, including Counts I and II (Breach of Contract); Counts III and IV (Breach of Fiduciary Duty); Count V (Waste, Unjust Enrichment, and Disgorgement); Count VI (Oppression); Count VII (Judicial Dissolution); Count VIII (Declaratory Judgment); and Count IX (Injunctive Relief).

**SECOND DEFENSE – LACK OF STANDING**

9. Plaintiff lacks constitutional or prudential standing to assert some or all of the claims because Plaintiff has not suffered a legally cognizable injury attributable to Defendant, lacks a legally protected interest in the subject matter, or is not entitled to enforce the rights asserted, as shown by the facts and allegations set forth in Defendant's Counterclaims below.

10. Plaintiff also lacks standing to assert claims belonging to the Company, unless Plaintiff satisfies the requirements governing derivative claims set forth in the Pennsylvania Uniform Limited Liability Company Act of 2016, *as amended*, 15 Pa. C.S.A. §§ 8811, *et seq*. ***("PULLCA")***.

**THIRD DEFENSE – CLAIMS BELONG TO THE COMPANY OR MUST BE BROUGHT DERIVATIVELY**

11. Some or all alleged injuries are injuries to the Company rather than injuries sustained directly and independently by Plaintiff.

12. Plaintiff has improperly pleaded derivative claims as direct claims and has failed to satisfy applicable requirements for derivative standing, demand, demand

futility, verification, adequate representation, or maintenance of membership pursuant to the Company's Operating Agreement and the PULLCA.

**FOURTH DEFENSE – FAILURE TO JOIN A REQUIRED PARTY**

13. Complete relief cannot be afforded, or the interests of an absent person may be impaired, without joining David Y. Bao ***("BAO")***, whose interests include the sole ownership of all membership interest in Plaintiff and who made individual investments in the Company from his personal account and individually executed financial documents with the Company, not in his capacity as member and director of Plaintiff.

14. The absence of Bao necessitates and requires joinder or, if joinder is not feasible, dismissal of the affected claims.

**FIFTH DEFENSE – LACK OF CAPACITY OR AUTHORITY**

15. The Amended Complaint is barred and/or limited, in whole or in part due to Plaintiff's lack of capacity or authority to maintain the claims for relief outlined therein pursuant to the terms and conditions of the Company's February 4, 2022 Operating Agreement. (See ECF Doc. No. 51-1).

16. To the extent Plaintiff purports to act for the Company, Plaintiff was not authorized to commence or maintain the asserted claims because he was not the assigned Manager nor was the lawsuit filed pursuant to the terms of Article 14 of the Operating Agreement. (Id.).

**SIXTH DEFENSE –**
**MANDATORY DISPUTE-RESOLUTION PROCEDURE**

17. Plaintiff's claims are barred, stayed, limited and/or subject to dismissal, in whole or in part, because the parties agreed to submit the dispute resolution procedure outlined in Sections 14.1 and/or 14.2 of the Company's Operating Agreement. (Id.).

18. Plaintiff failed to satisfy that dispute-resolution requirement before filing suit because Plaintiff failed to attempt to mediate the underlying dispute pursuant to Section 14.1 of the Operating Agreement and/or failed to file for arbitration with the American Arbitration Association pursuant to Section 14.2 of same. (Id.).

## SEVENTH DEFENSE – FAILURE TO SATISFY CONDITIONS PRECEDENT

19. Plaintiff failed to perform or satisfy one or more contractual, statutory, or equitable conditions precedent, including requisite notice, demand, approval, vote, consent, cure, mediation and arbitration as outlined by the Company's Operating Agreement, the PULLCA and pursuant to Pennsylvania law.

20. That failure bars and/or limits the claims and requested relief contained in the Amended Complaint, in whole or in part.

## EIGHTH DEFENSE – STATUTE OF LIMITATIONS

21. Plaintiff's Amended Complaint is barred and/or limited, in whole or in part, by the applicable statutes of limitations for its respective claims to the extent that Plaintiff knew or reasonably should have known, of the alleged conduct and jury within the respective statutory timeframe, but did not timely commence the action.

22. It is believed, and therefore averred, that Plaintiff failed to timely commence his claims for breach of fiduciary duty, dissolution and oppression, knowing or,

upon reasonable investigation should have known, of the conduct and injury within their respective statutory timeframes.

**NINTH DEFENSE — LACHES**

23. Plaintiff unreasonably delayed asserting the claims or seeking equitable relief despite knowledge of the relevant facts.

24. That delay materially prejudiced Defendant because the Company has been engaged in certain offers to purchase the Company, which have been withdrawn due to the instant litigation.

**TENTH DEFENSE — WAIVER**

25. The Amended Complaint is barred and/or limited, in whole or in part, due to Plaintiff's knowing and voluntary waiver of some or all of the asserted rights due to the facts and allegations set forth below in Defendant's Counterclaims.

**ELEVENTH DEFENSE — ESTOPPEL**

26. The Amended Complaint is barred and/or limited, in whole or in part, due to Plaintiff's statements, conduct, silence, acceptance of benefits, or course of performance set forth below in Defendant's Counterclaims that, individually and/or collectively, induced Defendant and the Company to reasonably to act or refrain from acting.

27. Plaintiff is therefore equitably estopped from taking a position inconsistent with the statements, conduct, silence, acceptance of benefits, or course of performance set forth below.

**TWELFTH DEFENSE —
RATIFICATION, ACQUIESCENCE, AND CONSENT**

28. The Amended Complaint is barred and/or limited, in whole or in part, due to Plaintiff's authorization, approval, ratification, acquiescence, or consent to the conduct now challenged, including as set forth in the facts and allegations described in Defendant's Counterclaims below.

29. Plaintiff accepted the benefits of said conduct with knowledge of the material facts, constituting equitable ratification, acquiescence and/or consent.

**THIRTEENTH DEFENSE –**
**PAYMENT, PERFORMANCE, OR DISCHARGE**

32. Defendant paid, performed, tendered, or otherwise discharged the obligations alleged in the Complaint, in whole or in part, through the facts and allegations set forth below in Defendant's Counterclaims.

**FOURTEENTH DEFENSE – SETOFF AND RECOUPMENT**

33. Any recovery by Plaintiff must be reduced or eliminated by amounts Plaintiff owes Defendant or the Company arising from the facts and allegations set forth below in Defendant's Counterclaims.

34. Defendant is entitled to setoff or recoupment in the amount established through the evidence.

**FIFTEENTH DEFENSE – ELECTION OF REMEDIES AND PROHIBITION AGAINST DOUBLE RECOVERY**

36. Plaintiff seeks duplicative or inconsistent recoveries for the same alleged injury under multiple legal and equitable theories.

37. Plaintiff may not obtain more than one recovery for the same alleged loss and must elect among legally inconsistent remedies when required.

## SIXTEENTH DEFENSE – FAILURE TO MITIGATE

38. Plaintiff failed to take reasonable steps to avoid or reduce the alleged damages, including the facts and allegations set forth below in Defendant's Counterclaims.

39. Any award must be reduced by losses that reasonable mitigation would have prevented.

## SEVENTEENTH DEFENSE – INTERVENING OR SUPERSEDING CAUSE

40. Any alleged loss was caused, in whole or in part, by independent acts, omissions, events, or conditions attributable to David Bao, individually or by agents on his behalf and at his direct instruction, rather than by Defendant.

## EIGHTEENTH DEFENSE – PLAINTIFF'S OWN CONDUCT

41. The Amended Complaint is barred and/or limited, in whole or in part, due to the conduct, acts, commissions and/or omissions of Bao, individually and/or on behalf of Plaintiff, as described more fully set forth below at length in Defendant's Counterclaims.

42. Bao's conduct as described *infra* bars or proportionately reduces any recovery to the extent permitted by the governing law.

## NINETEENTH DEFENSE – UNCLEAN HANDS

43. The requests for equitable relief contained in the Amended Complaint are barred and/or limited, in whole or in part, due to the inequitable conduct, acts, commissions and/or omissions of Bao, individually and on behalf of Plaintiff, which are directly related to the matters in dispute, more fully set forth below at length in

Defendant's Counterclaims, constituting an equitable bar from recovery pursuant to the doctrine of unclean hands.

**TWENTIETH DEFENSE — LACK OF CONSIDERATION**

44. The contractual claims contained in the Amended Complaint are barred and/or limited, in whole or in part, due to a total or partial failure of consideration as described by the facts and allegations set forth more fully below in Defendant's Counterclaims.

**TWENTY-FIRST DEFENSE —**
**FRAUD, MISREPRESENTATION, OR CONCEALMENT**

45. The contractual claims contained in the Amended Complaint are barred and/or limited, in whole or in part, due to Plaintiff's agreement, consent, transaction, or performance through Bao's fraud, misrepresentation and/or concealment more fully described in the facts and allegations contained below in Defendant's Counterclaims.

46. Plaintiff's conduct bars and/or limits enforcement and recovery to the extent permitted by Pennsylvania law.

**TWENTY-SECOND DEFENSE — MISTAKE**

48. The agreement or transaction was affected by mutual mistake, or by a unilateral mistake known to or caused by Plaintiff, concerning the terms and conditions of the Company's Operating Agreement including compensation for Defendant's work and services, more fully set forth in the facts and allegations set forth below in her Counterclaims.

49. The mistake bars and/or limits enforcement or supports reformation, rescission, or limitation of relief.

### TWENTY-THIRD — STATUTE OF FRAUDS

51. The contractual claims contained in the Amended Complaint are barred and/or limited, in whole or in part, to the extent Plaintiff relies on an alleged oral or unsigned agreement that falls within the applicable statute of frauds, as set forth in the facts and allegations contained in Defendant's Counterclaims.

### TWENTY-FOURTH DEFENSE — IMPOSSIBILITY, IMPRACTICABILITY, OR FRUSTRATION OF PURPOSE

52. Defendant's alleged nonperformance is excused, in whole or in part, because Plaintiff's conduct more fully set forth in detail in Defendant's Counterclaims articulated below rendered performance impossible or impracticable or substantially frustrated the agreement's principal purpose.

### TWENTY-FIFTH DEFENSE — PREVENTION AND HINDRANCE OF PERFORMANCE

53. Plaintiff prevented, hindered, delayed, or failed to cooperate with Defendant's performance through the conduct more fully described in the facts and allegations contained in of Defendant's Counterclaims.

54. Plaintiff may not recover for nonperformance that Plaintiff caused or materially contributed to causing.

### TWENTY-SIXTH DEFENSE — CONTRACTUAL LIMITATION OF LIABILITY OR REMEDY

55. Plaintiff's recovery is barred and/or limited, in whole or in part, by the enforceable provisions governing limitation of liability and indemnification, contained in the Company's Operating Agreement.

**TWENTY-SEVENTH DEFENSE –**
**BUSINESS-JUDGMENT PROTECTION**

56. The challenged decisions contained in the Amended Complaint were made by Defendant as an authorized manager and member in good faith, on an informed basis, and in the honest belief that the decisions served the Company's interests, as more fully set forth in the facts and allegations contained in Defendant's Counterclaims.

57. Therefore, any liability outlined in the Amended Complaint is barred and/or limited, in whole or in part, pursuant to the applicable business judgment doctrine.

**TWENTY-EIGHTH DEFENSE – GOOD FAITH AND RELIANCE**

58. At all times relevant hereto, Defendant acted in good faith and reasonably relied on the applicable Company records and professional advice in making any of the decisions challenged by Plaintiff in the Amended Complaint.

59. Therefore, such good-faith reliance bars and/or limits liability, in whole or in part, to the extent provided by the governing law and the Operating Agreement.

**TWENTY-NINTH DEFENSE – NO BREACH**

62. Defendant did not breach any enforceable contractual duty.

63. Defendant's conduct, as described by the facts and allegations contained in Defendant's Counterclaim, complied with the Operating Agreement's text, the

parties' course of performance, and any authorized modification, waiver, or consent, including the amendments executed by the parties.

## THIRTIETH DEFENSE – PLAINTIFF'S PRIOR MATERIAL BREACH

64. Plaintiff materially breached the contract first, as outlined in the facts and allegations contained in Defendant's Counterclaim set forth below.

65. Plaintiff's prior material breach excused or suspended Defendant's subsequent performance.

## THIRTY-FIRST DEFENSE – PLAINTIFF'S NONPERFORMANCE

66. Plaintiff failed to perform its own material obligations, including those more particularly described at length in Defendant's Counterclaims below, and therefore cannot recover for Defendant's alleged nonperformance.

## THIRTY-SECOND DEFENSE – CONTRACTUAL DISCRETION

69. The Operating Agreement granted Defendant discretion concerning all decisions and courses of performance challenged in the Amended Complaint, and Defendant exercised that discretion within the contractually permitted scope.

## THIRTY-THIRD DEFENSE – NO CAUSATION OR CONTRACT DAMAGES

70. Plaintiff cannot establish that any alleged breach directly or proximately caused any recoverable loss, individually and/or on behalf of the Company.

71. The claimed damages set forth in the Amended Complaint are speculative, remote, duplicative, avoidable, or otherwise not recoverable under the Operating

Agreement or governing law because of the facts and allegations set forth below in Defendant's Counterclaim.

**THIRTY-FOURTH DEFENSE –**
**BAR ON IMPLIED DUTIES CONTRARY TO EXPRESS TERMS**

72. Plaintiff may not use an implied contractual duty to create obligations inconsistent with the agreement's express terms or to obtain rights for which the parties did not bargain based on the terms of the Company's Operating Agreement.

**THIRTY-FIFTH DEFENSE –**
**NO VIOLATION OF THE OPERATING AGREEMENT**

73. The Amended Complaint is barred and/or limited, in whole or in part, because Defendant's conduct and actions at all times pertinent to this lawsuit was/were consistent and in compliance with the Company's Operating Agreement.

74. At all times pertinent hereto, the conduct challenged by Plaintiff was authorized by the Company's Operating Agreement, Defendant's authority as Manager, and/or applicable Pennsylvania law.

**THIRTY-SIXTH DEFENSE – MANAGEMENT AUTHORITY**

76. Under the Operating Agreement and pursuant to PULLCA, authority over all challenged decisions outlined in the Amended Complaint was vested in the Manager, Defendant.

77. Therefore, all challenged actions was/were taken with the approval required by the Operating Agreement and Pennsylvania law.

**THIRTY-SEVENTH DEFENSE – NO REQUIRED CONSENT OR VOTE**

78. The actions challenged by Plaintiff in the Amended Complaint did not require Plaintiff's consent or a vote pursuant to the terms of the Company's Operating Agreement and/or PULLCA.

**THIRTY-EIGHTH DEFENSE — EXCULPATION OR INDEMNIFICATION UNDER THE OPERATING AGREEMENT**

80. Liability is barred and/or limited, in whole or in part, by the Operating Agreement's provisions concerning exculpation, indemnification, reliance, or limitation of duties, including Sections 2.8, 4.2, 11.3, and 11.4. (See ECF Doc. No. 51-1).

**THIRTY-NINTH DEFENSE — CONTRACTUAL MODIFICATION OF DUTIES**

81. The Operating Agreement validly and unambiguously defines, modifies, restricts, or eliminates the duty or standard of conduct on which Plaintiff relies, to the extent permitted pursuant to all applicable law and the PULLCA.

82. At all times pertinent hereto, Defendant acted within the authority and standards established by the Operating Agreement and the PULLCA.

**FORTIETH DEFENSE — DISTRIBUTION AND CAPITAL-ACCOUNT COMPLIANCE**

83. Any withholding, reimbursement, capital call, or capital-account adjustment challenged by Plaintiff complied with the Operating Agreement and applicable Pennsylvania law because of the facts and allegations set forth below in Defendant's Counterclaims.

**FORTY-FIRST DEFENSE — INFORMATION AND INSPECTION RIGHTS SATISFIED**

84. Defendant and the Company provided, offered, or made available the information to which Plaintiff was entitled, subject to lawful conditions and limitations, as shown by the facts and allegations set forth below in Defendant's Counterclaims.

85. Any additional demand was overbroad, made for an improper purpose, sought protected material, or exceeded Plaintiff's contractual or statutory rights.

**FORTY-SECOND DEFENSE – FAILURE TO PROVE WASTE**

86. Plaintiff cannot establish waste because the challenged conduct did not constitute an unauthorized destruction, misuse, diversion, or dissipation of property or Company assets.

87. Plaintiff's allegations amount to disagreement with an authorized business decision concerning the challenged transactions and conduct appearing in the Amended Complaint.

**FORTY-THIRD DEFENSE –**
**AUTHORIZATION, APPROVAL, OR RATIFICATION**

89. The challenged transaction(s) or use(s) of assets outlined in the Amended Complaint was/were authorized, approved, or ratified by the Plaintiff, whose approval and assent was either not required by the Company's Operating Agreement or applicable law, or was otherwise presumed pursuant to Section 2.8(d) of said Operating Agreement. (See ECF Doc. No. 51-1).

**FORTY-FOURTH DEFENSE – EXPRESS CONTRACT GOVERNS**

91. Plaintiff's unjust-enrichment claim is barred to the extent an enforceable contract or Operating Agreement governs the same subject matter. See Temple

Univ. Hosp., Inc. v. Healthcare Mgmt. Alternatives, Inc., 832 A.2d 501 (Pa. Super. 2003), *appeal denied*, 847 A.2d 1288 (Pa. 2004); Higgins v. Nationwide Affinity Ins. Co. of America, 329 A.3d 701 (Pa. Super. 2024) (*citing* Wilson Area Sch. Dist. v. Skepton, 895 A.2d 1250 (Pa. 2006)); Wilson v. Parker, 227 A.3d 343 (Pa. Super. 2020).

**FORTY-FIFTH DEFENSE – NO UNJUST BENEFIT**

92. At no time pertinent hereto did Defendant receive or retain a benefit from Plaintiff under circumstances making retention inequitable. See Temple Univ. Hosp., Inc., 832 A.2d at 506, *appeal denied*, 847 A.2d at 1288; Higgins, 329 A.3d at 705 (*citing* Skepton, 895 A.2d at 1254); Wilson, 227 A.3d at 353.

93. Any benefit Defendant received was authorized, earned, paid for, conferred gratuitously, or provided pursuant to the Operating Agreement or applicable law.

**FORTY-SIXTH DEFENSE – ADEQUATE CONSIDERATION**

95. Defendant provided fair and adequate consideration for any benefit alleged in the Amended Complaint as more fully described in the allegations of fact set forth below in Defendant's Counterclaims.

**FORTY-SEVENTH DEFENSE – NO CAUSAL CONNECTION**

96. Plaintiff cannot trace the alleged loss or claimed benefit to Defendant's acts and/or omissions or establish a causal connection between Defendant's conduct and the amount sought as damages.

**FORTY-EIGHTH DEFENSE –**
**DISGORGEMENT IS NOT AN INDEPENDENT CAUSE OF ACTION**

97. Disgorgement is a legal remedy rather than an independent cause of action.

98. Plaintiff is not entitled to disgorgement absent an established substantive violation and proof of a legally recoverable amount attributable to that violation.

**FORTY-NINTH DEFENSE —**
**DISGORGEMENT WOULD BE PUNITIVE OR DUPLICATIVE**

99. The requested disgorgement exceeds any net benefit allegedly obtained by Defendant, fails to deduct legitimate expenses or value provided, or would duplicate other requested damages.

**FIFTIETH DEFENSE — FAILURE TO ESTABLISH OPPRESSION**

100. Defendant did not engage in conduct constituting actionable member or minority-owner oppression under the laws of Pennsylvania. See 15 Pa. C.S.A. § 8871(a)(4)(iii); Toth v. Toth, 324 A.3d 469, 486 (Pa. Super. 2024); Staiger v. Holohan, 100 A.3d 622, 624 (Pa. Super. 2014).

101. The challenged conduct consisted of legitimate exercises of contractual or managerial authority concerning all acts described below in the allegations of fact contained in Defendant's Counterclaims.

**FIFTY-FIRST DEFENSE —**
**REASONABLE EXPECTATIONS WERE NOT FRUSTRATED**

102. Plaintiff cannot establish that Defendant defeated any objectively reasonable expectation arising from the Operating Agreement, Company structure, or parties' established relationship.

103. Any expectation asserted by Plaintiff is inconsistent with the terms of the Operating Agreement and/or Defendant's prior course of conduct.

**FIFTY-SECOND DEFENSE — LEGITIMATE BUSINESS PURPOSE**

104. The challenged action(s) furthered a legitimate Company purpose, including those set forth in the Company's Operating Agreement, and was/were reasonable in relation to that purpose.

**FIFTY-THIRD DEFENSE –**
**EQUAL OR CONTRACTUALLY PERMITTED TREATMENT**

105. Plaintiff was treated consistently with the Operating Agreement and the rights attached to Plaintiff's membership interest.

106. Any difference in treatment resulted from the differing ownership rights, roles, contributions, obligations or other legitimate reasons between the parties.

**FIFTY-FOURTH DEFENSE –**
**NO FREEZE-OUT OR DENIAL OF RIGHTS**

107. Plaintiff was not unlawfully excluded from management, information, distributions, employment, or economic participation.

108. Any restriction resulted from the conduct of Bao, individually and/or on behalf of Plaintiff, more fully set forth in the facts and allegations contained in Defendant's Counterclaims below.

**FIFTY-FIFTH DEFENSE –**
**OPPRESSION IS NOT AN INDEPENDENT CLAIM OR REMEDY**

109. To the extent the law of Pennsylvania does not recognize a standalone claim for oppression under the circumstances alleged, the oppression count fails to state an independent claim.

110. To the extent oppression is relevant only to a statutory remedy, Plaintiff must establish each prerequisite for that remedy.

**FIFTY-SIXTH DEFENSE – STATUTORY GROUNDS ARE ABSENT**

111. Plaintiff cannot establish the statutory grounds for judicial dissolution pursuant to Sections 8811—8898 of the PULLCA.

112. It remains reasonably practicable for the Company to carry on its activities in conformity with the Operating Agreement for the reasons set forth below in the allegations of Defendant's Counterclaims.

## FIFTY-SEVENTH DEFENSE – NO MANAGEMENT DEADLOCK

113. The Company is not subject to a disabling management deadlock.

114. Any disagreement can be resolved through Defendant's own conduct as sole Manager of the Company.

## FIFTY-EIGHTH DEFENSE – COMPANY PURPOSE REMAINS ACHIEVABLE

115. The Company continues to pursue, or remains capable of pursuing, its lawful purpose, including the Company's purpose and its current and future operations.

116. Plaintiff's disagreement with particular decisions of Defendant does not render continued Company operations impracticable.

## FIFTY-NINTH DEFENSE – PLAINTIFF CAUSED OR MANUFACTURED THE ALLEGED GROUNDS

117. Plaintiff and/or Bao caused, materially contributed to, or manufactured the conditions cited in support of dissolution through Plaintiff's own conduct more fully set forth below in Defendant's Counterclaims.

118. Plaintiff may not obtain equitable relief based on conditions Plaintiff wrongfully created.

## SIXTIETH DEFENSE – CONTRACTUAL REMEDY HAS NOT BEEN EXHAUSTED

119. Plaintiff failed to invoke or exhaust the Operating Agreement's procedures for resolving deadlock, withdrawal, redemption, transfer, valuation, or buyout.

**SIXTY-FIRST DEFENSE —
DISSOLUTION IS UNNECESSARY OR DISPROPORTIONATE**

120. Judicial dissolution is unnecessary and disproportionate because any established dispute can be addressed through less disruptive relief, including available contractual and equitable remedies. See Toth, 324 A.3d at 492.

**SIXTY-SECOND DEFENSE —
INJUNCTIVE RELIEF IS NOT AN INDEPENDENT CAUSE OF ACTION**

122. Injunctive relief is a remedy and does not constitute an independent cause of action.

123. Because Plaintiff cannot establish an underlying substantive claim, Plaintiff is not entitled to injunctive relief.

**SIXTY-THIRD DEFENSE — NO IRREPARABLE HARM**

124. Plaintiff has not suffered and is not threatened with immediate, non-speculative, irreparable harm.

125. The alleged injury, if established, can be measured and remedied through monetary relief or another adequate remedy.

**SIXTY-FOURTH DEFENSE — NO LIKELIHOOD OF SUCCESS**

126. Plaintiff cannot establish a likelihood of success on the merits because of the facts and allegations contained in Defendant's Counterclaims set forth below.

**SIXTY-FIFTH DEFENSE —
BALANCE OF EQUITIES FAVORS DEFENDANT**

127. The threatened injury to Defendant, the Company, its members, employees, creditors, or third parties from the requested injunction outweighs any legally cognizable harm to Plaintiff because of the facts and allegations contained in Defendant's Counterclaims set forth below.

## SIXTY-SIXTH DEFENSE — INJUNCTION WOULD DISSERVE THE PUBLIC INTEREST

128. The requested injunction would disserve the public interest by frustrating all of the commercial leases owned and managed by the Company set forth below in Defendant's Counterclaims.

## SIXTY-SEVENTH DEFENSE — REQUESTED INJUNCTION IS OVERBROAD OR INDEFINITE

129. The requested injunction is vague, overbroad, indefinite, or not reasonably tailored to any established violation.

130. The requested order would improperly require the Court to supervise ongoing Company management or contractual performance.

## SIXTY-EIGHTH DEFENSE — MANDATORY INJUNCTION IS UNWARRANTED

131. To the extent Plaintiff seeks to alter the status quo or compel affirmative action, Plaintiff cannot satisfy the heightened requirements for mandatory injunctive relief.

## SIXTY-NINTH DEFENSE — ADEQUATE REMEDY AT LAW

132. Plaintiff possesses an adequate remedy at law through damages, accounting, contractual dispute-resolution procedures, statutory inspection rights, or other adequate remedy at law.

**SEVENTIETH DEFENSE –**
**DELAY UNDERMINES EQUITABLE RELIEF**

133. Plaintiff delayed seeking injunctive relief after learning of the challenged conduct as early as April 4, 2024.

134. That delay contradicts any assertion of immediate and irreparable harm and prejudiced Defendant through the facts and allegations outlined below in Defendant's Counterclaims.

**SEVENTY-FIRST DEFENSE – SECURITY IS REQUIRED**

135. If preliminary injunctive relief is granted, Plaintiff must provide security and/or bond sufficient to compensate Defendant and other affected persons for losses caused by a wrongful injunction.

**DEMAND FOR RELIEF**

**WHEREFORE**, Defendant, Karen Kaminski, by and through her counsel, Ryan P. Campbell, Esquire of Rothenberg & Campbell, respectfully requests that this Honorable Court take the following actions regarding the Second Amended Complaint of Plaintiff, Bountiful Capital, LLC:

1. Dismiss the Complaint, in whole or in part, with prejudice;
2. Enter judgment in Defendant's favor on all claims;
3. Deny Plaintiff's requests for dissolution, disgorgement, injunctive relief, and all other equitable remedies as set forth by Plaintiff;
4. Reduce any recovery by all applicable setoffs, recoupments, limitations, and mitigation amounts; and
5. Award Defendant costs, attorneys' fees where authorized, and any other relief the Court deems just and proper.

## COUNTERCLAIMS AND JOINDER COMPLAINT
### PURSUANT TO FED. R. CIV. P. 13, 19 AND 20

**AND NOW COMES** the Defendant, Karen Kaminski, by and through her counsel of record, Ryan P. Campbell, Esq. of Rothenberg & Campbell, who hereby submits the following Counterclaims to the Second Amended Complaint filed by Plaintiff, Bountiful Capital, LLC ***("AMENDED COMPLAINT")***, pursuant to Fed. R. Civ. P. 13, joining David Y. Bao ***("BAO")*** and Allure Salon Group, LLC (the ***"COMPANY"***), jointly and/or severally, as Third-Party Defendants pursuant to Fed. R. Civ. P. 13(h), 19 and/or 20:

1. Defendant adopts and incorporates by reference all responses, admissions and allegations contained in both Paragraphs 1—179 of her Amended Answer and Paragraphs 1—135 of her Affirmative Defenses, respectively, each as if more fully set forth herein at length.

### PRELIMINARY STATEMENT

2. More accurately, this case arises from Bao's failed attempts to fraudulently recharacterize his capital contributions to the Company as high-interest debt and surreptitiously use these "disguised loans" to secure a controlling interest in the Company as means to "squeeze-out" or "freeze-out" Defendant.

3. More specifically, from 2022 through 2025, investor-member David Y. Bao ***("BAO")***, ***individually and on behalf*** of Plaintiff, misrepresented the terms of the Company's Operating Agreement to its former accountants, including Cherise Hammie, instructing them to falsify the Company's corporate records and tax returns to classify ***both his and Plaintiff's*** equity investments—including the monies

initially invested as consideration for ownership interest in the Company—as high-interest loans, jeopardizing the Company's financial integrity.

4. Upon Ms. Hammie's abrupt resignation after observing these fraudulent acts, the Company's current accountant—Mazzei Associates—discovered Bao's "disguised loans" in the Company's books and tax returns, informed Defendant, and later correctly categorized said monies as "capital contributions" upon filing the Company's amended tax returns for 2022 and 2023.

5. In May of 2025, Bao initiated the instant lawsuit on behalf of Plaintiff and the Company, seeking assistance from the Court in perfecting his scheme to declare his disguised contributions as "loans," each with a 15.00% yearly interest rate.

6. The scenario described above is a fraudulent variation of what's known in finance as a "loan-to own" investment strategy, often employed by private equity investors who legally buy a company's debt to eventually foreclose on it and take over ownership.

7. Here, Bao appeared as a "wolf in sheep's clothing", promising Defendant high Company profits through his investment capital and her "sweat equity", while concealing his nefarious intention of surreptitiously securing a controlling interest in the Company through financial influence, which he could later use to maximize the return of his investments to the detriment of both the Company and Defendant.

8. Make no mistake, if what Defendant has alleged above is true, such conduct constitutes fraud, *de facto* oppressive conduct, breach of fiduciary duty and self-dealing.

9. Meanwhile, Defendant has worked fifty-hours for each of the previous hundred weeks building, managing and keeping the Company profitable all while battling a cancer diagnosis and receiving zero compensation from the Company, despite the Operating Agreement permitting compensation for her work.

10. Moreover, even though Bao's fraudulent strategy has failed thus far in securing Plaintiff a controlling interest in the Company, his conduct and subsequent acts have directly caused financial harm to the Company and Defendant, who has yet to be compensated by the Company she herself dedicated the last four and one-half years

11. As such, Defendant brings the instant Counterclaims against Bao, individually, Plaintiff and the Company pursuant to Fed. R Civ. P. 13, seeking declaratory relief and recovery of damages under the following legal theories: Declaratory Judgment (Count I); Breach of Contract (Count II) or, alternatively, Unjust Enrichment/Promissory Estoppel (Count III); Breach of Fiduciary Duty (Count IV); Dissociation (Count V); and Misrepresentation/Fraud (Count VI).

## PARTIES, JOINDER, JURISDICTION AND VENUE

12. Third-Party Defendant, David Y. Bao ***("BAO")***, is subject to service of process as an adult individual who is domiciled as a resident and citizen of the State of California with a mailing address of 2007 Sawtelle Blvd., Suite 5, Los Angeles, California 90025.

13. At all times pertinent hereto, Bao is the sole managing member and shareholder of Bountiful Capital, LLC, the Plaintiff in this lawsuit and a Wyoming limited liability company with a principal office located in the State of California.

14. At all times pertinent hereto, Bao made individual and personal financial contributions to the Company as reflected in the Company books and records, independent from those made by him on behalf of Plaintiff that will be set forth at length infra such that Bao enjoys an interest related to the subject of this action and is so situated that disposing of the action in his absence may impair or impede Bao's ability to protect said interests or may leave Plaintiff subject to a substantial risk of incurring double or inconsistent obligations because of Bao's interest pursuant to Fed. R. Civ. P. 19.

15. At all times pertinent hereto, Defendant was a member and appointed Manager of the Company and her rights to relief against the Company and Bao, individually, are being asserted jointly and/or severally with respect to the same series of transactions and occurrences upon all questions of law or fact common to all defendants arising from this action pursuant to Fed. R. Civ. P. 20(b).

16. At all times pertinent hereto and upon information and belief, Bao has dominated and controlled Plaintiff—where he serves as its sole managing member and director—to such an extent that Plaintiff lacks any separate legal identity and exists merely as an alter ego of Bao.

17. At all times pertinent hereto, Bao has exercised complete control over Plaintiff with respect to its finances, policies, financial management, and business operations, using Plaintiff as a mere façade to further Bao's personal financial interests and to evade both his contractual obligations to Defendant, the Company and third-party creditors.

18. Bao is joined individually as a party herein compulsively as a necessary and required party pursuant to Fed. R. Civ. P. 19(a) due to his personal investments with the Company, and permissively pursuant to Fed. R. Civ. P. 20 by piercing the corporate liability veil of Plaintiff, explained at length *infra.*

19. This Honorable Court enjoys jurisdiction over Defendant's Counterclaims and is the appropriate venue to consider them pursuant to Fed. R. Civ. P. 13 as a responsive pleading to Plaintiff's Second Amended Complaint, filed in the United States District Court for the Middle District of Pennsylvania where the inclusion of Bao and the Company does not destroy jurisdiction.

## OPERATIVE FACTUAL BACKGROUND

20. On December 12, 2016, Defendant organized the Company as its sole managing member with the intent of owning, investing in, managing and further developing salon suites across Pennsylvania such that the Company would own and manage a rent-roll of leased commercial properties that were sub-divided, and then rent out each of those sub-divided suites to independent beauty professionals.

21. Each tenant pays the Company for its own suite and related business and logistical support[2].

22. Defendant first met Bao in July 2021 while working as a consultant for The Riverside Co, where Bao was employed as director of its Salon Suite Project.

---

[2] Consulting services are also available to tenants, but provided separately by Allure Salon Suite Consulting, LLC.

23. Bao[3] later engaged Defendant's consulting company, Allure Salon Suite Consulting, LLC, to assist him develop his own salon suite facility in Southern California.

24. It was during this professional relationship that Bao and Defendant began discussing a joint venture that would later become the Company.

25. On January 14, 2022, Bao, individually, sent a letter of intent to make an offer to Defendant and the Company entitled "Investment in Allure Salon Group, LLC," which contoured the materials terms of what would later become the Company's Operating Agreement, including Bao's initial $350,000.00 investment with the Company in consideration for a 40% ownership interest therein. A true and correct copy of Defendant's 01/14/2022 response is appended hereto and marked as **Exhibit "E"**.

26. On or about January 15, 2022, Defendant, both individually and on behalf of the Company, agreed to accept a sum of $275,000.00 from Bao, individually, pursuant to the terms of a Promissory Note executed electronically that day, which included a 5% per annum interest rate. A true and correct copy of the January 2022 Promissory Note is appended hereto and marked as **Exhibit "F"**.

27. The January 2022 promissory note indicates that the money will automatically convert to Company equity at $5,250.00 per unit once the equity investment goes through. (See ECF Doc No. 51-6).

---

[3] It is believed and therefore averred that Bao is involved in at least a half-dozen companies and/or organizations as an investor or in a leadership capacity including: St. Cloud Capital; Brookfield Tech Investing; Destiny Financial Corporation; Allure Salon Group & Professional Education Center; Taker Protocol and Luckin Coffee Inc.

28. On January 27, 2022, Defendant, both individually and on behalf of the Company, agreed to accept a sum an additional sum of $75,000.00 from Bao, individually, pursuant to the terms of an Amendment to the January 2022 Promissory Note executed electronically that day, perfecting Plaintiff's initial $350,000.00 capital contribution to the Company in consideration for its 40.00% ownership interest. A true, correct and unsigned copy of the January 27, 2022 Addendum is appended hereto and marked as **Exhibit "G"**.

29. As of February 4, 2022, the January 2022 Promissory Note was extinguished and then utilized as consideration for Plaintiff's initial ownership interest and as a capital contribution. (See ECF Doc. No. 51-1).

30. On February 4, 2022, the parties executed the Operating Agreement of the Company with a "purpose of owning, investing in, managing and further development of salon suites" in Pennsylvania where Defendant was named as Manager, President, Co-Chief Executive Officer and Treasurer and owning a 60% interest and Plaintiff was named Co-Chief Executive Officer and Secretary owning a 40% interest. (See ECF Doc. No. 51-1).

31. Additional relevant portions of the Company's Operating Agreement are reproduced below:

> 2.8 *Manner of Acting*
>
> (a) *Formal Action by Members.* Unless otherwise set forth in this Agreement, ***the affirmative vote of the holders of at least seventy-five percent (75%) of the LLC Interests (the "Required Majority") shall be the act of the Members.***
>
> (b) *Three-Fourths Vote Required.* The affirmative vote or consent of seventy-five percent (75%) of LLC Interests held by the

> Members shall be required to authorize a manager, Member, or other person to do any act on behalf of the Company that contravenes the certificate of organization or a written provision of this Agreement, including, without limitation, any provision that expressly limits the purpose, business or affairs of the company or the conduct thereof [...]

3.4 *Loans.* ***No loans shall be contracted on behalf of the Company and no evidences of indebtedness shall be issued in its name unless authorized by a vote of a Required Majority.*** Notwithstanding the foregoing there are loans currently with Peoples Security Bank that all members are aware of with an aggregate outstanding balance of $165,212.00 (the "Existing Debt") [...]

4.1 *Limited Liability Company Interests.* Limited Liability Company Interests (the "LLC Interests") are the personal property of each Member representing an equity interest in the Company and may, with the consent of the Required Majority, be evidenced by a Certificate of Limited Liability Company Interest ("LLC Interest Certificate") issued by the Company. Initially, the Company will not issue LLC Interest Certificates and each Member shall receive a number of LLC Interests that corresponds to his Profit Percentage, as set forth on Schedule A, described in Section 5.1 below. The Company may issue LLC Interests for cash, property, promissory note, services performed or to be performed, as incentive compensation, or for any other consideration determined by the Members to be appropriate [...]

5.4 *Capital Contributions.* A Member shall not be required to lend any funds to the Company or to make any further capital contribution to the Company after his initial Capital Contribution is paid. A Member shall not have any obligation to the Company or to any other Member to restore any negative balance in his capital account. No Member may withdraw capital or receive any distributions except as specifically provided herein. No interest shall be paid by the Company on any capital contributions to the Company. In order to obtain additional funds or for other business purposes, the Members may approve additional Capital Contributions to the Company in exchange for additional LLC Interests, at a price per LLC Interest

corresponding to the Appraised Value (as defined below) or such other price as the Members approve [...]

8.1 *Books and Records.* The Manager shall keep, or cause to be kept, full and accurate books and records of the Company. The books and records of the Company shall be kept at the principal office of the Company or at such other places as the Members shall from time to time determine. To the extent possible and feasible, all books and records can be shared electronically and made available to all Members upon request, so long as such request is not unduly burdensome to the Company [...]

8.4 *Tax Returns.* The Manager shall cause to be prepared and filed all necessary Federal and state income tax returns for the Company, including making the elections described in Section 8.5. Each Member shall furnish to the Manager all pertinent information in its possession relating to Company operations that is reasonably necessary to enable the Company's income tax returns to be prepared and filed [...]

10.1 *Manager.* The Manager shall be the Co-Chief Executive Officer of the Company responsible (subject to any rights of the Members set forth in this Agreement or the Statute) for the general overall supervision of the day-to-day business and affairs of the Company. The Manager may also have such other titles and hold such other offices as the Required Majority shall so designate (which titles may include, but not necessarily be limited to, president, chairman and/or chief operating officer). She/He shall, when present, preside at all meetings of the Members. The Manager may sign, on behalf of the Company, such deeds, mortgages, bonds, contracts or other instruments which have been appropriately authorized to be executed by the Members except when the signing or execution thereof shall be expressly delegated by the Members, this Agreement or the Statute to some other Officer or agent of the Company; and, in general, the Manager shall perform all duties as may be prescribed by the Members from time to time. Unless the Members otherwise prescribe, the Manager may carry out any or all of her/his duties through other persons to whom he may delegate responsibilities [...]

> 10.7 *Salaries.* The salaries of the officers, if any, shall be fixed from time to time by a Required Majority and no officer shall be prevented from receiving such salary by reason of the fact that he is also a Member of the Company [...]
>
> 10.8 *Approval Required.* Notwithstanding anything herein to the contrary, the Manager must consult with and obtain approval of at least seventy-five (75%) of the LLC Interests prior to taking any of the following actions: [...] (d) Incurring debt in excess of $10,000; [...] (k) Acquiring or owning any debt or equity interest of any person or forming or establishing any subsidiary [...]
>
> 11.3 *Indemnification by Company.* To the fullest extent permitted by law, the Company shall indemnify and hold harmless any person who was or is a party defendant or is threatened to be made a party defendant to any threatened, pending or completed action, suit or proceeding, whether civil, criminal, administrative, or investigation (other than an action by or in the right of the Company) by reason of the fact that he is or was a Member of the Company, officer, employee or agent of the Company, or is or was serving at the request of the Company, against any and all losses, claims, damages, expenses (including attorney's fees), judgments, fines and amounts paid in settlement actually and reasonably incurred by him in connection with such action, suit or proceeding if the party to be indemnified acted in good faith and in a manner he reasonably believed to be in or not opposed to the best interests of the Company, and with respect to any criminal action or proceeding, had no reasonable cause to believe his conduct was unlawful. The termination of any action, suit, or proceeding by judgment, order, settlement, conviction, or upon a plea of *nolo contendere* or its equivalent, shall not in itself create a presumption that the person did or did not act in good faith and in a manner which he reasonably believed to be in the best interest of the Company, and, with respect to any criminal action or proceeding, had reasonable cause to believe that his conduct was unlawful.

(See ECF Doc. No.51-1 at pp. 3-15).

32. On or about February 14, 2022, Defendant, on behalf of the Company, agreed to accept a sum of $115,000.00 from Bao, on behalf of Plaintiff, pursuant to the

terms of a Promissory Note executed electronically that day at 5.00% per annum interest. (See ECF Doc. No. 51-2)

33. On or about April 21, 2022, Bao, on behalf of Plaintiff only, and Defendant, on behalf of the Company only, executed an additional promissory note wherein Plaintiff provided a sum of $185,000.00 at an interest rate of 5.00% per annum, $150,000.00 of which was later transferred and utilized as consideration for Plaintiff's additional 9% ownership interest in the Company. (See ECF Doc. No. 51-3).

34. As of the date of this filing, only the February 2022 and April 2022 Promissory Notes exist on the books as "loans" by Plaintiff, totaling $300,000.00 in principal, each at an interest rate of 5.00% per annum. (See ECF Doc. Nos. 51-2 and 51-3).

35. All future monies paid by Bao, individually and/or on behalf of Plaintiff, were made unilaterally by Bao, without supporting documentation, without consent or approval from Defendant or the Company, and are therefore considered "capital contributions" pursuant to the Operating Agreement, as accurately reflected on the Company books and tax returns.

36. From February 4, 2022 through mid-October of 2025, Bao, individually and on behalf of Plaintiff, had full access to all the Company's accounting books, records and software as well as all Company bank accounts.

37. From February 4, 2022 through September 2026, Bao, individually and on behalf of Plaintiff, unilaterally and without the Company's consent or approval,

contributed approximately $738,500.00 in additional funds[4] to the Company, over and above the $300,000.00 represented by the February and April 2022 promissory notes.

38. In fact, Bao was individually responsible for most, if not all, of the $738,500.00 in additional funds to the Company, not Plaintiff.

39. Initially, Bao recorded each of his additional financial contributions in the Company's accounting software as "capital contributions."

40. Bao would then later instruct the Company's former accountants to fraudulently reclassify these transactions as "loans" on the Company's tax returns.

41. Frank Ciero prepared the Company's 2022 tax return and was terminated by the Company upon Bao's insistence on replacing him with Cherise Hammie.

42. Ms. Hammie was then retained and prepared the Company's 2023 tax return—including the mischaracterized "loans" from Bao to the Company.

43. In November 2024, Ms. Hammie resigned in an e-mail to Bao after, upon information and belief, Bao instructed her to improperly re-classify all funds Plaintiff contributed to the Company as "loans" on its 2024 tax return.

44. Notably, Ms. Hammie's e-mail notes her "serious concerns regarding the internal dynamics within your partnership", the "misalignments between the partners", and her being "uncomfortable continuing to support an environment where there is a potential for legal action against me or my business." (See ECF Doc. No. 51-4).

---

[4] Upon information and belief, some of Bao's monetary contributions to the Company during this time were made solely for Bao's personal tax benefit, rather than to benefit the Company or Plaintiff.

45. Upon Ms. Hammie's abrupt resignation in November 2024, Company was left with no accountant to monitor its books or accounting software.

46. During that time, Bao continued to surreptitiously access the Company's accounting software in February 2025 to recategorize his previous contributions as a "loans" to the Company at an interest rate of 15.00% per annum, without submitting any documentation to evidence such loans to the Company or first obtaining the necessary consent pursuant to the Operating Agreement.

47. The Company then retained Mazzei and Associates on July 28, 2025, who was responsible for reviewing all the Company's books and records and filing amended tax returns for 2022 and 2023, and the Company's 2024 and 2025 tax returns.

48. Moreover, from February 4, 2022 through mid-October 2025, Bao, on behalf of Plaintiff and the Company, took the following actions that materially harmed Defendant and the integrity of the Company:

a. Taking on additional and unnecessary debt;

b. Permitting wasteful spending on behalf of the Company;

c. Misclassified Defendant's Company Distribution Account with Company or Facility expenses;

d. Refused to hold tenants accountable for late or missed rental payments;

e. Wrongfully initiated this lawsuit to recover his investments; and

f. Failed or refused to permit the Company to compensate Defendant for her work and services thereto.

49. Meanwhile, during this entire time period, Defendant continued to work fifty (50) hour weeks to ensure that the Company continued to secure new and valuable

tenant leases while also managing all clients, collecting all rental payments, paying all debts and otherwise managing the day-to-day responsibilities of the Company necessary to ensure profitability.

50. Defendant was never compensated by the Company under its Operating Agreement for any of her work or services performed during this period, despite raising the issue with Bao several times, both orally and in writing.

51. Instead, on October 12, 2023 Bao sent the first of many attempts to "squeeze out" Defendant by taking a controlling interest in the Company and ratifying his reclassification of capital contributions into high-interest Company debt by way of transfer same into ownership interest, offering Defendant two (2) "options," both benefiting Plaintiff while offering no benefit to Defendant. A true and correct copy of the 10/12/2023 e-mail is appended hereto and marked as **Exhibit "H"**.

52. Defendant denied both options.

53. On November 5, 2024, Bao sent another e-mail to Defendant claiming that all of that money he had paid into the Company at that point totaled $804,957.99, inclusive of interest —including the monies utilized as consideration for Plaintiff's ownership interest in the Company later deemed satisfied—had to be backdated to 12/31/2023 and repaid according to an attached schedule. A true and correct copy of the 11/05/2024 e-mail is attached hereto and marked as **Exhibit "I"**.

54. Defendant refused Bao's requests contained in his 11/05/2024 e-mail.

55. By the Spring of 2025, Defendant discovered Bao's attempts to fraudulently recharacterize as "loans" to the Company at 15.00% interest rates in the Company's accounting software.

56. At that point, Defendant became confident that Bao's intent was to enact a "hostile takeover" of the Company by any means necessary, whether lawful or unlawful.

57. This realization, reinforced by Bao's previous letters sent respectively in October 2023 and November 2024, became even clearer after Ms. Hammie told Defendant that Bao was "likely planning a hostile takeover of the Company."

58. At that point, Defendant understood that Bao, both individually and on behalf of Plaintiff, lacked any loyalty to the Company and was attempting a wrongful takeover or leveraged buyout situation, souring their professional relationship.

59. Complicating this matter, Defendant's diagnosis of CLL lymphoma in July 2023 had progressed to a point that in the Spring of 2025, Defendant required immediate intensive treatment, requiring her to "step-away" from the Company for a time to treat and recover.

60. At that point, Bao capitalized on Defendant's illness and aggressively continued his efforts to "squeeze out" Defendant by recategorizing all his capital contributions to the Company as "loans".

61. On March 26, 2025, Bao, through his then-counsel, Corey Dickey, sent an e-mail to Defendant—at that point sick and treating for her illness—attempting to persuade her to execute an agreement and essentially "hand over" a controlling 21% ownership interest in the Company to Plaintiff for $1.00 and execute an Amended and Restated Operating Agreement to that effect, which would leave Defendant with a meager 30% interest in the Company she had spent nine years building. True and correct copies of Bao's 03/26/2025 e-mail and proposed Amended and

Restated Operating Agreement are appended hereto and marked respectively as **Exhibits "J.1"** and **"J.2"**.

62. Defendant did not respond to Atty. Dickey's 03/26/2025 e-mail.

63. During this entire stretch of time, Defendant kept the Company in successful operation and retained its rent-roll of commercial property leases.

64. From June 2025 through the date of filing, Defendant single-handedly streamlined the Company's operations and expenses, cutting out the wasteful spending introduced by Bao.

65. For example, Defendant secured approximately $2,711,000.00 in tenant-improvement ***("TI")*** funds to build out each of the Company's five locations and reduced the Company's out-of-pocket costs by sustaining landlord relationships and garnering additional needed financing, including the following Company locations in their respective amounts:

a. Wilkes-Barre location — $330,000.00 in landlord financing;

b. East Norriton location — $600,000.00 in TI allowance;

c. Trexlertown location — $730,000.00 in TI allowance;

d. Moosic location — $845,500.00 in TI allowance; and

e. Lansdale location — $535,500.00 in TI allowance.

66. From the Company's inception until approximately May of 2026, Defendant was responsible for nearly all the Company's growth, success, management, and daily operations, including, but not limited to, the following:

a. Securing the profitability of all quinary Company locations by personally guaranteeing three (3) of their five (5) commercial leases and overseeing the buildout of each;

b. Managing all Company social media accounts;

c. Managing all quinary locations as the sole Company contact including: communications with landlords, tenants, and emergency services; weekly visits to each location to restock supplies and perform inspections; managing all repairs, access, HVAC services, cleaning, and tenant turnover for each location; and scheduling and performing tours for all prospective tenants for each location;

d. Designing, building and managing all locations and started a Head Spa business at the Company's Moosic location;

e. Attending all necessary Court appearances related to problem tenants;

f. Paying all Company debts, bills, invoices, liens, etc. with Company credit cards personally guaranteed by Defendant; and

g. Training and supervising all personnel.

67. In performing all the above, Defendant has not once been compensated by the Company through salary, profit distribution, ownership interest or capital contribution, despite the Operating Agreement expressly permitting same.

68. Each time Defendant raised with Bao the issue of personal compensation from the Company, he refused to provide his consent on behalf of Plaintiff to compensate her in any form permitted by the Operating Agreement.

69. At the same time Bao refused compensation to Defendant, he continued his sneaky campaign to fraudulently inflate his controlling interest in the Company in an effort to "squeeze" out Defendant.

70. The acts and/or omissions of Bao as described above, both individually and on behalf of Plaintiff, were each performed willfully, persistently, deliberately,

recklessly, negligently and/or with deliberate indifference to the substantial risks of harm to the Company and Defendant, constituting: (a) breach of the Operating Agreement; (b) breach of fiduciary duty as outlined in 15 Pa. C.S.A. § 8849.1; (c) self-dealing; and/or (d) fraud (collectively, ***"BAO'S MISCONDUCT"***).

71. As a direct and proximate result of Bao's Misconduct, the Company has incurred the following additional invoiced costs, expenses and debt, which have decreased its overall value:

a. Counsel fees to Gross McGinley in the amount of $5,041.00

b. Counsel fees to Stevens & Lee, P.C. in the amount of $106,000.00;

c. Counsel fees to Rothenberg & Campbell in the amount of $10,000.00;

d. Accounting fees to Mazzei & Associates in the amount of $60,000.00.

72. As of the date of this filing, the Company is believed to be worth $250,000.00, well under what it should be worth but for Bao's wrongful and fraudulent conduct.

73. Moreover, Defendant has suffered individual financial injury insofar as she has been wrongfully denied compensation for all work performed on behalf of the Company from its inception directly caused by Bao's wrongful withholding of Plaintiff's consent under the Operating Agreement.

74. Upon information and belief, Defendant has been wrongfully denied fair and equitable compensation for her services to the Company in 2022, 2023, 2024, 2025 and 2026 totaling approximately $933,333.34[5] in compensable wages, Company interest or capital contributions therein.

[5] Upon information and belief, Defendant calculates the value of her work and services to the Company to be commensurate with an annual salary of $200,000.00, which is likely low when compared to other executive officers similarly situated in Northeast Pennsylvania.

75. In addition, Defendant has been personally harmed in amounts, costs, expenses, and fees associated with her personal involvement in the instant lawsuit that necessitate compensation from the Company and/or Bao, individually and/or on behalf of Plaintiff.

76. All Defendant's individual damages were directly and proximately caused by Bao's Misconduct, were actual and independent of any injury to the Company itself, and Defendant is entitled to receive the benefit of their recovery.

77. Defendant respectfully seeks declaratory relief pursuant to Fed. R. Civ. P. 57 and 28 U.S.C. § 2201 in the form of this Honorable Court's declaration of the rights and duties of the parties and the Company including, but not limited to a declaration:

a. that Defendant is due fair and just compensation from the Company for her services as its Manager and Officer for 2022, 2023, 2024, 2025 and 2026 in a form consistent with the Company's Operating Agreement and in an amount equal to or greater than an annual salary of $200,000.00;

b. that Bao's Misconduct constituted fraud, self-dealing and/or breaches of the Operating Agreement and Plaintiff's fiduciary duties outlined under 15 Pa. C.S.A. § 8849.1; and

c. that Plaintiff be judicially dissociated from the Company pursuant to 15 Pa. C.S.A. § 8861;

d. that Bao's Misconduct directly and proximately caused both Defendant and the Company compensable damages recoverable by Defendant; or, in the alternative,

e. that it would be inequitable to deny Defendant fair and just compensation from the Company under the specific circumstances of this case pursuant to the fundamental and applicable equitable doctrines of *quantum meruit* and/or promissory estoppel.

78. Bao should be held personally liable for the collective acts and/or omissions as alleged above as Plaintiff is his "alter ego," permitting the equitable piercing of any veil of limited liability such that Defendant, individually and on behalf of the Company, may recover damages against Bao and Plaintiff, jointly and/or severally.

79. To the extent that Bao has fraudulently conveyed any assets owned by Plaintiff to any additional third-party entity, Defendant reserves her right to pursue all avenues of relief against that unnamed entity, should the facts and law permit her to do so.

80. Upon information and belief, Bao has used Plaintiff and its business structure interchangeably and without regard to corporate formalities by:

a. Commingling personal and company funds and assets;

b. Treating company assets as his own person assets;

c. Failing to maintain adequate financial records and separate accounts for each entity;

d. Using Plaintiff to engage in fraudulent and deceptive conduct to evade contractual responsibilities, including those owed to Defendant, the Company and other third-party creditors;

e. Under-capitalizing Plaintiff to render it judgment-proof;

f. Directing funds from Plaintiff to himself and vice-versa to hinder the ability to collect damages; and/or

g. Engaging in sham transactions designed to conceal assets and liabilities.

81. Bao's acts and/or omissions outlined *supra*, individually and/or collectively on behalf of Plaintiff, demonstrate that Plaintiff did not operate as an independent

business but rather as an instrumentality for Bao's personal use to perpetuate fraud upon Defendant, the Company and/or other third-party creditors.

82. Upon information and belief, Bao has used Plaintiff as an "alter ego" to improperly divert funds for his personal financial benefit while shielding himself from liability, thereby circumventing his obligations pursuant to the Agreement.

## COUNT I – DECLARATORY JUDGMENT
### *(DIRECT ACTION AGAINST BAO, PLAINTIFF AND THE COMPANY)*
### PURSUANT TO FED. R. CIV. P. 57 AND 28 U.S.C. § 2201

83. Defendant adopts and incorporates by reference all responses, admissions and allegations contained in Paragraphs 1—82 of her Counterclaims, each as if more fully set forth herein at length.

84. The Operating Agreement was validly executed by both parties and governs the creation, purpose, management, business operations, ownership interest and dissolution of the Company pursuant to the PULLCA. (See ECF Doc. No. 51-1).

85. The terms of the Operating Agreement are clear and unambiguous.

86. The Operating Agreement therefore expressly governs the rights and duties of both parties and the Company.

87. There exists an actual and *bona fide* dispute regarding whether Bao's Misconduct was performed willingly, persistently, deliberate, recklessly, negligently, and/or with deliberate indifference, whether Bao's Misconduct directly and proximately caused the Company and Defendant compensable damages, and whether certain capital contributions by Bao totaling $377,377.28 were "loans" to the Company at an annual interest rate of 15.00%.

88. Defendant, individually and on behalf of the Company, seeks declaratory relief explained herein that will clarify and settle the respective legal relationships and duties at issue and immediately resolve an actual and bona fide controversy between the parties.

89. Therefore, this matter is appropriate for declaratory judgment pursuant to Fed. R. Civ. P. 57 and 28 U.S.C. §2201.

90. Defendant, both individually and derivatively on behalf of the Company, respectfully seeks this Honorable Court's declaration of the rights and duties of the parties and the Company including, but not limited to a declaration:

a. that Defendant is due fair and just compensation from the Company for her services as its Manager and Officer for 2022, 2023, 2024, 2025 and 2026 in a form consistent with the Company's Operating Agreement and in an amount equal to or greater than an annual salary of $200,000.00;

b. that Bao's Misconduct constituted fraud and/or breaches of the Operating Agreement and Plaintiff's fiduciary duties outlined under 15 Pa. C.S.A. § 8849.1; and

c. that Plaintiff be judicially dissociated from the Company pursuant to 15 Pa. C.S.A. § 8861;

d. that Bao's Misconduct directly and proximately caused both Defendant and the Company compensable damages recoverable by Defendant; or, in the alternative,

e. that it would be inequitable to deny Defendant fair and just compensation from the Company under the specific circumstances of this case pursuant to the fundamental and applicable equitable doctrines of *quantum meruit* and/or promissory estoppel.

## COUNT II – BREACH OF OPERATING AGREEMENT

***(DIRECT ACTION AGAINST BAO, PLAINTIFF AND THE COMPANY)***

**PURSUANT TO 15 PA. C.S.A. § 8881**

91. Defendant adopts and incorporates by reference all responses, admissions and allegations contained in Paragraphs 1—90 of her Counterclaims, each as if more fully set forth herein at length.

92. The Operating Agreement was validly executed by both parties and governs the creation, purpose, management, business operations, ownership interest and dissolution of the Company pursuant to the PULLCA. (See ECF Doc. No. 51-1).

93. The terms of the Operating Agreement are clear and unambiguous.

94. The Operating Agreement therefore expressly governs the rights and duties of both parties and the Company and is a binding "contract". See Toth v. Toth, 324 A.3d 469, 486 (Pa. Super. 2024).

95. The Operating Agreement provides Defendant the right to be compensated for her work and services as both Manager and officer. (Id. at §§ 4.1 and 10.7).

96. Defendant, individually and as member of the Company, performed all work and services for the Company according to the Operating Agreement fairly and reasonably as outlined above.

97. Bao, individually and on behalf of both Plaintiff and the Company, has breached the Operating Agreement in the following ways:

a. Fraudulently recategorizing and attempting to fraudulently recategorize Bao's capital contributions as high-interest Company debt without proper documentation, authorization and/or consent pursuant to the Operating Agreement;

b. Failing and/or refusing to permit the Company to compensate Defendant for her work and services to the Company for 2022, 2023, 2024, 2025 and 2026; and

c. Willfully and persistently participating in Bao's Misconduct, including the initiation of the instant frivolous lawsuit.

98. The breaches as described *supra* constitute breaches of Bao's duty to act in good faith and deal fairly. See TCS Black Label Realty, LLC v. Serhant Pa., LLC, 352 A.3d 528, 547 (Pa. Super. 2026) (*citing* 15 Pa. C.S.A. §§ 8849.1(d) and 8849.2(d)).

99. As a direct and proximate result to the breaches of contract outlined herein, Defendant has suffered injury and personal financial harm more fully outlined above.

100. Bao should be held personally liable for his actions described above by piercing the corporate veil of Plaintiff.

**COUNT III – PROMISSORY ESTOPPEL / *QUANTUM MERUIT***
***(DIRECT ACTION AGAINST BAO, PLAINTIFF AND COMPANY)***

101. Defendant adopts and incorporates by reference all responses, admissions and allegations contained in Paragraphs 1—100 of her Counterclaims, each as if more fully set forth herein at length.

102. Defendant performed all work and services for the Company in good faith and based on the promise to be compensated for all said services and costs made by Bao, individually and on behalf of Plaintiff.

103. Defendant reasonably expected to be compensated for the work and services provided to, and costs expended on behalf of, the Company.

104. Defendant is entitled to the fair and reasonable value of providing the above-described services (i.e., *quantum meruit*) and the advanced costs for those services to the Company

105. Defendant reasonably relied upon the promise to be compensated to her personal detriment.

106. As a direct and proximate result of Defendant's reasonable reliance upon the promises made by Bao, individually and on behalf of both the Company and Plaintiff, outlined herein, Defendant has suffered injury and personal financial harm more fully outlined above.

107. Bao should be held personally liable for his actions described above by piercing the corporate veil of Plaintiff.

## COUNT IV – BREACH OF FIDUCIARY DUTY
### *(DIRECT ACTION AGAINST BAO AND PLAINTIFF)*
### PURSUANT TO 15 PA. C.S.A. § 8881

108. Defendant adopts and incorporates by reference all responses, admissions and allegations contained in Paragraphs 1—107 of her Counterclaims, each as if more fully set forth herein at length.

109. Pursuant to Section 8849.1(a) of the PULLCA, a "member of a member-managed limited liability company owed to the company and ... the other members

the duties of loyalty[6] and care[7]." Salvitti v. Lascelles, 578 F. Supp. 3d 712, 719 (E.D. Pa. 2022) (*quoting* 15 Pa. C.S.A. § 8849.1(a)).

110. The PULLCA imposes a contractual obligation of good faith and fair dealing among members and managers of a duly organized limited liability company and permits members to bring claims individually or on the company's behalf for breaches thereof. TCS Black Label Realty, LLC, 352 A.3d at 547 (*citing* 15 Pa. C.S.A. §§ 8849.1(d) and 8849.2(d)).

111. In the context of limited liability companies, the duties to deal "fairly" and act in "good faith" must each be construed in the context of the "scope, purpose, and terms of the parties' contract." Id. (*quoting* 15 Pa. C.S.A. § 8849.1, *comment*).

112. At all times pertinent hereto, Bao, both individually and on behalf of Plaintiff, has willfully and/or persistently performed acts that constitute material breaches of fiduciary duty and self-dealing (i.e., Bao's Misconduct).

113. More specifically, Bao, both individually and on behalf of Plaintiff, has:

a. Fraudulently attempted to mischaracterize his capital contributions as Company debt with 15.00% yearly interest rates;

b. Oppressively attempted to "squeeze out" or "freeze out" Defendant from her ownership interest in the Company;

---

[6] The fiduciary duty of loyalty includes the obligations to (1) account to the company and hold as trustee any property, profit, or benefit derived in the conduct or winding up of the LLC's activities, from the use of LLC property, or from the appropriation of a company opportunity; (2) refrain from dealing with the LLC in its activities or winding up as, or on behalf of, a party with an adverse interest; and (3) refrain from competing with the LLC prior to its dissolution. 15 Pa. C.S.A. § 8849.1.

[7] The duty of care requires a member to refrain from engaging in "gross negligence, recklessness, willful misconduct or knowing violation of law" during the conduct or winding up of the LLC's affairs. Id.

c. Wrongfully refused and/or failed to permit the Company to compensate Defendant for her work and services to the Company despite repeated oral and/or written requests;

d. Wrongfully initiated the instant frivolous lawsuit;

e. Carelessly and negligently taken on unnecessary debt on behalf of the Company; and

f. Carelessly and negligently spent Company funds excessively and unnecessarily.

114. As a direct and proximate result to the breaches of fiduciary outlined herein, Defendant and the Company have suffered injury and financial harm more fully outlined above.

115. Bao should be held personally liable for his actions described above by piercing the corporate veil of Plaintiff.

**COUNT V – EXPULSION/DISSOCIATION**
***(DIRECT ACTION AGAINST PLAINTIFF)***
**PURSUANT TO 15 PA. C.S.A. § 8861**

116. Defendant adopts and incorporates by reference all responses, admissions and allegations contained in Paragraphs 1—115 of her Counterclaims, each as if more fully set forth herein at length.

117. Pursuant to Section 8849.1(a) of the PULLCA, a "member of a member-managed limited liability company owed to the company and ... the other members the duties of loyalty and care." Salvitti, 578 F. Supp. 3d at 719 (*quoting* 15 Pa. C.S.A. § 8849.1(a)).

118. The PULLCA imposes a contractual obligation of good faith and fair dealing among members and managers of a duly organized limited liability company and

permits members to bring claims individually or on the company's behalf for breaches thereof. TCS Black Label Realty, LLC, 352 A.3d at 547 (*citing* 15 Pa. C.S.A. §§ 8849.1(d) and 8849.2(d)).

119. In the context of limited liability companies, the duties to deal "fairly" and act in "good faith" must each be construed in the context of the "scope, purpose, and terms of the parties' contract." Id. (*quoting* 15 Pa. C.S.A. § 8849.1, *comment*).

120. At all times pertinent hereto, Bao, both individually and on behalf of Plaintiff, has willfully and/or persistently performed acts that constitute material breaches of fiduciary duty (i.e., Bao's Misconduct), including the initiation of this frivolous lawsuit.

121. As a direct and proximate result of Bao's Misconduct and the breaches of the Operating Agreement and fiduciary duty outlined herein, Defendant and the Company have suffered injury and financial harm more fully outlined above.

122. At all times pertinent hereto, Bao, both individually and on behalf of Plaintiff, has engaged in wrongful conduct that has materially and adversely affected the Company's activities and affairs.

123. At all times pertinent hereto, Bao, both individually and on behalf of Plaintiff, has engaged in activities and affairs that make carrying on the activities and affairs of the Company not reasonably practicable with Plaintiff as a member.

124. Defendant respectfully requests this Honorable Court enter an order expelling Plaintiff as a member and otherwise dissociating it from the Company pursuant to 15 Pa. C.S.A. 8861.

## COUNT VI – MISREPRESENTATION / FRAUD
### *(DIRECT ACTION AGAINST BAO AND PLAINTIFF)*

125. Defendant adopts and incorporates by reference all responses, admissions and allegations contained in Paragraphs 1—124 of her Counterclaims, each as if more fully set forth herein at length.

126. At all times pertinent hereto and as described above, Bao, individually and/or on behalf of Plaintiff, deliberately and/or intentionally represented or concealed the following facts to Defendant, individually and on behalf of the Company as Manager, in the following manner:

a. That all Bao's financial payments paid to the Company other than the 2022 promissory notes ($377,377.23) were capital contributions under the Operating Agreement as initially indicated in writing on the Company's accounting software;

b. That Defendant's work and services to the Company as described above would be compensated by the Company under its Operating Agreement as indicated orally to Defendant; and

c. That Bao would work and serve the Company fairly and in good faith as indicated in writing by his execution of the Operating Agreement.

127. Each of Bao's representations made or concealed above was material and essential to the Company's daily operations and Defendant's willingness to serve as the Company's Manager and Co-Chief Executive Officer.

128. Each of Bao's representations made or concealed above was made or concealed falsely, with knowledge of its falsity, or with a reckless disregard or deliberate indifference as to its truth or falsity.

129. Each of Bao's representations made or concealed above was made or concealed with the deliberate intent of misleading Defendant, individually and on behalf of the Company, into relying on it.

130. Defendant, individually and on behalf of the Company, justifiably relied on each of Bao's representations made or concealed above.

131. Each of Bao's representations made or concealed above directly and proximately caused Defendant's injuries and harm more fully set forth at length above.

132. In the alternative, each of Bao's representations made or concealed above was made recklessly or with deliberate indifference.

133. In the alternative, each of Bao's representations made or concealed above was made negligently, where Bao ought to have known its falsity.

134. Bao should be held personally liable for his actions described above by piercing the corporate veil of Plaintiff.

## DEMAND FOR RELIEF

**WHEREFORE**, Defendant, Karen Kaminski, by and through her counsel, Ryan P. Campbell, Esquire of Rothenberg & Campbell, respectfully requests that this Honorable Court take the following actions regarding her Counterclaims to the Second Amended Complaint against David J. Bao, individually, Plaintiff, Bountiful Capital, LLC and Allure Salon Group, LLC, jointly and/or severally:

a. Enter an Order declaring that Defendant is due fair and just compensation from the Company for her services as its Manager and Officer for 2022, 2023, 2024, 2025 and 2026 in a form consistent with

the Company's Operating Agreement and in an amount equal to or greater than an annual salary of $200,000.00 per year;

b. Enter Judgment in favor of Defendant regarding Bao's Misconduct constituted fraud, self-dealing and/or breaches of the Operating Agreement and Plaintiff's fiduciary duties outlined under 15 Pa. C.S.A. § 8849.1;

c. Enter an Order that Plaintiff be judicially dissociated from the Company pursuant to 15 Pa. C.S.A. § 8861;

d. Enter an Order that Bao's Misconduct directly and proximately caused both Defendant and the Company compensable damages recoverable by Defendant from Bao, individually and/or Plaintiff, jointly and/or severally; or, in the alternative, that it would be inequitable to deny Defendant fair and just compensation from the Company under the specific circumstances of this case pursuant to the fundamental and applicable equitable doctrines of *quantum meruit* and/or promissory estoppel;

e. Award Defendant costs, attorneys' fees where authorized, and any other relief the Court deems just and proper; and

f. Enter an Order that any damages, costs and/or attorneys' fees awarded to Defendant be recoverable from Bao, individually, for his actions and that any liability afforded to him on behalf of Plaintiff be removed.

Respectfully submitted,

**ROTHENBERG & CAMPBELL**

BY: ______________________________

Ryan P. Campbell, Esq. *(PAID#: 317838)*
345 Wyoming Avenue, Ste. 210,
Scranton, Pennsylvania 18503
*PH:* 570.207.2889 || *FAX:* 570.207.3991
*EMAIL:* rpc@rothenbergcampbell.com
***COUNSEL FOR DEFENDANT***

Date: 10/23/2026

**ROTHENBERG & CAMPBELL**
RYAN P. CAMPBELL, ESQ. *(PAID# 317838)*
345 WYOMING AVENUE, STE. 210
SCRANTON, PENNSYLVANIA 18503
*PH:* 570.207.2889 || *FAX:* 570.207.3991
*EMAIL:* RPC@ROTHENBERGCAMPBELL.COM

*COUNSEL FOR DEFENDANT*
*KAREN KAMINSKI*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **BOUNTIFUL CAPITAL, LLC,**<br>*INDIVIDUALLY AND DERIVATIVELY ON BEHALF OF*<br>**ALLURE SALON GROUP, LLC,**<br><br>PLAINTIFF<br>V.<br><br>**KAREN KAMINSKI,**<br><br>DEFENDANT<br>**V.**<br><br>**DAVID BAO;** AND<br>**ALLURE SALON GROUP, LLC,**<br><br>THIRD-PARTY DEFENDANTS | CIVIL ACTION—LAW<br>*(HON. KAROLINE MEHALCHICK, J.)*<br><br>***JURY TRIAL DEMANDED***<br><br>NO.: 3:25—CV—000888—KM |

## CERTIFICATE OF SERVICE

**I, RYAN P. CAMPBELL, ESQUIRE,** ON BEHALF OF THE ABOVE-CAPTIONED DEFENDANT, DO HEREBY CERTIFY AND DEPOSE THAT THE ABOVE FILING WAS ELECTRONICALLY FILED AND SERVED UPON ALL PARTIES AND COUNSEL OF RECORD *VIA* E-MAIL AND CM/ECF SERVICE ON THIS **23RD DAY OF OCTOBER, 2026**, ADDRESSED AS THEY APPEAR ON CM/ECF SERVICES:

**ROTHENBERG & CAMPBELL**

*BY:* ______________________________
Ryan P. Campbell, Esq. *(PAID#: 317838)*
***COUNSEL FOR DEFENDANT***