**THIS UNSECURED PROMISSORY NOTE (THIS "*NOTE*") HAS NOT BEEN REGISTERED UNDER THE SECURITIES ACT OF 1933, AS AMENDED (THE "*ACT*"), AND MAY NOT BE SOLD, TRANSFERRED OR OTHERWISE DISPOSED OF UNLESS A REGISTRATION STATEMENT UNDER THE ACT WITH RESPECT TO THIS NOTE HAS BECOME EFFECTIVE OR UNLESS THE HOLDER (AS DEFINED BELOW) ESTABLISHES TO THE SATISFACTION OF THE MAKER (AS DEFINED BELOW) THAT AN EXEMPTION FROM SUCH REGISTRATION IS AVAILABLE.**

# UNSECURED PROMISSORY NOTE

**$115,000.00** February 14, 2022 (the "***Issuance Date***")

FOR VALUE RECEIVED, the undersigned, Allure Salon Group, LLC, a Pennsylvania limited liability company (the "***Maker***"), hereby promises to pay to an account designated in writing by Bountiful Capital, LLC, a Wyoming limited liability company (the "***Holder***"), in lawful money of the United States of America, in immediatelyavailable funds to such account, the principal amount of $115,000.00 pursuant to the terms set forth herein.

1. **Interest**. Interest under this Note shall accrue on the unpaid principal balance of this Note at a rate of 5.00% per annum (computed on the basis of a 365-day year and based upon the number of days actually elapsed) commencing on the Issuance Date and added to the aggregate principal amount of the Note, effective each anniversary of Issuance Date and on the Maturity Date.

2. **Payment**. All principal and interest sums due under this Note shall be due and payable on February 14, 2023 (the "***Maturity Date***"). The Maker shall pay all unpaid and outstanding principal and accrued interest due under this Note on the Maturity Date. The Maker shall have the right at any time and from time to time to prepay, in whole or in part, without premium or penalty, the unpaid principal amount of this Note and accrued and unpaid interest on such unpaid principal amount. Any prepayments shall be applied first to accrued and unpaid interest and then to the unpaid principal of this Note. Notwithstanding anything contained herein to the contrary, in the event that any payment is due on a date that is not a Business Day (as defined below), then the payment shall be due on the first Business Day following such date. For purposes of this Note, the term "***Business Day***" means any day other than a Saturday, a Sunday or any other day on which the Federal Reserve Bank of New York is closed.

3. **Event of Default**. The Maker shall be in default under this Note upon the occurrence of any of the following events of default (each, an "***Event of Default***"):

(a) the failure to pay the outstanding principal and interest on this Note on the Maturity Date;

(b) the Maker shall (i) apply for or consent to the appointment of a receiver, trustee, liquidator or custodian of itself or of all or a substantial part of its property, (ii) make a general assignment for the benefit of its or any of its creditors, (iii) be dissolved or liquidated or (iv) commence a voluntary case or other proceeding seeking liquidation, reorganization or other relief concerning itself or its debts under any bankruptcy, insolvency or other similar law now or hereafter in effect or consent to any such relief or to the appointment of or taking possession of its property by any official in an involuntary case or other proceeding commenced against it; or

(c) proceedings for the appointment of a receiver, trustee, liquidator or custodian of the Maker or of all or a substantial part of the property thereof, or an involuntary case or other proceedings seeking liquidation, reorganization or other relief concerning the Maker or the debts

DEFENDANT'S EXHIBIT B
tabbies

thereof under any bankruptcy, insolvency or other similar law now or hereafter in effect shall be commenced and an order for relief entered or such proceeding shall not be dismissed or discharged within 60 days of commencement.

4. **Acceleration**. Upon the occurrence and during the continuance of an Event of Default, the Holder may declare all liabilities and obligations of the Maker under this Note immediately due and payable (without presentment, demand, protest or any other notice of any kind, all of which are hereby expressly waived) and the same shall thereupon become immediately due and payable without any further action on the part of the Holder.

5. **Successors and Assigns**. This Note shall bind the Maker and its successors and permitted assigns, and the benefits of this Note shall inure to the benefit of the Holder and its successors and permitted assigns. This Note, and the rights and obligations hereunder, may not be assigned or delegated (in whole or in part) by the Maker or the Holder without the prior written consent of the other party hereto. All references herein to the "Maker" and the "Holder" shall be deemed to apply to the Maker and the Holder, respectively, and to their respective successors and permitted assigns.

6. **Interest Rate Limitation**. Nothing contained in this Note or any transaction related to this Note shall be construed or so operate as to require the Maker to pay interest at a greater rate than is now lawful or in such case to contract for, or to make any payment, or to do any act contrary to applicable law. Should any interest or other charges paid by the Maker, or parties liable for the payment of this Note, in connection with the indebtedness evidenced by this Note or any other document delivered in connection with this Note, result in the computation or earning of interest in excess of the maximum legal rate of interest that is legally permitted under applicable law, then any and all such excess shall be, and the same hereby is, waived by the Holder, and any and all such excess shall be automatically credited against and in reduction of the balance due under this Note, and the portion of said excess that exceeds the balance due under this Note shall be paid by the Holder to the Maker.

7. **Costs of Collection**. If the Holder retains the services of counsel, or this Note is placed in the hands of an attorney for collection, following the occurrence of an Event of Default hereunder, the Maker agrees to pay to the Holder upon demand all reasonable costs and expenses, including, without limitation, all reasonable attorneys' fees and court costs incurred by the Holder in connection with the enforcement or collection of this Note (whether or not any action has been commenced by the Holder to enforce or collect this Note) or in successfully defending any counterclaim or other legal proceeding brought by the Maker contesting the Holder's right to collect the unpaid and outstanding principal and accrued interest due under this Note. The obligation of the Maker to pay all such costs and expenses shall not be merged into any judgment by confession against the Maker. All of such costs and expenses shall bear interest at the higher of the rate of interest provided herein from the date of payment by the Holder until repaid in full. The Maker agrees to waive any statute of limitations defense and any defense against the formation of this Note in the event a collection process is required.

8. **Cancellation**. After all principal, accrued interest, premium and all other amounts at any time owed on this Note have been indefeasibly paid in full, this Note shall be promptly surrendered to the Maker for cancellation.

9. **Amendment**. The provisions of this Note may be modified, amended or supplemented, and the Maker and the Holder may take any action herein prohibited, or omit to perform any act herein required to be performed by it, only by written agreement of the Maker and the Holder.

10. **Governing Law and Severability**. The provisions of this Note shall be construed according to the internal substantive laws of the State of New York without regard to conflict of laws

principles. If any provision of this Note is in conflict with any statute or rule of law of the State of New York or is otherwise unenforceable for any reason whatsoever, then such provision shall be ineffective to the extent of such invalidity and shall be deemed separable from and shall not invalidate any other provision of this Note.

11. **Waiver of Jury Trial**. EACH OF THE PARTIES HERETO HEREBY IRREVOCABLY WAIVES ANY AND ALL RIGHT TO TRIAL BY JURY IN ANY LEGAL PROCEEDING ARISING OUT OF OR RELATED TO THIS NOTE OR THE TRANSACTIONS CONTEMPLATED HEREBY.

12. **Counterparts**. This Note may be executed in separate counterparts, each of which will be deemed an original, but all of which together will constitute one and the same instrument.

13. **No Oral Agreements**. Each of the Holder and the Maker acknowledges that neither it, nor any agent or attorney of any such party, has made any promise, representation or warranty whatsoever, express or implied, to the other party hereto not contained in this Note, to induce the Maker to execute this Note.

**[Signature Page Follows]**

IN WITNESS WHEREOF, the Maker has caused this Note to be executed by its officer or representative thereunto duly authorized, as of the date first set forth above.

**MAKER**:

**ALLURE SALON GROUP, LLC**

By: ________________________________
Name: Karen Kaminski
Title: President and Co-Chief Executive Officer

**HOLDER:**

**BOUNTIFUL CAPITAL, LLC**

By: ______________________
Name: David Bao
Title: President