**ALLURE SALON GROUP, LLC**

**Investor Agreement**

**April 21, 2022**

Allure Salon Group, LLC, a Pennsylvania limited liability company (the "***Company***"), hereby issues to Bountiful Capital, LLC, a Wyoming limited liability company (the "***Investor***"), 176.47059 Limited Liability Company Interests of the Company (the "***LLC Interests***") in exchange for $150,000.00 contributed to the Company by the Investor, and, in connection therewith, the Investor hereby irrevocably accepts the LLC Interests.

**[Signature Pages Follow]**

DEFENDANT'S EXHIBIT
tabbies
C



Doc ID: 9efd8ed438d62b5ba07a027f806b7da759ea5033

The parties hereto have duly executed this Investor Agreement, or have caused this Investor Agreement to be duly executed, as of the date first written above.

**INVESTOR**:

**BOUNTIFUL CAPITAL, LLC**

By: ______________________________
Name: David Bao
Title: President



Doc ID: 0efd8ed438d62b5be07e027f806b7de759ee5033

Accepted as of the date first written above.

**<u>COMPANY</u>**:

**ALLURE SALON GROUP, LLC**

By: Karen Kaminski
Name: Karen Kaminski
Title: President and Co-Chief Executive Officer



Doc ID: 9efd8ed438d62b5ba07e027f806b7de759ea5033

**THIS UNSECURED PROMISSORY NOTE (THIS "*NOTE*") HAS NOT BEEN REGISTERED UNDER THE SECURITIES ACT OF 1933, AS AMENDED (THE "*ACT*"), AND MAY NOT BE SOLD, TRANSFERRED OR OTHERWISE DISPOSED OF UNLESS A REGISTRATION STATEMENT UNDER THE ACT WITH RESPECT TO THIS NOTE HAS BECOME EFFECTIVE OR UNLESS THE HOLDER (AS DEFINED BELOW) ESTABLISHES TO THE SATISFACTION OF THE MAKER (AS DEFINED BELOW) THAT AN EXEMPTION FROM SUCH REGISTRATION IS AVAILABLE.**

# UNSECURED PROMISSORY NOTE

**$185,000.00** April 21, 2022 (the "***Issuance Date***")

FOR VALUE RECEIVED, the undersigned, Allure Salon Group, LLC, a Pennsylvania limited liability company (the "***Maker***"), hereby promises to pay to an account designated in writing by Bountiful Capital, LLC, a Wyoming limited liability company (the "***Holder***"), in lawful money of the United States of America, in immediatelyavailable funds to such account, the principal amount of $185,000.00 pursuant to the terms set forth herein.

1. **Interest**. Interest under this Note shall accrue on the unpaid principal balance of this Note at a rate of 5.00% per annum (computed on the basis of a 365-day year and based upon the number of days actually elapsed) commencing on the Issuance Date and added to the aggregate principal amount of the Note, effective each anniversary of the Issuance Date and on the Maturity Date.

2. **Payment**. All principal and interest sums due under this Note shall be due and payable on December 31, 2023 (the "***Maturity Date***"). The Maker shall pay all unpaid and outstanding principal and accrued interest due under this Note on the Maturity Date. The Maker shall have the right at any time and from time to time to prepay, in whole or in part, without premium or penalty, the unpaid principal amount of this Note and accrued and unpaid interest on such unpaid principal amount. Any prepayments shall be applied first to accrued and unpaid interest and then to the unpaid principal of this Note. Notwithstanding anything contained herein to the contrary, in the event that any payment is due on a date that is not a Business Day (as defined below), then the payment shall be due on the first Business Day following such date. For purposes of this Note, the term "***Business Day***" means any day other than a Saturday, a Sunday or any other day on which the Federal Reserve Bank of New York is closed.

3. **Event of Default**. The Maker shall be in default under this Note upon the occurrence of any of the following events of default (each, an "***Event of Default***"):

(a) the failure to pay the outstanding principal and interest on this Note on the Maturity Date;

(b) the Maker shall (i) apply for or consent to the appointment of a receiver, trustee, liquidator or custodian of itself or of all or a substantial part of its property, (ii) make a general assignment for the benefit of its or any of its creditors, (iii) be dissolved or liquidated or (iv) commence a voluntary case or other proceeding seeking liquidation, reorganization or other relief concerning itself or its debts under any bankruptcy, insolvency or other similar law now or hereafter in effect or consent to any such relief or to the appointment of or taking possession of its property by any official in an involuntary case or other proceeding commenced against it; or

(c) proceedings for the appointment of a receiver, trustee, liquidator or custodian of the Maker or of all or a substantial part of the property thereof, or an involuntary case or other proceedings seeking liquidation, reorganization or other relief concerning the Maker or the debts

thereof under any bankruptcy, insolvency or other similar law now or hereafter in effect shall be commenced and an order for relief entered or such proceeding shall not be dismissed or discharged within 60 days of commencement.

4. **Acceleration**. Upon the occurrence and during the continuance of an Event of Default, the Holder may declare all liabilities and obligations of the Maker under this Note immediately due and payable (without presentment, demand, protest or any other notice of any kind, all of which are hereby expressly waived) and the same shall thereupon become immediately due and payable without any further action on the part of the Holder.

5. **Successors and Assigns**. This Note shall bind the Maker and its successors and permitted assigns, and the benefits of this Note shall inure to the benefit of the Holder and its successors and permitted assigns. This Note, and the rights and obligations hereunder, may not be assigned or delegated (in whole or in part) by the Maker or the Holder without the prior written consent of the other party hereto. All references herein to the "Maker" and the "Holder" shall be deemed to apply to the Maker and the Holder, respectively, and to their respective successors and permitted assigns.

6. **Interest Rate Limitation**. Nothing contained in this Note or any transaction related to this Note shall be construed or so operate as to require the Maker to pay interest at a greater rate than is now lawful or in such case to contract for, or to make any payment, or to do any act contrary to applicable law. Should any interest or other charges paid by the Maker, or parties liable for the payment of this Note, in connection with the indebtedness evidenced by this Note or any other document delivered in connection with this Note, result in the computation or earning of interest in excess of the maximum legal rate of interest that is legally permitted under applicable law, then any and all such excess shall be, and the same hereby is, waived by the Holder, and any and all such excess shall be automatically credited against and in reduction of the balance due under this Note, and the portion of said excess that exceeds the balance due under this Note shall be paid by the Holder to the Maker.

7. **Costs of Collection**. If the Holder retains the services of counsel, or this Note is placed in the hands of an attorney for collection, following the occurrence of an Event of Default hereunder, the Maker agrees to pay to the Holder upon demand all reasonable costs and expenses, including, without limitation, all reasonable attorneys' fees and court costs incurred by the Holder in connection with the enforcement or collection of this Note (whether or not any action has been commenced by the Holder to enforce or collect this Note) or in successfully defending any counterclaim or other legal proceeding brought by the Maker contesting the Holder's right to collect the unpaid and outstanding principal and accrued interest due under this Note. The obligation of the Maker to pay all such costs and expenses shall not be merged into any judgment by confession against the Maker. All of such costs and expenses shall bear interest at the higher of the rate of interest provided herein from the date of payment by the Holder until repaid in full. The Maker agrees to waive any statute of limitations defense and any defense against the formation of this Note in the event a collection process is required.

8. **Cancellation**. After all principal, accrued interest, premium and all other amounts at any time owed on this Note have been indefeasibly paid in full, this Note shall be promptly surrendered to the Maker for cancellation.

9. **Amendment**. The provisions of this Note may be modified, amended or supplemented, and the Maker and the Holder may take any action herein prohibited, or omit to perform any act herein required to be performed by it, only by written agreement of the Maker and the Holder.

10. **Governing Law and Severability**. The provisions of this Note shall be construed according to the internal substantive laws of the State of New York without regard to conflict of laws

principles. If any provision of this Note is in conflict with any statute or rule of law of the State of New York or is otherwise unenforceable for any reason whatsoever, then such provision shall be ineffective to the extent of such invalidity and shall be deemed separable from and shall not invalidate any other provision of this Note.

11. **Waiver of Jury Trial**. EACH OF THE PARTIES HERETO HEREBY IRREVOCABLY WAIVES ANY AND ALL RIGHT TO TRIAL BY JURY IN ANY LEGAL PROCEEDING ARISING OUT OF OR RELATED TO THIS NOTE OR THE TRANSACTIONS CONTEMPLATED HEREBY.

12. **Counterparts**. This Note may be executed in separate counterparts, each of which will be deemed an original, but all of which together will constitute one and the same instrument.

13. **No Oral Agreements**. Each of the Holder and the Maker acknowledges that neither it, nor any agent or attorney of any such party, has made any promise, representation or warranty whatsoever, express or implied, to the other party hereto not contained in this Note, to induce the Maker to execute this Note.

**[Signature Page Follows]**



Doc ID: 9efd8ed438d62b5ba07a027f806b7da759ea5033

IN WITNESS WHEREOF, the Maker has caused this Note to be executed by its officer or representative thereunto duly authorized, as of the date first set forth above.

**MAKER**:

**ALLURE SALON GROUP, LLC**

By: Karen Kaminski
Name: Karen Kaminski
Title: President and Co-Chief Executive Officer



Doc ID: 9efd8ed438d62b5be07e027f806b7de759ee5033

**<u>HOLDER</u>**:

**BOUNTIFUL CAPITAL, LLC**

By: ______________________________

Name: David Bao

Title: President

**ALLURE SALON GROUP, LLC**

**Written Consent of Members Without a Meeting**

**April 21, 2022**

Pursuant to Section 8847(d) of the Pennsylvania Uniform Limited Liability Company Act of 2016 and Section 2.8(e) of the Limited Liability Company Operating Agreement of Allure Salon Group, LLC, a Pennsylvania limited liability company (the "***Company***"), dated as of February 4, 2022 (as amended, modified or supplemented from time to time, the "***LLC Agreement***"), the undersigned, being all of the members of the Company (the "***Members***"), hereby consent in writing by this Written Consent of Members Without a Meeting (this "***Consent***") to the adoption of the following resolutions with the same force and effect as if they had been adopted at a duly convened meeting of the Members:

**Investor Agreement and Issuance of LLC Interests**

RESOLVED, that the form, terms and provisions of the investor agreement to be entered into by and between the Company and Bountiful Capital, LLC, a Wyoming limited liability company (the "***Investor***"), substantially in the form attached hereto as **Exhibit A** (with such changes, additions and deletions as are authorized hereby, the "***Investor Agreement***"), and the transactions, other actions and instruments contemplated by or incident to the Investor Agreement, be, and hereby are, authorized, approved and adopted for all purposes.

FURTHER RESOLVED, that the Company is hereby authorized to issue to the Investor 176.47059 Limited Liability Company Interests of the Company (the "***LLC Interests***").

FURTHER RESOLVED, that, pursuant to Section 5.4 of the LLC Agreement, the officers of the Company (the "***Authorized Officers***") are hereby authorized, for and on behalf of the Company, to cause the LLC Interests to be issued in fact.

FURTHER RESOLVED, that Schedule A to the LLC Agreement is hereby modified and adjusted to reflect the issuance of the LLC Interests, as reflected on **Exhibit B** attached hereto.

FURTHER RESOLVED, that the Authorized Officers be, and each of them hereby is, authorized, empowered and directed to execute and deliver, for and on behalf of the Company, the Investor Agreement, together with any agreements, documents and instruments in connection therewith, and any exhibits, schedules, annexes and attachments thereto, in each case, with such changes therein, additions thereto or omissions therefrom as such Authorized Officers or any Authorized Officer may deem necessary, advisable or appropriate, such execution and delivery by any such Authorized Officer to be conclusive evidence of such authorization and approval.

**Promissory Note**

RESOLVED, that the form, terms and provisions of the promissory note to be entered into by and between the Company and the Investor, substantially in the form attached hereto as **Exhibit C** (with such changes, additions and deletions as are authorized hereby, the "***Promissory Note***"), and the transactions, other actions and instruments contemplated by or incident to the Promissory Note, be, and hereby are, authorized, approved and adopted for all purposes.

FURTHER RESOLVED, that the Authorized Officers be, and each of them hereby is, authorized, empowered and directed to execute and deliver, for and on behalf of the Company, the

Promissory Note, together with any agreements, documents and instruments in connection therewith, and any exhibits, schedules, annexes and attachments thereto, in each case, with such changes therein, additions thereto or omissions therefrom as such Authorized Officers or any Authorized Officer may deem necessary, advisable or appropriate, such execution and delivery by any such Authorized Officer to be conclusive evidence of such authorization and approval.

**General**

RESOLVED, that any actions previously taken or caused to be taken by the Authorized Officers, or any of them, in connection with any of the matters contemplated by the foregoing resolutions are hereby acknowledged to be duly authorized acts performed on behalf of the Company and are hereby ratified, confirmed and adopted as such.

FURTHER RESOLVED, that the Authorized Officers be, and each of them hereby is, authorized and empowered, in the name and on behalf of the Company, to execute and deliver such additional agreements, instruments and documents, and to take or cause to be taken such other actions, as such Authorized Officer or Authorized Officers may determine to be necessary or advisable to implement the purposes and intent of the foregoing resolutions; each such agreement, instrument and document to be in such form and to contain such terms and conditions, consistent with the foregoing resolutions, as such Authorized Officer or Authorized Officers executing the same may approve, the execution and delivery of any such agreement, instrument or document by any such Authorized Officer or the taking of such action to be conclusive evidence of such authorization and approval.

**[Signature Page Follows]**



Doc ID: 9efd8ed438d62b5ba07a027f806b7da759ea5033

This Consent may be executed in separate counterparts, each of which shall constitute an original and all of which together shall form a single instrument. Delivery of an executed signature page to this Consent by facsimile or other electronic transmission (including documents in Adobe PDF format) will be as effective as delivery of a manually executed counterpart to this Consent. This Consent shall be effective as of the date first written above when executed by all of the Members in the places designated for their signatures below.

Upon execution of this Consent, the undersigned hereby direct that this Consent be filed in the Company's minute book.

**MEMBERS**:

Karen Kaminski

________________________________

Karen Kaminski

**BOUNTIFUL CAPITAL, LLC**

By: ________________________________

Name: David Bao
Title: President



Doc ID: 9efd8ed438d62b5ba07a027f806b7da759aa5033

**<u>Exhibit A</u>**

**Form of Investor Agreement**

[attached]

**ALLURE SALON GROUP, LLC**

**Investor Agreement**

**April 21, 2022**

Allure Salon Group, LLC, a Pennsylvania limited liability company (the "***Company***"), hereby issues to Bountiful Capital, LLC, a Wyoming limited liability company (the "***Investor***"), 176.47059 Limited Liability Company Interests of the Company (the "***LLC Interests***") in exchange for $150,000.00 contributed to the Company by the Investor, and, in connection therewith, the Investor hereby irrevocably accepts the LLC Interests.

**[Signature Pages Follow]**



Doc ID: 9efd8ed438d62b5ba07a027f806b7da759ea5033

The parties hereto have duly executed this Investor Agreement, or have caused this Investor Agreement to be duly executed, as of the date first written above.

**INVESTOR**:

**BOUNTIFUL CAPITAL, LLC**

By: ___________________________________
Name: David Bao
Title: President



Doc ID: 9afd8ad438d62b5ba07a027f806b7da759aa5033

Accepted as of the date first written above.

**<u>COMPANY</u>**:

**ALLURE SALON GROUP, LLC**

By: ______________________________________
Name: Karen Kaminski
Title: President and Co-Chief Executive Officer

**Exhibit B**

**Schedule A to LLC Agreement**

**SCHEDULE A**

| Name | Initial Capital Contribution | LLC Interests | Profit Percentage |
|---|---|---|---|
| Karen Kaminski | $[To Be Filled In] | 600.00000 | 51.00000% |
| Bountiful Capital, LLC | $350,000 | 576.47059 | 49.00000% |

**<u>Exhibit C</u>**

**Form of Promissory Note**

[attached]

**THIS UNSECURED PROMISSORY NOTE (THIS "*NOTE*") HAS NOT BEEN REGISTERED UNDER THE SECURITIES ACT OF 1933, AS AMENDED (THE "*ACT*"), AND MAY NOT BE SOLD, TRANSFERRED OR OTHERWISE DISPOSED OF UNLESS A REGISTRATION STATEMENT UNDER THE ACT WITH RESPECT TO THIS NOTE HAS BECOME EFFECTIVE OR UNLESS THE HOLDER (AS DEFINED BELOW) ESTABLISHES TO THE SATISFACTION OF THE MAKER (AS DEFINED BELOW) THAT AN EXEMPTION FROM SUCH REGISTRATION IS AVAILABLE.**

**UNSECURED PROMISSORY NOTE**

**$185,000.00** April 21, 2022 (the "***Issuance Date***")

FOR VALUE RECEIVED, the undersigned, Allure Salon Group, LLC, a Pennsylvania limited liability company (the "***Maker***"), hereby promises to pay to an account designated in writing by Bountiful Capital, LLC, a Wyoming limited liability company (the "***Holder***"), in lawful money of the United States of America, in immediatelyavailable funds to such account, the principal amount of $185,000.00 pursuant to the terms set forth herein.

1. **Interest**. Interest under this Note shall accrue on the unpaid principal balance of this Note at a rate of 5.00% per annum (computed on the basis of a 365-day year and based upon the number of days actually elapsed) commencing on the Issuance Date and added to the aggregate principal amount of the Note, effective each anniversary of the Issuance Date and on the Maturity Date.

2. **Payment**. All principal and interest sums due under this Note shall be due and payable on December 31, 2023 (the "***Maturity Date***"). The Maker shall pay all unpaid and outstanding principal and accrued interest due under this Note on the Maturity Date. The Maker shall have the right at any time and from time to time to prepay, in whole or in part, without premium or penalty, the unpaid principal amount of this Note and accrued and unpaid interest on such unpaid principal amount. Any prepayments shall be applied first to accrued and unpaid interest and then to the unpaid principal of this Note. Notwithstanding anything contained herein to the contrary, in the event that any payment is due on a date that is not a Business Day (as defined below), then the payment shall be due on the first Business Day following such date. For purposes of this Note, the term "***Business Day***" means any day other than a Saturday, a Sunday or any other day on which the Federal Reserve Bank of New York is closed.

3. **Event of Default**. The Maker shall be in default under this Note upon the occurrence of any of the following events of default (each, an "***Event of Default***"):

(a) the failure to pay the outstanding principal and interest on this Note on the Maturity Date;

(b) the Maker shall (i) apply for or consent to the appointment of a receiver, trustee, liquidator or custodian of itself or of all or a substantial part of its property, (ii) make a general assignment for the benefit of its or any of its creditors, (iii) be dissolved or liquidated or (iv) commence a voluntary case or other proceeding seeking liquidation, reorganization or other relief concerning itself or its debts under any bankruptcy, insolvency or other similar law now or hereafter in effect or consent to any such relief or to the appointment of or taking possession of its property by any official in an involuntary case or other proceeding commenced against it; or

(c) proceedings for the appointment of a receiver, trustee, liquidator or custodian of the Maker or of all or a substantial part of the property thereof, or an involuntary case or other proceedings seeking liquidation, reorganization or other relief concerning the Maker or the debts



Doc ID: 9efd8ed438d62b5ba07a027f806b7da759ea5033

thereof under any bankruptcy, insolvency or other similar law now or hereafter in effect shall be commenced and an order for relief entered or such proceeding shall not be dismissed or discharged within 60 days of commencement.

4. **Acceleration**. Upon the occurrence and during the continuance of an Event of Default, the Holder may declare all liabilities and obligations of the Maker under this Note immediately due and payable (without presentment, demand, protest or any other notice of any kind, all of which are hereby expressly waived) and the same shall thereupon become immediately due and payable without any further action on the part of the Holder.

5. **Successors and Assigns**. This Note shall bind the Maker and its successors and permitted assigns, and the benefits of this Note shall inure to the benefit of the Holder and its successors and permitted assigns. This Note, and the rights and obligations hereunder, may not be assigned or delegated (in whole or in part) by the Maker or the Holder without the prior written consent of the other party hereto. All references herein to the "Maker" and the "Holder" shall be deemed to apply to the Maker and the Holder, respectively, and to their respective successors and permitted assigns.

6. **Interest Rate Limitation**. Nothing contained in this Note or any transaction related to this Note shall be construed or so operate as to require the Maker to pay interest at a greater rate than is now lawful or in such case to contract for, or to make any payment, or to do any act contrary to applicable law. Should any interest or other charges paid by the Maker, or parties liable for the payment of this Note, in connection with the indebtedness evidenced by this Note or any other document delivered in connection with this Note, result in the computation or earning of interest in excess of the maximum legal rate of interest that is legally permitted under applicable law, then any and all such excess shall be, and the same hereby is, waived by the Holder, and any and all such excess shall be automatically credited against and in reduction of the balance due under this Note, and the portion of said excess that exceeds the balance due under this Note shall be paid by the Holder to the Maker.

7. **Costs of Collection**. If the Holder retains the services of counsel, or this Note is placed in the hands of an attorney for collection, following the occurrence of an Event of Default hereunder, the Maker agrees to pay to the Holder upon demand all reasonable costs and expenses, including, without limitation, all reasonable attorneys' fees and court costs incurred by the Holder in connection with the enforcement or collection of this Note (whether or not any action has been commenced by the Holder to enforce or collect this Note) or in successfully defending any counterclaim or other legal proceeding brought by the Maker contesting the Holder's right to collect the unpaid and outstanding principal and accrued interest due under this Note. The obligation of the Maker to pay all such costs and expenses shall not be merged into any judgment by confession against the Maker. All of such costs and expenses shall bear interest at the higher of the rate of interest provided herein from the date of payment by the Holder until repaid in full. The Maker agrees to waive any statute of limitations defense and any defense against the formation of this Note in the event a collection process is required.

8. **Cancellation**. After all principal, accrued interest, premium and all other amounts at any time owed on this Note have been indefeasibly paid in full, this Note shall be promptly surrendered to the Maker for cancellation.

9. **Amendment**. The provisions of this Note may be modified, amended or supplemented, and the Maker and the Holder may take any action herein prohibited, or omit to perform any act herein required to be performed by it, only by written agreement of the Maker and the Holder.

10. **Governing Law and Severability**. The provisions of this Note shall be construed according to the internal substantive laws of the State of New York without regard to conflict of laws

principles. If any provision of this Note is in conflict with any statute or rule of law of the State of New York or is otherwise unenforceable for any reason whatsoever, then such provision shall be ineffective to the extent of such invalidity and shall be deemed separable from and shall not invalidate any other provision of this Note.

11. **Waiver of Jury Trial**. EACH OF THE PARTIES HERETO HEREBY IRREVOCABLY WAIVES ANY AND ALL RIGHT TO TRIAL BY JURY IN ANY LEGAL PROCEEDING ARISING OUT OF OR RELATED TO THIS NOTE OR THE TRANSACTIONS CONTEMPLATED HEREBY.

12. **Counterparts**. This Note may be executed in separate counterparts, each of which will be deemed an original, but all of which together will constitute one and the same instrument.

13. **No Oral Agreements**. Each of the Holder and the Maker acknowledges that neither it, nor any agent or attorney of any such party, has made any promise, representation or warranty whatsoever, express or implied, to the other party hereto not contained in this Note, to induce the Maker to execute this Note.

**[Signature Page Follows]**

IN WITNESS WHEREOF, the Maker has caused this Note to be executed by its officer or representative thereunto duly authorized, as of the date first set forth above.

**MAKER**:

**ALLURE SALON GROUP, LLC**

By: ___________________________________
Name: Karen Kaminski
Title: President and Co-Chief Executive Officer



Doc ID: 9afd8ed438d62b5ba07a027f806b7da759ea5033

**<u>HOLDER</u>:**

**BOUNTIFUL CAPITAL, LLC**

By: ___________________________________
Name: David Bao
Title: President



Doc ID: 9efd8ed438d62b5ba07a027f806b7da759ea5033

HELLOSIGN

# Audit Trail

| | |
|---|---|
| TITLE | Allure Salon Group - Investor Agreement and Promissory Note |
| FILE NAME | Bountiful C...Version.pdf and 2 others |
| DOCUMENT ID | 9efd8ed438d62b5ba07a027f806b7da759ea5033 |
| AUDIT TRAIL DATE FORMAT | MM / DD / YYYY |
| STATUS | Signed |

## Document History

| | | |
|---|---|---|
| SENT | **09 / 12 / 2022**<br>18:17:29 UTC | Sent for signature to David Bao (dbao@bountifulcap.com) and Karen Kaminski (karen@alluresalongroup.com) from corey@dickeylawoffice.com<br>IP: 68.255.147.67 |
| VIEWED | **09 / 12 / 2022**<br>18:23:11 UTC | Viewed by Karen Kaminski (karen@alluresalongroup.com)<br>IP: 174.54.128.205 |
| VIEWED | **09 / 12 / 2022**<br>19:20:30 UTC | Viewed by David Bao (dbao@bountifulcap.com)<br>IP: 192.109.205.223 |
| SIGNED | **09 / 12 / 2022**<br>19:21:01 UTC | Signed by David Bao (dbao@bountifulcap.com)<br>IP: 192.109.205.223 |
| SIGNED | **09 / 12 / 2022**<br>20:11:33 UTC | Signed by Karen Kaminski (karen@alluresalongroup.com)<br>IP: 174.54.128.205 |
| COMPLETED | **09 / 12 / 2022**<br>20:11:33 UTC | The document has been completed. |